# EXHIBIT B

2021CV03928-14

EFILED
CLAYTON COUNTY, GA
11/1/2021 4:58 PM
Jacquline D. Wills
CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

NATHANIEL CLARK,                              )
                                             )
      PLAINTIFF,                        )
                                             )
V.                                           )
                                             )   Civil Action No.:
CITY OF FOREST PARK, GA;                     )   __2021CV03928-14__
LATRESA AKINS-WELLS, in her                  )
Official and individual capacity             )
                                             )
      DEFENDANTS.                       )

## COMPLAINT

COMES NOW Plaintiff Nathaniel Clark ("Plaintiff" or "Chief Clark") by and through his undersigned counsel, files this COMPLAINT against Defendants City of Forest Park, GA ("the City") and Latresa Akins-Wells ("Councilwoman Wells") (collectively "Defendants"), showing the Court as follows:

## PARTIES

1.    Plaintiff Nathaniel Clark was hired by the City of Forest Park as Police Chief on May 14, 2019 and remains employed by the City. At all times relevant to this action, Chief Clark was a "public employee" for purposes of the Georgia Whistleblower Protection Act, O.C.G.A. § 45-1-4.

2.    Defendant City of Forest Park, GA is a "public employer" as defined in O.C.G.A. § 45-1-4. City of Forest Park, GA has its principal address at 745 Forest Parkway, Forest Park, GA 30297.

1

KJ

3.      Defendant Latresa Akins-Wells is a member of the Forest Park City Council.  She is sued in her official and individual capacity.

## JURISDICTION AND VENUE

4.      Jurisdiction and venue are proper in the Superior Court of Clayton County.

5.      The City of Forest Park, GA and Councilwoman Wells are all residents of Clayton County.  All the acts complained herein occurred in Clayton County.

6.      This action has been brought within the time provided by O.C.G.A. § 45-1-4(e)(1).

## FACTUAL ALLEGATIONS

7.      Chief Clark was hired by the City of Forest Park as Police Chief on May 14, 2019. Chief Clark was the first and only permanent Black individual to be hired as Police Chief by the City.

8.      Chief Clark has been in law enforcement for approximately 33 years and was previously a police chief for a city in Arkansas.

9.      The former permanent Chief of Police for the City of Forest Park, L. Dwayne Hobbs, served as Police Chief for over two decades.

10.     As Chief of Police, Chief Clark is responsible for overseeing the City's police department which includes approximately 95 sworn personnel and is responsible for the safety and protection of the 20,000 civilians residing in the City.

11.     As Chief of Police, Chief Clark reports to the City Manager who in turn reports to the Governing Body.  The Governing Body is comprised of the Mayor and the five members of the City Council.

2

12.     Soon after becoming Chief of Police, Chief Clark immediately requested that an audit be conducted on the Police Department to, among other things, determine the financial status of the Police Department.

13.     The audit revealed that there were fraudulent, and unlawful, practices in the Police Department that had occurred under prior leadership. Specifically, the audit revealed, among other things, that the police department was selling ammunition that belonged to the City to civilians, that the police department was cashing checks made out to the City of Forest Park/Forest Park Police Department for cash and then were not turning it over to the finance department for proper documentation, and that some members of the department were doing surveillance on two city council members.

14.     Two supplemental audits were conducted which collaborated the initial audit. As a result of the audit, some individuals in the police department were terminated and some left voluntarily. The cases were reviewed by the Georgia Bureau of Investigations ("GBI") and were subsequently forwarded to the Clayton County prosecutor's office for possible criminal charges.

15.     In addition to the financial deficiencies uncovered in the audit requested by Chief Clark, Chief Clark uncovered other illegal practices within the police department including an illegal quota system for citations and systemic race and religious discrimination practices including recruitment disparities and "Give a Christian a Ticket Sunday" which was a practice whereby police officers would target Black and Hispanic Churches and give citations to members of those communities.

16.     In fact, the City's Hispanic population has dropped by ten (10) percentage points since 2010, from 37% to 27%, in part due to the police department previously targeting the

3

Hispanic community and issuing them an unprecedented number of citations. *See https://canopyatlanta.org/forest-park/hispanic-communities-police/*

17.    Despite Chief Clark's uncovering of the illegal quota system for citations, some members of the Governing Body wanted the police department to continue issuing citations for profit.  Chief Clark made it clear to the Governing Body that citations would be issued for the protection of society and not to generate revenue.

18.    In January 2020, City Manager Angela Redding left her employment with the City. Chief Clark was assigned as Interim City Manager and Police Chief from on or about January 6, 2020 until on or about May 18, 2020.

19.    As Interim City Manager, Chief Clark had access to the City's financial records and accounts, not just those of the police department.

20.    Soon after becoming Interim City Manager, Chief Clark identified financial deficiencies throughout the City, on a much larger scale.  Specifically, Chief Clark identified unlawful commingling of E-911 funds (balancing the budget by using E-911 funds) and charging SPLOST expenditures to accounts that did not exist.

21.    After identifying these financial deficiencies, Chief Clark immediately requested that an audit be conducted on the City's financial accounts given that it appeared there was unlawful activity occurring within the City.  However, upon information and belief, the City never conducted an audit on the E-911 or SPLOST accounts.

22.    In May 2020, Albert Barker was appointed to the position of City Manager.

23.    On June 30, 2020, Chief Clark received his annual performance review.  The review was very complimentary of Chief Clark's performance.  In that review, Barker wrote that "Chief

4

Clark identified and addressed an array of structural and systemic issues (*i.e. FLSA and Title VII Violations, Enhanced Recruitment and Disparities, CAD/Record Management System failures*)." Moreover, his review stated that "during his appointment [as Police Chief] the reported crime rate was decreased significantly in 2019 (*8 year low*)."

24.     On or about July 1, 2020, Chief Clark was promoted to the position of Deputy City Manager/Public Safety Director while also maintaining his position as Police Chief. *See Exhibit A, Correspondence from Barker regarding Chief Clark's promotion.*

25.     The position of Deputy City Manager/Public Safety Director was a position that had been created by the Governing Body and Barker was given discretion to appoint someone to that position.

26.     As a Deputy City Manager/Public Safety Director, Chief Clark had full management responsibility for all public safety services and activities including the police department and fire department and also had supervisory responsibility over all departments in coordination with and subject to the direction of the City Manager. The job description specifically stated that the position would oversee "the hiring, supervision, training, evaluation and discipline of [the fire and police] department employees." *See Exhibit B, Public Safety Director/Deputy City Manager job description.*

27.     When Barker appointed Chief Clark to that position, his decision was met with extreme resistance from some of the Governing Body as they were worried that, as Deputy City Manager, Chief Clark would continue to uncover fraudulent and unlawful activity as that position had access to the City's financial documents.

5

28.     In fact, Barker told Chief Clark that the Governing Body in part was going to do all they could to ensure that the audit he had been requesting would never be conducted and also told Chief Clark that they would continue to harass and retaliate against him to the point of having his employment terminated.

29.     On September 4, 2020, Chief Clark sent Barker an email that stated the following: "Recently Finance Director Ken Thompson brought to our attention that in past years SPLOST expenditures were charged to account(s) that doesn't exist. Based on the financial inconsistencies recently brought to our attention, I am recommending that an external audit be conducted immediately regarding any and all finances." *See Exhibit C, 09.04.2020 Email from Chief Clark to Barker.*

30.     Chief Clark also identified procedural concerns with the City's federal asset forfeiture account and requested that an audit be conducted.

31.     Upon information and belief, the financial audit that Chief Clark recommended regarding the federal asset forfeiture account was never conducted. *See Exhibit D, 08.27.2021 Email from Chief Clark to Deputy Finance Director Darquita Williams.*

32.     Because Chief Clark was extremely concerned regarding potential fraudulent and unlawful activity occurring, Chief Clark contacted the United States Department of Justice ("DOJ") regarding the City's federal asset forfeiture account. The DOJ stated that an audit needed to be conducted immediately.

33.     Chief Clark also discovered other financial discrepancies including discrepancies with the bank reconciliations (approximately $200,000 worth of discrepancies), discrepancies with

6

the FBI reimbursement, and discrepancies with the Georgia Emergency Management and Homeland Security Agency ("GEMA") grant.

34.    On October 28, 2020, Clark again sent Barker another email requesting that a financial audit be conducted immediately based upon the DOJ's recommendation, Finance Director Ken Thompson's admissions, and financial discrepancies previously identified. *See* ***Exhibit E,*** *10.28.2020 Email from Chief Clark to Barker.*

35.    Barker told Chief Clark that he was getting directives from members of the Governing Body to stand down immediately on the financial audit.

36.    In fact, Barker told Chief Clark and others that he had been offered a large sum of money to stop the financial audits.

37.    On November 2, 2020, Chief Clark received another stellar performance review from Barker. In that review, Barker wrote the following: "Chief Clark was appointed Deputy City Manager/Director of Public Safety on July 1, 2020; he also continues to hold the position of Police Chief; during this appointment the reported crime rate decreased significantly in 2020 (21-*year low*), this speaks volume [sic] of Chief Clark's dedication in making the community safe for all."

38.    Barker also wrote, "Deputy City Manager/Public Safety Director Clark was warned that he will face backlash referencing the audits (*funding discrepancies)* and his continual exposure of biased practices."

39.    On November 4, 2020, Chief Clark overheard a City Official make a statement that he (Chief Clark) takes detailed notes, to retrieve everything that he has been working on as Deputy City Manager and to "stop him."

7

eto

40.     That same day, on November 4, 2020, Chief Clark was demoted from his position of Deputy City Manager. Specifically, Chief Clark's contract was amended so that he would only serve as Public Safety Director and Chief of Police. Chief Clark was only to serve as Deputy City Manager in the absence of a City Manager.

41.     Chief Clark was demoted due to his uncovering of unlawful and fraudulent activity, specifically including his uncovering of financial discrepancies, pay disparities, systemic racism, illegal quotas, and other unlawful and fraudulent activity.

42.     Chief Clark also experienced a hostile work environment in retaliation for his uncovering of these unlawful and fraudulent activities. Specifically, Chief Clark was asked to do things that other department heads were not required to do and his work was scrutinized and nitpicked.

43.     Soon after Chief Clark's report to the DOJ as well as his insistence on a financial audit in part due to Finance Director's Ken Thompson's admissions that SPLOST expenditures were charged to accounts that did not exist, Thompson resigned his employment with the City and took with him what appeared to be an extensive amount of confidential and highly sensitive financial documents belonging to the City.

44.     Moreover, on or about November 23, 2020, financial documents were removed from the police department without Chief Clark's consent.

45.     In March 2021, Brown filed a formal complaint alleging sexual harassment by Fire Chief Don Horton. As Public Safety Director, Chief Clark oversaw the Fire Department and Chief Horton reported to him.

46.    Chief Clark subsequently put Chief Horton on administrative leave and recommended that an external investigation be conducted.

47.    The investigation—which was ultimately submitted to the City Manager and Governing Body—confirmed that Chief Horton had been sexually harassing Brown and Chief Horton was ultimately terminated.

48.    However, during the investigation and appeal process, Chief Clark was subjected to continued harassment and verbal attacks by the Governing Body in part and Councilwoman Wells. Specifically, during public City Council meetings, Councilwoman Wells made comments regarding Chief Clark's integrity.

49.    In fact, during the appeal hearing, Chief Clark was berated for nearly two hours by Chief Horton. Chief Clark was mandated to appear but was not afforded an opportunity by the Governing Body to speak or defend himself in front of the community.

50.    Councilwoman Wells told Chief Clark prior to the sexual harassment allegations against Chief Horton that Chief Horton had given her $1,000 and that she had not recorded it to either her ward or to her campaign.

51.    Chief Clark told Councilwoman Wells twice that the $1,000 Chief Horton had given her needed to be recorded, however, upon information and belief, it was never recorded.

52.    Chief Clark has experienced a hostile work environment in retaliation for his protected activity, namely, his involvement in the investigation into Brown's sexual harassment allegations against Chief Horton.

53.    Specifically, Chief Clark has been verbally attacked and harassed by Wells.

9

54.     On or about May 28, 2021, Chief Clark was summoned to City Manager Marc-Antonie Cooper's office and accused of having the Deputy Fire Chief, Latasha Clemmons followed. Ms. Clemmons was hired by Chief Horton.

55.     Chief Clark was placed under investigation, but the investigation showed that the allegations were unfounded.

56.     Upon information and belief, this was a conspiracy to have Chief Clark terminated.

57.     Moreover, Chief Clark has been stripped of additional job responsibilities.

58.     For example, in May 2021, the Fire Chief's reporting structure was changed so that the Fire Chief no longer reports to Chief Clark but instead reports directly to the City Manager, which is inconsistent with his job description and contract signed by the Governing Body.

59.     Additionally, when the City was recruiting for the position of Fire Chief after Chief Horton was terminated, despite Chief's Clark job description stating that he would be responsible for hiring of the fire department employees, Chief Clark was excluded from screening applicants or participating on the hiring committee.

60.     In fact, Chief Clark has been stripped of all authority regarding the fire department.

61.     Moreover, at one point Chief Clark was directed to cease all appointments/promotions at the police department until further notice.

62.     Chief Clark also has been excluded from meetings regarding police operations.

63.     Councilwoman Wells also continues to attack Chief Clark's integrity by undermining and questioning Chief Clark's actions with respect to the police department.

64.     For example, every time a police officer leaves the department, Councilwoman Wells takes it upon herself to blame them leaving on Chief Clark.

10

2021CV03928-14

65.     Councilwoman Wells is constantly asking for data regarding the police department in an attempt to find something to attack or look for ways to blame Chief Clark.

66.     By way of example, in September 2021, Councilwoman Wells wanted Cooper to reopen an investigation that had concluded nearly a year ago during which a member of the police department had made claims against Chief Clark, which were investigated, and found to be unfounded.

67.     Moreover, Councilwoman Wells wanted to see a copy of every exit interview and every grievance filed against Chief Clark in an attempt to demean Chief Clark and punish him for participating in the sexual harassment investigation into Chief Horton.

68.     On or about September 12, 2021, Cooper received an email from an anonymous individual(s), specifically "Concerned Citizens of Forest Park," that stated that Councilwoman Wells and her husband had physically assaulted a citizen.  A criminal investigation was opened.

69.     Soon thereafter, Chief Clark received information that the investigation appeared to have been compromised as Councilwoman Wells had received confidential information from someone at the police department regarding details of the investigation.

70.     In fact, on September 22, 2021, Councilwoman Wells posted a video to Facebook in which she appears to reference paperwork she was receiving from a member of the police department regarding the investigation.  Councilwoman Wells compromised the integrity of the police department which is a violation of her duties as a City Council member.

71.     In that same Facebook video, which to date has received 49 comments and 336 views, Councilwoman Wells made several false statements about Chief Clark with the specific intent to do harm.

11

2021CV03928-14

72.     Although it appeared that at least one high-ranking City official was aware that Councilwoman Wells had received this information improperly, and had known for some time, no action was taken to investigate.

73.     On October 7, 2021, Chief Clark sent Cooper an email requesting an external investigation (to avoid the appearance of impropriety) as it had appeared that someone at the police department has been leaking information to Councilwoman Wells while there was an open investigation pending.

74.     Upon information and belief, no action has been taken to investigate Chief Clark's concerns.

75.     Chief Clark has repeatedly complained to his City Managers, members of the Governing Body, the City's in-house attorney and the City's outside attorney regarding the retaliation he is experiencing.

76.     Several City officials, including Cooper, have admitted and acknowledged the retaliation Chief Clark is experiencing but have done nothing to stop it.

77.     Chief Clark was told by a City official that the City is attempting to dissolve the position of Public Safety Director, decrease his salary, and eventually terminate his employment based on his involvement in the sexual harassment investigation of Chief Horton.

## COUNT I
## RETALIATION UNDER THE
## GEORGIA WHISTLEBLOWER PROTECTION ACT, O.C.G.A. § 45-1-4 *et seq.*
## (DEFENDANT CITY OF FOREST PARK, GA)

78.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

79.     Pursuant to O.C.G.A. § 45-1-4, it is unlawful for a public employer to retaliate against a public employee "in the terms or conditions of employment for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency."

80.     On November 4, 2020, Chief Clark demoted from his position of Deputy City Manager. Specifically, Chief Clark's contract was amended so that he would only serve as Public Safety Director and Chief of Police. Chief Clark was only to serve as Deputy City Manager in the absence of a City Manager.

81.     Chief Clark was demoted due to his uncovering of unlawful and fraudulent activity, specifically including his uncovering of financial discrepancies, pay disparities, systemic racism, illegal quotas, and other unlawful and fraudulent activity.

82.     Chief Clark also experienced a hostile work environment in retaliation for his uncovering of these unlawful and fraudulent activities. Specifically, Chief Clark was asked to do things that other department heads were not required to do and his work continues to be scrutinized and nitpicked.

83.     Moreover, Chief Clark has experienced a hostile work environment in retaliation for his involvement in the investigation into Brown's sexual harassment allegations against Chief Horton.

84.     Chief Clark has also been stripped of additional job responsibilities because of his involvement in the investigation into Brown's sexual harassment allegations against Chief Horton.

85.     These adverse employment actions were in retaliation for Chief Clark's disclosing violations or noncompliance with laws, rules or regulations in violation of the Georgia Whistleblower Protection Act, O.C.G.A. § 45-1-4 *et seq*.

13

86.     These adverse employment actions have caused Chief Clark to suffer damages in the form of loss of future earning capacity in that his credentials as Police Chief, Public Safety Director and Deputy City Manager and reputation have been besmirched.

<div align="center">

**COUNT II**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**UNDER THE COMMON LAW OF GEORGIA**
**(DEFENDANT WELLS)**

</div>

87.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

88.     As a direct and proximate cause of Councilwoman Wells' actions, Chief Clark has suffered damages in an amount to be proven at trial.

89.     Councilwoman Wells' actions demonstrate willful misconduct, malice, wantonness, oppression and want of caring raising the presumption of conscious indifference to the consequences of her actions, entitling Plaintiff to punitive damages under O.C.G.A. § 51-12-5.1.

<div align="center">

**COUNT III**
**SLANDER**
**(DEFENDANT WELLS)**

</div>

90.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

91.     Councilwoman Wells has made numerous false and defamatory remarks concerning the Chief Clark's tenure at the City.

92.     These statements have negatively impacted Chief Clark's reputation in the community in which he works.

93.     Councilwoman Wells made these statements maliciously and with the specific intent to do harm to Chief Clark and to punish him for exposing a hostile work environment and for questionable and illegal acts.

<div align="center">14</div>

94.     Councilwoman Wells' actions demonstrate willful misconduct, malice, wantonness, oppression and want of caring raising the presumption of conscious indifference to the consequences of her actions, entitling Plaintiff to punitive damages under O.C.G.A. § 51-12-5.1.

**WHEREFORE,** the Plaintiff demands that a trial by jury be had on all Counts of his Complaint and that the following such judgment be entered on his behalf against Defendants granting the following relief:

(a) that Defendants be Ordered to make Plaintiff whole by providing for his out-of-pocket losses including any back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendants' unlawful and discriminatory acts, together with interest thereon, all in amounts to be determined at the trial;

(b) that front pay be awarded as the employment relationship has been so severely damaged that the relationship is unsalvageable;

(c) that compensatory damages be awarded against each Defendant individually to compensate Plaintiff for his mental and emotional distress, anxiety, humiliation, outrage, and loss of professional and personal reputation as a consequence of Defendants' actions in an amount to be determined at the trial;

(d) that punitive damages be awarded against Defendants in an amount to be determined at trial to deter Defendants and others from similar misconduct in the future;

(e) that Plaintiff be granted attorney's fees and expenses of litigation pursuant to O.C.G.A. §§ 45-1-4(f) and 13-6-11;

2021CV03928-14

(f) appropriate declaratory and injunctive relief;

(g) that pre-judgment and post-judgment interest be awarded; and

(h) that Plaintiff be granted such other and further additional relief as the jury deems equitable

and just.

Respectfully submitted, this 1st day of November, 2021.

*s/ Jackie Lee*
Jackie Lee
Georgia Bar No. 419196
jackie@leelawga.com
LEE LAW FIRM, LLC
1100 Peachtree Street NE, Suite 250
Atlanta, Georgia 30309
Telephone: (404) 301-8973

**COUNSEL FOR PLAINTIFF**

2021CV03928-14

# Exhibit A



**Albert Barker Jr.**
City Manager

745 Forest Parkway
Forest Park, GA 30297
Phone: (404) 366-4720
abarker@forestparkga.org

FOREST PARK

Date: June 19, 2020

RE: Employment Offer

Mr. Nathaniel Clark,

Pursuant to our conversation, the City of Forest Park would like to offer you the position of **Public Safety Director/Deputy City Manager**. A copy of the job description is attached. Your salary will be discussed at a later date.

Please formally confirm your acceptance of this job offer and starting date of July 1, 2020 by signing the appropriate section below and return it to me at your earliest convenience.

Sincerely,

Albert Barker,
City Manager

**Accept Job Offer**
I accept this job offer:
Signature: _____    Date: 6/19/20

**Decline Job Offer**
I decline this job offer:
Signature: _____    Date: _____

CITY HALL • 745 FOREST PARKWAY, FOREST PARK, GA 30297
WWW.FORESTPARKGA.ORG

Scanned with CamScanner



**Albert Barker Jr.**
City Manager

745 Forest Parkway
Forest Park, GA 30297
Phone: (404) 366-4720
abarker@forestparkga.org

# FOREST PARK

August 10, 2020

To: Nathaniel Clark, Public Safety Director/Deputy City Manager

From: Albert Barker, City Manager

RE: Public Safety Director/Deputy City Manager

This letter comes as congratulations referencing your acceptance of the position of Public Safety Director/Deputy City Manager, effective July 01, 2020. As stated in your acceptance letter, you shall be afforded all benefits and education incentives granted to a department head, specifically Police Chief and Fire Chief. Also, pursuant to the Council Meeting on July 20, 2020 and pursuant to a unanimous vote by the governing body, your initial contract is hereby amended to reflect the new position of Public Safety Director//Deputy City Manager, education incentives and salary.

Albert Barker

City Manager

City of Forest Park

Scanned with CamScanner

2021CV03928-14

# Exhibit B

## THE CITY OF FOREST PARK

SUMMARY DESCRIPTION - Public Safety Director/Deputy City Manager

The Public Safety Director/Deputy City Manager reports to the City Manager and his/her primary role is to assist in the planning, directing, management and review of the activities and operations of the city relating to Police Department * Fire Service * 911 * Animal Control * Public Information Officer. However, the Deputy City Manager has supervisory responsibility over all departments in coordination with and subject to the direction of the City Manager.

JOB FUNCTIONS The following duties are normal for this position.  They are not to be construed as exclusive or all inclusive.  Other duties may be required and assigned.

- Assumes full management responsibility for public safety services and activities; manages the development and implementation of departmental goals, objectives, and priorities for each assigned service area; recommends and administers policies and procedures.
- Plans, organizes and directs the activities of all departments pertaining to public safety, including the Police Department and Fire Department, providing general law enforcement, criminal investigation, fire suppression and prevention, rescue services and emergency medical services and disaster responses.  Oversees the hiring, supervision, training, evaluation and discipline of department employees.
- Develops long term plans to improve departmental operations.
- Develops annual department budgets for operations and equipment.  Also assists in developing long-range capital budgets for various public safety programs.  Monitors the departmental budgets throughout the fiscal year and oversees the purchase and maintenance of equipment, vehicles, and supplies.
- Establishes, within City policy, appropriate service and staffing levels; monitors and evaluates the efficiency and effectiveness of service delivery methods and procedures; allocates resources accordingly.
- Plans, directs, and coordinates, through subordinate level staff, the work plans for the Police Department and Fire Department; assigns projects and programmatic areas of responsibility; reviews and evaluates work methods and procedures; meets with key staff to identify and resolve problems.
- Provides staff assistance to the City Manager and City Council; prepares and presents staff reports and other necessary correspondence; attends City Council and other meetings as required.
- Coordinates assigned activities between public safety departments with those of other city departments and outside agencies and organizations.
- Responds to and resolves difficult and sensitive citizen inquiries and complaints; explains, justifies, and defends department programs, policies, and activities.
- Participates on a variety of boards; serves as the city's representative and/or appoints a designee to committees and community organizations concerned with improvements in law enforcement and fire services, public education, and departmental public relations.
- Supervise a group of department heads and/or other staff.
- Direct the activities of assigned departments, review and evaluate work methods and procedures, identify opportunities for improvement and implement changes.

6/17/00

Scanned with CamScanner

2021CV03928-14

# Exhibit C

2021CV03928-14

| From: | Nathaniel Clark/fppolice |
|---|---|
| To: | Albert Barker/CoFP@CoFP |
| Cc: | Nathaniel Clark/fppolice@fppolice, Gretta Harris/CoFP@CoFP |
| Bcc: | nclark71603@yahoo.com |

| Date: | Friday, September 04, 2020 12:23PM |
|---|---|
| Subject: | Finance Department – External Audit Recommended |

Mr. Barker,

Recently Finance Director Ken Thompson brought to our attention that in past years SPLOST expenditures were charged to account(s) that doesn't exist. Based on the financial inconsistencies recently brought to our attention, I am recommending that an external audit be conducted immediately regarding any and all finances.

Thanks in advance.

Chief Nathaniel Clark
Deputy City Manager/Public Safety Director
City of Forest Park
745 Forest Parkway
Forest Park, Georgia 30297
(w) 404-366-4720

'Serving with Pride, Honor and Professionalism'

2021CV03928-14

# Exhibit D

2021CV03928-14

**From:** Nathaniel Clark
**Sent:** Friday, August 27, 2021 7:17 AM
**To:** Darquita Williams <DWilliams@forestparkga.gov>
**Cc:** Nathaniel Clark <nclark@forestparkga.gov>
**Subject:** Federal Asset Audit (status)
**Importance:** High

Good Morning Deputy Finance Director Williams,

Pursuant to the conversation with the city manager on 8/19/21 whereas you were authorized to have an audit conducted on the federal asset accounts(s), I am respectfully requesting the status regarding said and to be kept abreast.

Thanks in advance.

2021CV03928-14

# Exhibit E

2021CV03928-14

**From:** Nathaniel Clark
**Sent:** Wednesday, October 28, 2020 8:11 AM
**To:** Albert Barker <abarker@forestparkga.gov>
**Cc:** Nathaniel Clark <nclark@forestparkga.gov>
**Subject:** Funding Concerns
**Importance:** High

'Follow-up'

Good Morning Sir.

Pursuant to discussions, during the past few months assessments of various city departments have been conducted and several discrepancies were identified in the area of finance, please note the following area of concerns:

SPLOST Funds
E-911 Funds
FBI Reimbursement (*task force*)
Federal Asset Forfeiture/Equitable Sharing
Documentary and Procedural Issues with these and other funding issues

I have spoken with Finance Director Ken Thompson regarding these issues and the following were stated/identified in part:

* Current SPLOST Funds (*per Director Thompson's admission to you and me - funds were charged in the past to accounts that doesn't exist*)
* E-911 Funds (*possibly co-mingled with the city's general funds*)
* Bank Reconciliations/Discrepancy (*per Lori Muise, Finance Dept. approximately $200,000+*)
* FBI Reimbursement - Task Force (*per Wanda Dutton, there appear to be funding discrepancies*)
* GEMA - Emergency Management Performance Grant (*per Elaine Comer, Fire Department*) there appear to be funding discrepancies)
* Federal Asset Forfeiture/Equitable Sharing (*procedural concerns i.e. bank books, employee names on accounts*)

As you are aware, in the past two companies conducted audits of the police department where issues were found and corrected (*see audits by Ken Bell and Associates and Lawrence Johnson*)

On or about October 23, 2020 I contacted Brian Boykin, Equitable Sharing Program Manager - U.S. Department of Justice; pursuant to the conversation and updating you, I am recommending an immediate audit referencing procedural concerns, expenditures and balance to ensure transparency and compliance review.

1

⊕ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
CLAYTON COUNTY, GEORGIA

**2021CV03928-14**

DEC 01, 2021 02:45 PM

*Jacqueline D. Wills, Clerk*
*Clayton County, Georgia*

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 2021CV03928-14 |
| v. | ) | |
| | ) | |
| CITY OF FOREST PARK, GA and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| Official and individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## STIPULATED EXTENSION OF TIME

Pursuant to agreement of the undersigned parties, the time period for Defendant City of

Forest Park, Georgia to answer, move, or otherwise respond to Plaintiff's Complaint is extended

through and including **Monday, December 20, 2021**.

This 1st day of December, 2021.

*CONSENTED TO BY*:

**LEE LAW FIRM, LLC**

*/s/ Jackie Lee*
Jackie Lee
(by M. Hill w/ permission)
Georgia Bar No. 419196
1100 Peachtree St., Suite 250
Atlanta, GA 30309
Telephone (404) 301-8973

*Counsel for Plaintiff*
*Nathaniel Clark*

**FREEMAN MATHIS & GARY LLP**

*/s/ Michael M. Hill*
Michael M. Hill
Georgia Bar No. 770486
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339
Telephone (770) 818-0000
Facsimile (770) 937-9960

*Counsel for Defendant*
*City of Forest Park, Georgia*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have this date served the within and foregoing **STIPULATED EXTENSION OF TIME** by depositing a true and correct copy thereof in the United States mail, with sufficient postage affixed thereon, and properly addressed to counsel:

> Jackie Lee
> Lee Law Firm, LLC
> 1100 Peachtree St., Suite 250
> Atlanta, GA 30309

This 1st day of December, 2021.

*/s/ Michael M. Hill*
Michael M. Hill
Georgia Bar No. 770486

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339
Telephone (770) 818-0000
Facsimile (770) 937-9960

🖨 **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
CLAYTON COUNTY, GEORGIA

**2021CV03928-14**

**DEC 20, 2021 03:39 PM**

Jacqueline D. Wills, Clerk
Clayton County, Georgia

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 2021CV03928-14 |
| v. | ) | |
| | ) | |
| CITY OF FOREST PARK, GA and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| Official and individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## CITY OF FOREST PARK, GEORGIA'S MOTION TO DISMISS COMPLAINT

COMES NOW the City of Forest Park, Georgia, by and through the undersigned counsel of record, and, pursuant to O.C.G.A. §§ 9-11-12(b)(1) and 9-11-12(b)(6), hereby moves to dismiss Plaintiff Nathaniel Clark's Complaint for lack of subject matter jurisdiction and failure to state any claim for which relief may be granted.

## I.    STATEMENT OF THE CASE

This is an action for alleged whistleblower retaliation pursuant to the Georgia Whistleblower Act ("GWA"), O.C.G.A. § 45-1-4 (Count I); intentional infliction of emotional distress ("IIED") (Count II); and slander (Count III). The Plaintiff, Nathaniel Clark, is the current Police Chief for the City of Forest Park (the "City"). He also serves as Deputy City Manager/Public Safety Director in the event the City Manager is absent or incapacitated. (Compl. ¶¶ 1, 24, 40.) Co-Defendant Latresa Akins-Wells ("Councilwoman Wells") is a sitting member of the City Council, which is composed of four other individuals. (*Id.* ¶¶ 3, 11.)

Plaintiff has served as the City's Police Chief since May 2019. (*Id.* ¶¶ 1, 7.) He alleges he was the first and only "permanent Black individual" to serve as Police Chief, but he does not explain what he means by this phrase. (*Id.* ¶ 7.) As Plaintiff alleges, in the short span of just over

two years since his hire, he has received numerous promotions, accolades, and pay raises; been entrusted with additional responsibilities; and received consistently positive performance reviews. (*Id.* ¶¶ 18, 23, 24, 37.)

Nevertheless, despite this series of positive outcomes, Plaintiff alleges the City has harassed and retaliated against him in a "conspiracy" to have him terminated (even though it has not actually terminated him or taken any steps to do so). (*Id.* ¶¶ 42, 52, 56.) Plaintiff alleges he uncovered several unlawful practices in the Police Department, including selling City ammunition to civilians; cashing checks made out to the City and not turning them over to the Finance Department; surveilling two City Council members; and targeting Black and Hispanic church-goers for traffic citations. (*Id.* ¶¶ 13, 15.) He also alleges that, during a period in which he served as Interim City Manager, he discovered several other unlawful activities, such as commingling E-911 funds; charging SPLOST expenditures to accounts that did not exist; "procedural concerns" with the City's asset forfeiture account; and "discrepancies" regarding bank reconciliations, FBI reimbursements, and a Georgia Emergency Management Fund grant. (*Id.* ¶¶ 20, 30, 33.)

While Plaintiff appears to allege the City was unhappy with his uncovering the above activities, the City nevertheless promoted him, including to a new position created just for Plaintiff, and gave him positive performance evaluations afterwards. (*Id.* ¶¶ 18, 23-25, 37.) Even so, Plaintiff alleges he requested multiple audits the City did not conduct. (*Id.* ¶¶ 21, 31.) He alleges former City Manager Alfred Barker told him unnamed "members of the Governing Body" wanted him to "stand down immediately on the financial audit"; that Mr. Barker claimed he had been offered "a large sum of money to stop the financial audits"; that Mr. Barker warned

him he would face "backlash" for his audit requests and "continual exposure of biased practices"; and that an unidentified "City Official" wanted to "stop him." (*Id.* ¶¶ 35-36, 38-39.)

The only person in City government whom Plaintiff specifically identifies as having any issue with his work performance is Councilwoman Wells. He alleges that she has made non-specific comments during public City Council meetings regarding his integrity; that she has "verbally attacked and harassed" him for his involvement in an investigation into another employee's sexual harassment allegations against the former Fire Chief; that she attacks his integrity and undermines and questions his actions; that she blames police officers' departures on Plaintiff; that she asks for "data" regarding the Police Department; that she sought to reopen an investigation into an unspecified claim a member of the Police Department had made against Plaintiff; that she asked to see exit interviews and grievances filed against Plaintiff; and that she posted a video on Facebook that contained unidentified "false statements" about Plaintiff. (*Id.* ¶¶ 48, 52-53, 63-67, 70-71.)

Plaintiff remains employed with the City but filed the instant lawsuit on November 1, 2021. In Count I, he asserts a GWA claim for whistleblower retaliation against the City. In Counts II and III, he asserts claims for IIED and slander against Councilwoman Wells. While he does not specify in these counts the capacity (official or individual) in which he asserts the claims against Councilwoman Wells, he states in the caption of the Complaint that she is being sued in her official and individual capacity. Thus, in an abundance of caution, the City will treat all three counts as being asserted against the City.

The City now timely moves to dismiss all claims asserted against it in the Complaint for lack of subject matter jurisdiction and failure to state any claim upon which relief may be granted. This Court lacks subject matter jurisdiction as to Plaintiff's IIED and slander claims

against the City because the City has sovereign immunity to these claims, and Plaintiff has failed to show any waiver thereof. In addition, Plaintiff fails to allege sufficient facts to state viable claims for IIED or slander; nor does he allege any facts whatsoever to render the City liable for Councilwoman Wells's alleged actions or statements. With regard to his whistleblower retaliation claim, the vast majority of actions and statements about which he complains occurred before the applicable one-year statute of limitations, and the alleged incidents within the limitations period are not actionable "adverse employment actions" as contemplated by the GWA. Accordingly, the Court should dismiss with prejudice all claims asserted against the City.

## II.     ARGUMENT AND CITATION TO AUTHORITY

### A.     This Court Lacks Subject Matter Jurisdiction As To Claims Asserted Against Councilwoman Wells In Her Official Capacity Because Plaintiff Failed To Show Any Waiver Of The City's Sovereign Immunity

It is not clear if Plaintiff intended to assert his claims for IIED and slander in Counts II and III of the Complaint against the City as well as Councilwoman Wells. While he states these claims are asserted against "Defendant Wells," he does not specify whether he asserts these claims against Councilwoman Wells in her official or individual capacity. The case caption, however, states he is suing Councilwoman Wells in both her official and individual capacities.

To the extent Plaintiff asserts his IIED and slander claims against Councilwoman Wells in her official capacity, these claims are barred by sovereign immunity and therefore should be dismissed for lack of subject matter jurisdiction. If a public officer is sued in her official capacity, the suit is simply "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Thus, "suits against a municipal officer sued in h[er] official capacity and direct suits against municipalities are functionally equivalent." *Snow v. City of Citronelle*, 420 F.3d 1262, 1270 (2005).

- 4 -

Whether or not the City has "[s]overeign immunity [from Plaintiff's IIED and slander claims] is a threshold issue that the court is required to address before reaching the merits of any other argument." *State Dep't of Corr. v. Developers Sur. & Indem. Co.*, 324 Ga. App. 371, 374 (2013) (internal punctuation omitted). The Georgia Constitution clearly provides municipalities with sovereign immunity from such claims, unless and to the extent the General Assembly waives such immunity. Ga. Const. Art. IX, § II, Para. IX. "[M]unicipal immunity is not in the nature of an affirmative defense but rather speaks to the trial court's subject matter jurisdiction." *City of Alpharetta v. Vlass*, 360 Ga. App. 432, 434 (2021) (citing *City of Tybee Island v. Harrod*, 337 Ga. App. 523, 524 (2016)). Showing a waiver of sovereign immunity is ***the Plaintiff's burden***. *Smith v. City of Roswell*, 2021 Ga. App. LEXIS 502, at *6-7, 864 S.E.2d 175 (Oct. 18, 2021); *Vlass*, 360 Ga. App. at 434.

Plaintiff alleges nothing in his Complaint to show a waiver of the City's sovereign immunity to his IIED and slander claims. In fact, the word "immunity" appears nowhere in Plaintiff's Complaint. Thus, since Plaintiff has not even attempted to discharge his burden to show a waiver, his claims for IIED and slander, to the extent they are asserted against the City, are due to be dismissed. *See Smith*, 2021 Ga. App. LEXIS 502, at *12 (affirming dismissal where plaintiff failed to show waiver of city's sovereign immunity); *Vlass*, 360 Ga. App. at 437-40 (same).

## B.    Plaintiff's Complaint In Its Entirety Should Be Dismissed For Failure To State Any Claim For Relief

Plaintiff also has failed to allege sufficient facts to state any claim for relief against the City. The Complaint contains no allegations that, if assumed to be true, would support a claim for IIED, slander, or whistleblower retaliation.

### 1.      Legal Standard On A Motion To Dismiss

A complaint should be dismissed pursuant to Rule 12(b)(6) of the Civil Practice Act for failure to state a claim upon which relief should be granted "when it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of [her] claim."  *Lange v. Standard Telephone Co.*, 243 Ga. App. 301, 304 (2000) (affirming dismissal of complaint under § 9-11-12(b)(6); *Lord v. Lowe*, 318 Ga. App. 222, 222 (2012) (affirming grant of motion to dismiss for failure to state a claim and holding that "[e]ven when a complaint is liberally construed, there still 'must be some legal basis for recovery.'").

A motion to dismiss for failure to state a claim is to be granted when (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of relief sought. *Common Cause/Georgia v. City of Atlanta*, 279 Ga. 480, 481 (2005).  "While a trial court is required to consider a non-moving party's factual allegations to be true, it is not required to accept the legal conclusions the non-[moving] party suggests that those facts dictate." *Trop, Inc. v. City of Brookhaven*, 296 Ga. 85, 87, 764 S.E.2d 398, 401 (2014).

### 2.      Plaintiff's Allegations Fall Far Short Of The Threshold To Constitute IIED

An IIED claim requires a showing that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) a causal connection existed between the wrongful conduct and the emotional distress; and (4) the emotional harm was severe. *Abdul-Malik v. AirTran Airways, Inc.,* 297 Ga. App. 852, 855–56 (2009); *Scott v. Rite Aid of Georgia, Inc.*, 918 F. Supp. 2d 1292, 1305 (M.D. Ga. 2013). Extreme and outrageous conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond

all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Abdul-Malik*, 297 Ga. App. at 856 (quoting *Biven Software v. Newman*, 222 Ga. App. 112, 113-114(1) (1996)) (citation and punctuation omitted); *Anderson v. Dunbar Armored, Inc.*, 678 F. Supp. 2d 1280, 1331-32 (N.D. Ga. 2009). Whether actions rise to the level of extreme and outrageous conduct necessary to support an IIED claim is a question of law. *Abdul-Malik*, 297 Ga. App. at 856. The burden a plaintiff must meet to prevail is stringent. *Bridges v. Winn-Dixie Atlanta, Inc.*, 176 Ga. App. 227, 229 (1985).

Employment-related activities by themselves generally are insufficient to establish conduct that is extreme and outrageous. *See Jarrard v. United Parcel Serv., Inc.,* 242 Ga. App. 58, 59-62 (2000) (holding "derogatory comments in the employment context generally do not fall into this category [of extreme and outrageous conduct]" and "performance evaluations critical of an employee do not fall into the outrageous category even though (i) given in crude and obscene language, (ii) done with a smirk, (iii) conducted in a belittling, rude, and condescending manner to embarrass and humiliate the employee, (iv) given at a poor time, (v) tinged with the intent to retaliate for former conflicts, and (vi) constituting a false accusation of dishonesty or lack of integrity"); *Biven Software*, 222 Ga. App. at 113 ("Comments made within the context of one's employment may be horrifying or traumatizing, but are generally considered 'a common vicissitude of ordinary life.'"); *Mears v. Gulfstream Aerospace Corp.,* 225 Ga. App. 636, 639 (1997); *Bowers v. Estep*, 204 Ga. App. 615, 618 (1992) ("Richard Bowers alleged that appellees Adams and Estep threatened, humiliated, and intimidated him in the course of their inquiries concerning his emotional condition and that they maliciously transferred him to another position. We agree with the trial court that these allegations do not set forth a claim for intentional infliction of emotional distress as a matter of law"); *Fox v. Ravinia Club, Inc.*, 202

Ga. App. 260 (1991) (finding no outrageous conduct where plaintiff's supervisor spoke to her in a "hostile, intimidating and abusive manner" and gave false reasons for her termination).

Even the termination of an employee, which is far more severe than anything Plaintiff allegedly experienced, generally is not extreme and outrageous conduct, no matter how stressful the termination may be for the employee. *See Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1229 (11th Cir. 1993) ("[A]n employer's termination of an employee—however stressful to the employee—generally is not extreme and outrageous conduct."); *Beck v. Interstate Brands Corp.*, 953 F.2d 1275, 1276 (11th Cir. 1992) ("Even if the employee is not terminable at will, discharge for an improper reason does not constitute the egregious kind of conduct on which a claim of intentional infliction of emotional distress can be based."); *Anderson,* 678 F. Supp. 2d at 1331-32 (giving plaintiff "unofficial notices," "badgering" her about her work performance, and terminating her employment insufficient to constitute IIED); *Pierri v. Cingular Wireless, LLC*, 397 F. Supp. 2d 1364, 1381 (N.D. Ga. 2005) ("Georgia law does not consider adverse employment actions 'extreme or outrageous.'"); *Robinson v. United Parcel Service, Inc.,* No. 1:06-CV-2601-RLV, 2007 WL 3484743, *7 (N.D. Ga. Nov. 14, 2007) ("[N]egative performance evaluations, demanding business practices, and termination are recognized as common aspects of being employed."); *Farrior v. H.J. Russell & Co.*, 45 F. Supp. 2d 1358, 1363-64 (N.D. Ga. 1999) (discriminatory termination insufficiently outrageous to support IIED claim).

Plaintiff cannot possibly support an IIED claim. As discussed above, stressful and even discriminatory terminations are insufficient to sustain IIED claims, and Plaintiff's allegations do not even meet this level of stress because he still is employed. As shown above, both state and federal courts in Georgia routinely dismiss IIED claims arising from one's employment, even in cases with allegations far more egregious than what Plaintiff allegedly experienced. *See also*

*Southland Propane, Inc. v. McWhorter*, 312 Ga. App. 812, 819 (2011) (reversing plaintiff's jury verdict on IIED claim with direction to enter judgment for defendants, noting "[c]omments made within the context of one's employment may be horrifying or traumatizing, but [they] are generally considered a common vicissitude of ordinary life," and "[t]he same is true of false accusations of dishonesty in the workplace"); *Law v. Harris*, 295 Ga. App. 628, 629 (2009) (supervisor's being "verbally abusive," "humiliat[ing] [plaintiff] in front of other [C]hurch members," "ma[king] direct threats," and being "confrontational" to plaintiff insufficiently extreme or outrageous to support IIED claim, noting "the law does not provide a remedy for alleged conduct that is merely rude or insulting").

In addition, Plaintiff alleges no facts whatsoever to render the City as a whole liable for the alleged statements and actions of only one member of its City Council. "An employer cannot be vicariously liable for an employee's intentional harassment of another employee unless the employer ratifies the conduct." *Mears v. Gulfstream Aero. Corp.*, 225 Ga. App. 636, 641 (1997); *see also infra* Part II.4.b (citing cases regarding ratification in context of city councils). Plaintiff's IIED allegations therefore fail as a matter of law and should be dismissed.

### 3.  Plaintiff Alleges No Statements That Would Constitute Slander Or Any Facts To Render The City Liable

While Plaintiff alleges in conclusory fashion that Councilwoman Wells has made "numerous false and defamatory remarks" about him, he fails to identify a *single* statement to support this conclusion. *See Wylie v. Denton*, 323 Ga. App. 161, 170 (2013) (for defamation claim to survive motion to dismiss, complaint must contain "facts sufficient to provide [the defendant] with notice of both the content of the allegedly defamatory statements and the context in which those statements were made").

More fundamentally, any purportedly slanderous statements by Councilwoman Wells cannot be attributable to the City. Plaintiff alleges no facts whatsoever to show the City ratified or directed Councilwoman Wells to make the alleged defamatory statements. Even if he could allege such facts (which he cannot do), Georgia law does not recognize corporate liability for slander based on ratification. *Dougherty v. Harvey*, 317 F. Supp. 3d 1287, 1294 (N.D. Ga. 2018) (citing *Ray v. American Legion Auxiliary*, 224 Ga. App. 565, 567 (1997); *Church of God, Inc. v. Shaw*, 194 Ga. App. 694, 695 (1990)); *see also Shaw*, 194 Ga. App. at 695 ("[A] corporation lacks the capacity to commit slander[.]").

### 4. Plaintiff's Whistleblower Retaliation Claim Fails As A Matter Of Law

#### a. Any Whistleblower Retaliation Claim Based On Events Occurring Before November 1, 2020 Is Time-Barred And Must Be Dismissed

The GWA requires whistleblower retaliation claims to be asserted "within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier." O.G.C.A. § 45-1-4(e)(1). "Retaliation" under the statute is limited to "adverse employment action[s]." § 45-1-4(a)(5).

Since Plaintiff filed this action on November 1, 2021, his whistleblower retaliation claim is limited to "adverse employment action[s]" occurring *after* November 1, 2020. According to the allegations in his Complaint, this timeframe limits his claim to (1) his November 2020 "demotion," (2) the investigation into workplace surveillance, and (3) Councilwoman Wells's alleged comments. (*See* Compl. ¶¶ 40, 48, 53-55, 63-64, 71.) A GWA claim based on any other actions is due to be dismissed as untimely.[1]

---

[1] While the phrase "hostile work environment" appears in many places in Plaintiff's Complaint, the undersigned is unaware of any controlling authority recognizing such a claim under the GWA in the many decades the GWA has been in existence.

### b.   Plaintiff Fails To Identify Any Actionable Adverse Employment Actions Occurring After November 1, 2020

None of the alleged events after November 1, 2020 is an adverse employment action for purposes of the GWA. Under the GWA, the phrase "adverse employment action" is interpreted to mean employment action analogous to or of a similar kind as a "discharge, suspension, or demotion." *Franklin v. Pitts*, 349 Ga. App. 544, 554 (2019).

Georgia courts construe "adverse employment action" under the GWA consistent with the interpretation given to discrimination claims under Title VII of the Civil Rights Act, *see id.* at 552, which requires a "threshold level of substantiality." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238-39 (11th Cir. 2001). Importantly, the employee's subjective perception of the seriousness of the employment action is not controlling; rather, the issue is viewed objectively from the perspective of a reasonable person under the circumstances. *Id*. Allegations of supervisory nit-picking, changes in job duties or responsibilities, being investigated, or receiving increased scrutiny do not meet the threshold level of substantiality to be an actionable "adverse employment action." *See id*. (loss of officer-in-charge designation, increased workload/assignments, and negative job criticisms, did not constitute actionable adverse employment actions); *Grimsley v. Marshalls of MA, Inc.*, 284 F. App'x 604 (11th Cir. 2008) (same, increased work load); *Barnett v. Athens Reg'l Med. Ctr. Inc.*, 550 F. App'x 711, 713 (11th Cir. 2013) (same, counseling and scolding); *Henderson v. City of Birmingham*, 826 F. App'x 736, 740-41 (11th Cir. 2020) (investigating an employee is not an adverse employment action).

While Plaintiff asserts in his Complaint that he was "demoted" on November 4, 2020, his specific allegations show this not to be the case at all:

> [O]n November 4, 2020, Chief Clark was demoted from his position of Deputy City Manager. Specifically, Chief Clark's ***contract was amended*** so that he would only serve as Public

- 11 -

> Safety Director and Chief of Police. Chief Clark was only to serve
> as Deputy City Manager in the absence of a City Manager.

(Compl. ¶ 40 (emphasis added).) Plaintiff thus did not receive an involuntary "demotion." Rather, he entered into a new employment contract with the City, the terms to which he indicated his agreement and assent by *signing* it. "One who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them." *Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799, 806 (11th Cir. 2020) (quoting 27 Williston on Contracts § 70:114 (4th ed.)).

The fact that Plaintiff chooses to use the word "demotion" when discussing a contract into which he willingly entered is not controlling because, as discussed above, whether an employment action is adverse is subject to a reasonableness test and not on how the Plaintiff subjectively views the employment action. *See Davis*, 245 F.3d at 1239-40. Plaintiff alleges nothing in his Complaint to suggest any fraud, undue influence, or anything else to call into question the validity and/or mutual assent of his employment contract with the City. Nor does he allege this new contract resulted in any decrease in pay.

Plaintiff's mischaracterization of his new employment contract as a "demotion" further is evidenced by his allegation that "Chief Clark was only to serve as Deputy City Manager in the absence of a City Manager." (Compl. ¶ 40.) Thus, he admits he actually *does* still serve as Deputy City Manager. To the extent he takes issue with the fact that he serves in this position only in the City Manager's absence, this outcome actually is demanded by the City's Charter:

> Sec. 2.42. - Acting city manager.
>
> > (a) By letter filed with the city clerk, the city manager may designate, subject to approval of the city council, a qualified city administrative officer to exercise the powers and perform the duties of city manager *during his temporary absence or disability.* During such absence or

disability, the city council may revoke such designation at any time and appoint another qualified city administrative officer of the city to serve until the city manager shall return or his disability shall cease.

(b) In the event of the city manager's permanent absence for any reason, or in the event a temporary absence or disability later becomes a permanent absence or disability, the city council shall have the authority to designate a city administrative officer to exercise the powers and perform the duties of city manager until such time as the permanent replacement for the city manager has been determined. Voting on the replacement city manager shall be conducted as for the adoption or ordinances as set out in section 2.23 of this charter. The person appointed pursuant to this provision shall be the acting city manager until such time as another qualified city administrative officer is so designated or a new city manager is appointed pursuant to section 2.40 of this charter.

Charter of City of Forest Park § 2.42 (emphasis added).[2] Plaintiff cannot seriously contend the City's following its Charter is unlawful retaliation or even an adverse employment action.

The two remaining alleged adverse actions within the limitations period (*i.e.*, the alleged investigation into workplace surveillance and Councilwoman Wells's alleged comments) are even further from the "threshold level of substantiality" than the mischaracterized "demotion." *See Davis*, 245 F.3d at 1238-39. The City has a duty to investigate complaints of potential workplace rule violations, and Plaintiff does not allege the investigation resulted in any negative consequences for his job. To the contrary, he admits that the City's investigation showed the allegations against him were unfounded. (*Id.* ¶ 55.)

As for Councilwoman's Wells's alleged comments, he fails to identify a single comment that he contends to be retaliatory. In any event, it is well-established that Councilwoman Wells's purported motives in making any such comments cannot be attributed to the City because

---

[2] The Court "may take judicial notice of city charter provisions." *City of Rincon v. Ernest Cmtys., LLC*, 356 Ga. App. 84, 88 n.3 (2020).

Councilwoman Wells is just one member of a five-person City Council. *See Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002) (holding that "[b]ecause policymaking authority rests with the [council] as an entity," liability may not attach unless the council "ratif[ies] not only the decision itself, but also the unconstitutional basis for it") (citation omitted); *Mason v. Village of El Portal*, 240 F.3d 1337, 1339 (11th Cir. 2001) ("[T]here can be no municipal liability unless all three members of the [five-person] council who voted against reappointing Plaintiff shared the illegal motive."); *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994) (comments of one city councilman suggesting an unconstitutional motive was insufficient to show that the city council had authorized an unconstitutional policy); *Jones v. City of Coll. Park*, No. 1:05-CV-1797-WBH, 2011 U.S. Dist. LEXIS 91500, at *8 (N.D. Ga. Mar. 3, 2011) (holding city had no liability for race discrimination claim when on two of four-person city council had discriminatory motive in voting to terminate plaintiff). Thus, regardless of what Councilwoman Wells did or did not say, her comments are not actions *by* the City and therefore wholly insufficient to support a whistleblower retaliation claim.

### III.   CONCLUSION

For the reasons set forth above, the City respectfully requests that its Motion to Dismiss be granted and that the Court dismiss with prejudice all claims asserted against the City in this action.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Michael M. Hill*
Michael M. Hill
Georgia Bar No. 770486
Shaheem M. Williams
Georgia Bar No. 666654

- 14 -

100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339
T: (770) 818-0000
F: (770) 937-9960

*Counsel for City of Forest Park, GA*

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

NATHANIEL CLARK,                      )
                                      )
    Plaintiff,               )          Civil Action
                                      )          No. 2021CV03928-14
v.                                    )
                                      )
CITY OF FOREST PARK, GA and           )
LATRESA AKINS-WELLS, in her           )
Official and individual capacity,     )
                                      )
    Defendants.              )

### CERTIFICATE OF SERVICE

I certify that on this day I electronically filed the foregoing **CITY OF FOREST PARK,**

**GEORGIA'S MOTION TO DISMISS COMPLAINT** with the Clerk of Court using the Peach

Court e-filing system, which will automatically send electronic mail notification of such filing to all

counsel of record, and by depositing a true copy of the same in the United States mail, proper

postage prepaid, addressed to counsel of record as follows:

<div align="center">

Jackie Lee
LEE LAW FIRM, LLC
1100 Peachtree Street NE, Suite 250
Atlanta, Georgia 30309
jackie@leelawga.com

</div>

This 20th day of December, 2021.

<div align="right">

*/s/ Michael M. Hill*
Michael M. Hill
Georgia Bar No. 770486

</div>

FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339
Telephone (770) 818-0000
Facsimile (770) 937-9960

<div align="center">- 16 -</div>

⊕ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
CLAYTON COUNTY, GEORGIA

**2021CV03928-14**

**DEC 20, 2021 03:42 PM**

Jacqueline D. Wills, Clerk
Clayton County, Georgia

**IN THE SUPERIOR COURT OF CLAYTON COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| NATHANIEL CLARK, ) | |
| ) | |
| Plaintiff, ) | Civil Action |
| ) | No. 2021CV03928-14 |
| v. ) | |
| ) | |
| CITY OF FOREST PARK, GA and ) | |
| LATRESA AKINS-WELLS, in her ) | |
| Official and individual capacity, ) | |
| ) | |
| Defendants. ) | |

## CITY OF FOREST PARK, GEORGIA'S ANSWER
## AND DEFENSES TO PLAINTIFF'S COMPLAINT

COMES NOW The City of Forest Park, Georgia (the "City"), pursuant to O.C.G.A. §§ 9-

11-8 and 9-11-12 and answers Plaintiff's Complaint ("Complaint") as follows:

### FIRST DEFENSE

This Court lacks subject matter jurisdiction over some or all of Plaintiff's claims.

### SECOND DEFENSE

Some or all of Plaintiff's claims are barred by the doctrine of sovereign immunity.

### THIRD DEFENSE

The Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

### FOURTH DEFENSE

Some or all of Plaintiff's claims are barred by the applicable statute of limitations,

including the failure to file the instant lawsuit within the time-period required by the applicable

statute.

### FIFTH DEFENSE

All actions taken with respect to the Plaintiff were for legitimate, non-retaliatory reasons.

- 1 -

## SIXTH DEFENSE

The legitimate, non-retaliatory reasons for any adverse action taken with respect to the Plaintiff were not pretexts for unlawful retaliation.

## SEVENTH DEFENSE

Even if any adverse actions were taken against the Plaintiff for reasons related to Plaintiff's protected class status, protected activity, or any exercise by Plaintiff of protected rights, Plaintiff would have been subject to adverse employment actions or otherwise for reasons unrelated to any protected class status or activities, including after-acquired evidence.

## EIGHTH DEFENSE

Any adverse action taken against Plaintiff was done so in good faith without malice or reckless indifference to Plaintiff's protected rights.

## NINTH DEFENSE

Plaintiff did not make any disclosure or engage in any other activity protected under the Georgia Whistleblower Act ("GWA"), O.C.G.A. § 45-1-4.

## TENTH DEFENSE

Plaintiff has no actual or reasonable belief that he complained of or reported the possible existence of any activity constituting fraud, waste, or abuse in or relating to any state programs or operations under the jurisdiction of the City.

## ELEVENTH DEFENSE

Plaintiff has no actual or reasonable belief that he complained of, disclosed, objected to, or refused to participate in any violation of any law, rule, or regulation, as defined by O.C.G.A. § 45-1-4(d).

## TWELFTH DEFENSE

The City has not made, adopted or enforced a policy or practice of preventing disclosure of or noncompliance with any law, rule, or regulation.

## THIRTEENTH DEFENSE

Any complaint made by Plaintiff was made knowing it was false or with reckless disregard for its truth or falsity.

## FOURTEENTH DEFENSE

No act or omission of the City either proximately caused or contributed to any injuries or damages allegedly incurred by Plaintiff. Therefore, Plaintiff has no right of recovery against the City.

## FIFTEENTH DEFENSE

Some or all of Plaintiff's claims under the GWA fail because Plaintiff did not experience a tangible adverse employment action.

## SIXTEENTH DEFENSE

Plaintiff's damages are limited to those remedies and those amounts provided for by statute.

## SEVENTEENTH DEFENSE

Plaintiff has failed to mitigate damages as required by law.

## EIGHTEENTH DEFENSE

Plaintiff's Complaint fails to state a claim for punitive, actual, special, exemplary, and/or compensatory damages.

## NINTEENTH DEFENSE

Plaintiff's Complaint fails to state a claim for punitive damages. The City and Defendant

Latresa Akins-Wells sued in her official capacity are immune from liability for punitive damages, and punitive damages are the responsibility of none other than the active tortfeasor.

### TWENTIETH DEFENSE

Some or all of Plaintiff's claims are barred by the doctrine of fraud.

### TWENTY-FIRST DEFENSE

Plaintiff has unclean hands.

### TWENTY-SECOND DEFENSE

The GWA does not support a claim for retaliatory hostile work environment.

### TWENTY-THIRD DEFENSE

Even if Plaintiff was subject to unlawful conduct based on Plaintiff's protected class status, protected activity, or any exercise by Plaintiff of protected rights, the City exercised reasonable care to prevent and correct the actions which support Plaintiff's claim and Plaintiff unreasonably failed to avail himself of preventive or corrective opportunities or to avoid harm otherwise.

### TWENTY-FOURTH DEFENSE

Plaintiff has not been subjected to retaliatory harassment and Plaintiff's Complaint does not allege, nor has Plaintiff experienced, retaliatory conduct sufficiently severe or pervasive to constitute conduct for which there is a legal remedy.

### TWENTY-FIFTH DEFENSE

The Defendants sued in their official capacity or otherwise are not liable for the individual acts of any of the Defendants.

### TWENTY-SIXTH DEFENSE

Defendants named in both their individual and official capacity are improperly joined as parties to the extent that they are named in their official capacity.

## TWENTY-SEVENTH DEFENSE

Plaintiff's claims may be subject to apportionment including pursuant to O.C.G.A § 51-12-33 and otherwise.

## TWENTY-EIGHTH DEFENSE

Some or all of Plaintiff's claims are barred by Plaintiff's failure to exhaust administrative remedies.

## TWENTY-NINTH DEFENSE

Plaintiff's claims are barred by the doctrines of absolute and qualified privilege provided by law and as provided for by O.C.G.A. § 51-5-7.

## THIRTIETH DEFENSE

Plaintiff's claims are barred by the doctrine of truth and by justification provided for by law and by O.C.G.A. § 51-5-6.

## THIRTY-FIRST DEFENSE

Plaintiff's Complaint alleges communications that, if made, are protected opinion and cannot provide a basis for any defamation claims by Plaintiff.

## THIRTY-SECOND DEFENSE

The City reserves the right to plead and prove such other defenses as may become known during the course of its investigation.

## THIRTY-THIRD DEFENSE

For answers to the respective paragraphs of the Complaint, the City shows as follows:

## PARTIES

1.

The City shows that this paragraph contains a legal conclusion to which no response is

required; however, to the extent a response is required, the City admits Plaintiff was hired as Police Chief on May 14, 2019.  The City denies the remaining allegations pled in Paragraph 1 of the Complaint.

2.

The City shows that this paragraph contains a legal conclusion to which no response is required; however, to the extent a response is required, the City admits its principal address is located at 745 Forest Parkway, Forest Park, GA 30297.  The City denies the remaining allegations pled in Paragraph 2 of the Complaint.

3.

The City admits the allegations pled in Paragraph 3 of the Complaint.

**JURISDICTION AND VENUE**

4.

The City admits the allegations pled in Paragraph 4 of the Complaint.

5.

The City admits that Councilwoman Latresa Akins-Wells ("Defendant Wells") and the City reside in Clayton County.  The City denies the remaining allegations pled in Paragraph 5 of the Complaint

6.

The City denies the allegations pled in Paragraph 6 of the Complaint.

**FACTUAL ALLEGATIONS**

7.

The City admits Plaintiff was hired as Police Chief on May 14, 2019.  The City is without knowledge or information sufficient to admit or deny the truth of the allegation that Plaintiff is a

"permanent Black individual."  The City denies the remaining allegations pled in Paragraph 7 of the Complaint.

8.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 8 of the Complaint.

9.

The City admits the allegations pled in Paragraph 9 of the Complaint.

10.

The City admits the allegations pled in Paragraph 10 of the Complaint.

11.

The City admits the allegations pled in Paragraph 11 of the Complaint.

12.

The City admits that an audit was conducted on the Police Department after Plaintiff became Chief of Police.  The City is without knowledge or information sufficient to admit or deny the truth of the remaining allegations pled in Paragraph 12 of the Complaint.

13.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 13 of the Complaint.

14.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 14 of the Complaint.

15.

The City is without knowledge or information sufficient to admit or deny the truth of the

allegations pled in Paragraph 15 of the Complaint.

16.

The City shows that the allegations pled in Paragraph 16 of the Complaint refer to an online document, the content of which speaks for itself.  The City is without knowledge or information sufficient to admit or deny the truth of the remaining allegations pled in Paragraph 16 of the Complaint.

17.

The City denies the allegations pled in Paragraph 17 of the Complaint.

18.

The City admits that City Manager Angela Redding left employment with the City in January 2020 and the City appointed Plaintiff as Interim City Manager/Police Chief effective January 7, 2020.  The City denies the remaining allegations pled in Paragraph 18 of the Complaint.

19.

The City admits the allegations pled in Paragraph 19 of the Complaint.

20.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 20 of the Complaint.

21.

The City admits Plaintiff recommended that a financial audit be conducted regarding SPLOST expenditures and that the City regularly conducts audits.  The City denies the remaining allegations pled in Paragraph 21 of the Complaint.

22.

The City admits the allegations pled in Paragraph 22 of the Complaint.

23.

The City shows that the allegations pled in Paragraph 23 of the Complaint refer to an external document, the content of which speaks for itself.  The City admits Plaintiff received a performance review on June 30, 2020 from City Manager Barker.  The City denies the remaining allegations pled in Paragraph 23 of the Complaint.

24.

The City shows that the allegations pled in Paragraph 24 of the Complaint refer to a document attached to the Complaint as Exhibit A, the content of which speaks for itself.  The City denies the remaining allegations pled in Paragraph 24 of the Complaint.

25.

The City admits creating the position of Deputy City Manager/Public Safety Director.  The City denies the remaining allegations pled in Paragraph 25 of the Complaint.

26.

The City shows that the allegations pled in Paragraph 26 of the Complaint refer to a document attached to the Complaint as Exhibit B, the content of which speaks for itself.  The City denies the remaining allegations pled in Paragraph 26 of the Complaint.

27.

The City denies the allegations pled in Paragraph 27 of the Complaint.

28.

The City is without knowledge or information sufficient to admit or deny the truth of whether City Manager Barker made the statements to Plaintiff alleged in Paragraph 28 of the Complaint.  The City denies the remaining allegations pled in Paragraph 28 of the Complaint.

29.

The City shows that the allegations pled in Paragraph 29 of the Complaint refer to a document attached to the Complaint as Exhibit C, the content of which speaks for itself. The City is without knowledge or information sufficient to admit or deny the truth of the remaining allegations pled in Paragraph 29 of the Complaint.

30.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 30 of the Complaint.

31.

The City shows that the allegations pled in Paragraph 31 of the Complaint refer to a document attached to the Complaint as Exhibit D, the content of which speaks for itself. The City admits it regularly conducts audits. The City is without knowledge or information sufficient to admit or deny the truth of the remaining allegations pled in Paragraph 31 of the Complaint.

32.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 32 of the Complaint.

33.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 33 of the Complaint.

34.

The City shows that the allegations pled in Paragraph 34 of the Complaint refer to a document attached to the Complaint as Exhibit E, the content of which speaks for itself. The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in

Paragraph 34 of the Complaint.

<div align="center">35.</div>

The City is without knowledge or information sufficient to admit or deny the truth of whether City Manager Barker made the statements alleged in Paragraph 35 of the Complaint to Plaintiff.  The City denies the remaining allegations pled in Paragraph 35 of the Complaint.

<div align="center">36.</div>

The City is without knowledge or information sufficient to admit or deny the truth of whether City Manager Barker made the statements alleged in Paragraph 36 of the Complaint to Plaintiff and "others."  The City denies the remaining allegations pled in Paragraph 36 of the Complaint.

<div align="center">37.</div>

The City shows that the allegations pled in Paragraph 37 of the Complaint refer to an external document, the content of which speaks for itself.  The City admits Plaintiff received a performance review from City Manager Barker on November 2, 2020.  The City denies the remaining allegations pled in Paragraph 37 of the Complaint.

<div align="center">38.</div>

The City shows that the allegations pled in Paragraph 38 of the Complaint refer to an external document, the content of which speaks for itself.  The City denies the remaining allegations pled in Paragraph 38 of the Complaint.

<div align="center">39.</div>

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 39 of the Complaint.

<div align="center">- 11 -</div>

40.

The City admits Plaintiff entered into a new employment contract with the City on November 4, 2020 and shows that the content of this employment contract speaks for itself.  The City denies the remaining allegations pled in Paragraph 40 of the Complaint.

41.

The City denies the allegations pled in Paragraph 41 of the Complaint.

42.

The City denies the allegations pled in Paragraph 42 of the Complaint.

43.

The City admits that Ken Thompson resigned from his position as Finance Director.   The City is without knowledge or information sufficient to admit or deny the truth of the remaining allegations pled in Paragraph 43 of the Complaint.

44.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 44 of the Complaint.

45.

The City admits the allegations pled in Paragraph 45 of the Complaint.

46.

The City admits Fire Chief Don Horton was put on administrative leave due to sexual harassment allegations against him.  The City is without knowledge or information sufficient to admit or deny the truth of the remaining allegations pled in Paragraph 46 of the Complaint.

47.

The City admits that an investigation was conducted into the sexual harassment allegations

against Fire Chief Horton, that the investigation determined that Fire Chief Horton violated the City's workplace harassment policy, and that the Governing Body terminated Fire Chief Horton after receiving the findings of the investigation.  The City denies the remaining allegations pled in Paragraph 47 of the Complaint.

48.

The City denies the allegations pled in Paragraph 48 of the Complaint.

49.

The City admits that Plaintiff appeared at Fire Chief Horton's appeal hearing.  The City denies the remaining allegations pled in Paragraph 49 of the Complaint.

50.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 50 of the Complaint.

51.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 51 of the Complaint.

52.

The City denies the allegations pled in Paragraph 52 of the Complaint.

53.

The City denies the allegations pled in Paragraph 53 of the Complaint.

54.

The City admits Plaintiff had a meeting with City Manager Marc-Antonie Cooper on May 28, 2021.  The City denies the remaining allegations pled in Paragraph 54 of the Complaint.

55.

The City admits that the City investigated an allegation of improper surveillance and determined the allegations to be unfounded.  The City denies the remaining allegations pled in Paragraph 55 of the Complaint.

56.

The City denies the allegations pled in Paragraph 56 of the Complaint.

57.

The City denies the allegations pled in Paragraph 57 of the Complaint.

58.

The City denies the allegations pled in Paragraph 58 of the Complaint.

59.

The City admits the City Manager hired the City's Fire Chief.  The City denies the remaining allegations pled in Paragraph 59 of the Complaint.

60.

The City denies the allegations pled in Paragraph 60 of the Complaint.

61.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 61 of the Complaint.

62.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 62 of the Complaint.

63.

The City is without knowledge or information sufficient to admit or deny the truth of the

allegations pled in Paragraph 63 of the Complaint.

64.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 64 of the Complaint.

65.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 65 of the Complaint.

66.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 66 of the Complaint.

67.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 67 of the Complaint.

68.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 68 of the Complaint.

69.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 69 of the Complaint.

70.

The City shows that the allegations pled in Paragraph 70 of the Complaint refer to an online document, the content of which speaks for itself.  The City denies the remaining allegations pled in Paragraph 70 of the Complaint.

71.

The City shows that the allegations pled in Paragraph 71 of the Complaint refer to an online document, the content of which speaks for itself.  The City denies the remaining allegations pled in Paragraph 71 of the Complaint.

72.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 72 of the Complaint.

73.

The City shows that the allegations pled in Paragraph 73 of the Complaint refer to an external document, the content of which speaks for itself.  The City denies the remaining allegations pled in Paragraph 73 of the Complaint.

74.

The City denies the allegations pled in Paragraph 74 of the Complaint.

75.

The City denies the allegations pled in Paragraph 75 of the Complaint.

76.

The City denies the allegations pled in Paragraph 76 of the Complaint.

77.

The City is without knowledge or information sufficient to admit or deny the truth of whether a City official told Plaintiff the statements alleged in Paragraph 77 of the Complaint.

**COUNT I:**
**RETALIATION UNDER THE**
**GEORGIA WHISTLEBLOWER ACT, O.C.G.A. § 45-1-4, *et seq.***
**(The City)**

78.

The City incorporates by reference its responses to Paragraphs 1 through 77 of the Complaint as though set forth specifically herein.

79.

The City shows that this paragraph contains a legal conclusion to which no response is required; however, to the extent a response is required, the City shows that the referenced code section, O.C.G.A. § 45-1-4, speaks for itself. The City denies the remaining allegations pled in Paragraph 79 of the Complaint.

80.

The City admits Plaintiff entered into a new employment contract with the City on November 4, 2020 and shows that the content of this employment contract speaks for itself. The City denies the remaining allegations pled in Paragraph 80 of the Complaint.

81.

The City denies the allegations pled in Paragraph 81 of the Complaint.

82.

The City denies the allegations pled in Paragraph 82 of the Complaint.

83.

The City denies the allegations pled in Paragraph 83 of the Complaint.

84.

The City denies the allegations pled in Paragraph 84 of the Complaint.

- 17 -

85.

The City denies the allegations pled in Paragraph 85 of the Complaint.

86.

The City denies the allegations pled in Paragraph 86 of the Complaint.

## COUNT II:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## <u>UNDER THE COMMON LAW OF GEORGIA</u>
### (Defendant Wells)

87.

The City incorporates by reference its responses to Paragraphs 1 through 86 of the Complaint as though set forth specifically herein.

88.

The City denies the allegations pled in Paragraph 88 of the Complaint.

89.

The City denies the allegations pled in Paragraph 89 of the Complaint.

## COUNT III:
## <u>SLANDER</u>
### (Defendant Wells)

90.

The City incorporates by reference its responses to Paragraphs 1 through 89 of the Complaint as though set forth specifically herein.

91.

The City denies the allegations pled in Paragraph 91 of the Complaint.

92.

The City denies the allegations pled in Paragraph 92 of the Complaint.

93.

The City denies the allegations pled in Paragraph 93 of the Complaint.

94.

The City denies the allegations pled in Paragraph 94 of the Complaint.

95.

The City denies Plaintiff is entitled to any of the relief set forth in the requests in the unnumbered "WHEREFORE" paragraph immediately following Paragraph 94 of the Complaint, including the relief sought in subsections (a) through (h), and denies that Plaintiff is entitled to any relief whatsoever under any theory at law or in equity. The City denies the remaining allegations pled in this unnumbered paragraph of the Complaint.

96.

Any allegations in the Complaint not heretofore answered, qualified, or denied are here and now denied as though set forth specifically and denied.

**WHEREFORE**, The City in the above-referenced civil action respectfully requests that this Court:

1.      Dismiss with prejudice Plaintiff's Complaint;

2.      Enter judgment in favor of the City and against Plaintiff;

3.      Award the City its reasonable attorney's fees, costs, and expenses pursuant to applicable law; and

4.      Award any and all other relief to the City that this Court may deem necessary and proper.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Michael M. Hill*
Michael M. Hill
Georgia Bar No. 770486
Shaheem M. Williams
Georgia Bar No. 666654
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339
T: (770) 818-0000
F: (770) 937-9960

*Counsel for City of Forest Park, GA*

- 20 -

**IN THE SUPERIOR COURT OF CLAYTON COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 2021CV03928-14 |
| v. | ) | |
| | ) | |
| CITY OF FOREST PARK, GA and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| Official and individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I certify that on this day I electronically filed the foregoing **CITY OF FOREST PARK, GEORGIA'S ANSWER AND DEFENSES TO PLAINTIFF'S COMPLAINT** with the Clerk of Court using the Peach Court e-filing system, which will automatically send electronic mail notification of such filing to all counsel of record, and by depositing a true copy of the same in the United States mail, proper postage prepaid, addressed to counsel of record as follows:

Jackie Lee
LEE LAW FIRM, LLC
1100 Peachtree Street NE, Suite 250
Atlanta, Georgia 30309
jackie@leelawga.com

This 20th day of December, 2021.

/s/ Michael M. Hill
Michael M. Hill
Georgia Bar No. 770486
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339
T: (770) 818-0000
F: (770) 937-9960

- 21 -

⚡ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
CLAYTON COUNTY, GEORGIA

**2021CV03928-14**

**JAN 06, 2022 04:52 PM**

Jacqueline D. Wills, Clerk
Clayton County, Georgia

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| vs. | ) | 2021-CV-03928-14 |
| | ) | |
| CITY OF FOREST PARK, GA, and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| Official and Individual Capacity, | ) | **Jury Trial Demanded** |
| | ) | |
| Defendants. | ) | |

## ANSWER AND DEFENSES OF DEFENDANT LATRESA AKINS-WELLS TO PLAINTIFF'S COMPLAINT

COMES NOW LATRESA AKINS-WELLS (hereinafter "this Defendant"), a named Defendant in the above-styled action, and files and serves this Answer and Defenses to Plaintiff's Complaint, respectfully showing this Court as follows:

### FIRST DEFENSE

Plaintiff's Complaint fails to state or set forth claims against this Defendant upon which relief can be granted.

### SECOND DEFENSE

As a Second Defense, this Defendant answers the numbered paragraphs of Plaintiff's Complaint as follows:

PARTIES

1.

The allegations set forth in paragraph 1 regarding O.C.G.A. § 45-1-4 are statements of law requiring no response from this Defendant. This Defendant responds that she is without sufficient

- 1 -

knowledge or information to admit or deny the remaining allegations set forth in paragraph 1 and puts Plaintiff on strict proof of same.

2.

This Defendant admits that the City of Forest Park's principal address is located at 745 Forest Parkway, Forest Park, GA 30297.  The remaining allegations set forth in paragraph 2 regarding O.C.G.A. § 45-1-4 are statements of law requiring no response from this Defendant. To the extent further response is required, this Defendant denies the allegations as stated.

3.

This Defendant admits that she serves as an elected member of the City Council of the City of Forest Park. This Defendant also admits that Plaintiff purports to sue this Defendant in her individual and official capacities, but she denies any and all liability to Plaintiff.

JURISDICTION AND VENUE

4.

The allegation regarding venue and jurisdiction is a statement of law requiring no response from this Defendant. This Defendant denies any and all liability to Plaintiff in connection with the acts, events or omissions alleged in Plaintiff's Complaint.

5.

This Defendant admits that she and the City of Forest Park reside in Clayton County, but she is without sufficient knowledge or information to admit or deny the remaining allegations. This Defendant denies that she engaged in any unlawful conduct.

6.

This Defendant denies the allegations in paragraph 6.

FACTUAL ALLEGATIONS

7.

This Defendant avers that Plaintiff was hired as Police Chief on May 15, 2019. This Defendant denies the allegations in paragraph 7 as stated.

8.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 8 and puts Plaintiff on strict proof of same.

9.

This Defendant admits the allegations contained within paragraph 9.

10.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 10 and puts Plaintiff on strict proof of same.

11.

This Defendant admits the allegations contained within paragraph 11.

12.

This Defendant admits that, shortly after Chief Clark was hired, an audit was conducted on the City of Forest Park Police Department. This Defendant is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 12 and puts Plaintiff on strict proof of same.

13.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 13 and puts Plaintiff on strict proof of same.

14.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 14 and puts Plaintiff on strict proof of same.

15.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 15 and puts Plaintiff on strict proof of same.

16.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 16 and puts Plaintiff on strict proof of same. In further response, this Defendant states that the document referenced speaks for itself.

17.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 17 and puts Plaintiff on strict proof of same.

18.

This Defendant admits that the City appointed Plaintiff as Interim City Manager/Police Chief after City Manager left her employment with the City in January of 2020. This Defendant denies the remaining allegations set forth in paragraph 18.

19.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 19 and puts Plaintiff on strict proof of same.

- 4 -

20.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 20 and puts Plaintiff on strict proof of same.

21.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 21 and puts Plaintiff on strict proof of same.

22.

This Defendant admits the allegations set forth in paragraph 22.

23.

This Defendant admits that Plaintiff's June 30, 2020, annual performance review states that "Chief Clark identified and addressed an array of structural and systemic issues (i.e. FLSA and Title VII violations, Enhanced Recruitment and Disparities, CAD/Record Management failures)" and that "during this appointment the reported crime rate decreased significantly in 2019 (8 year low)." This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 23 and puts Plaintiff on strict proof of same. This Defendant states that the performance review speaks for itself.

24.

This Defendant admits that a copy of a document titled "Correspondence from Barker regarding Chief Clark's promotion" is attached to the Complaint as Exhibit A. This Defendant states that Exhibit A speaks for itself. To the extent that any allegations contained in paragraph 24 of Plaintiff's Complaint are inconsistent with the statements contained therein, those allegations are denied. This Defendant denies the remaining allegations set forth in paragraph 24.

- 5 -

25.

This Defendant denies the allegations set forth in paragraph 25 as stated.

26.

This Defendant admits that a copy of a document titled "Public Safety Director/Deputy City Manager job description" is attached to the Complaint as Exhibit B. To the extent that any allegations contained in paragraph 26 of Plaintiff's Complaint are inconsistent with the statements contained therein, those allegations are denied.  This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 26 and puts Plaintiff on strict proof of same.

27.

This Defendant denies the allegations set forth in paragraph 27.

28.

This Defendant denies that she harassed or retaliated against Plaintiff. This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 28 and puts Plaintiff on strict proof of same.

29.

This Defendant admits that a copy of a purported email dated September 4, 2020, from Chief Clark to Albert Barker is attached to the Complaint as Exhibit C. The content of Exhibit C speaks for itself. To the extent that any allegations contained in paragraph 29 of Plaintiff's Complaint are inconsistent with the statements contained therein, those allegations are denied. This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 29 and puts Plaintiff on strict proof of same.

30.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 30 and puts Plaintiff on strict proof of same.

31.

This Defendant admits that a copy of an email dated August 27, 2021, from Chief Clark to Deputy Finance Director Darquita Williams is attached to the Complaint as Exhibit D. The content of Exhibit D speaks for itself. To the extent that any allegations contained in paragraph 31 of Plaintiff's Complaint are inconsistent with the statements contained therein, those allegations are denied. This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 31 and puts Plaintiff on strict proof of same.

32.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 32 and puts Plaintiff on strict proof of same.

33.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 33 and puts Plaintiff on strict proof of same.

34.

This Defendant admits that a copy of an email dated October 28, 2020, from Chief Clark to Albert Barker is attached to the Complaint as Exhibit E. The content of Exhibit E speaks for itself. To the extent that any allegations contained in paragraph 34 of Plaintiff's Complaint are inconsistent with the statements contained therein, those allegations are denied. This Defendant

responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 34 and puts Plaintiff on strict proof of same.

35.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 35 and puts Plaintiff on strict proof of same. This Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

36.

This Defendant denies that she told Barker to offer Chief Clark a large sum of money to stop the financial audits. This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 36 and puts Plaintiff on strict proof of same.

37.

This Defendant admits that Barker's November 2, 2020, performance review noted that "Chief Clark was appointed Deputy City Manager/Director of Public Safety on July 1, 2020; he also continues to hold the position of Police Chief; during this appointment the reported crime rate decreased significantly in 2020 (21-year low), this speaks volume [sic] of Chief Clark's dedication in making the community safe for all." The content of the performance review speaks for itself. This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 37 and puts Plaintiff on strict proof of same.

38.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 38 and puts Plaintiff on strict proof of same. The content of the performance review speaks for itself.

39.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 39 and puts Plaintiff on strict proof of same. This Defendant denies that she committed any wrongful acts, and she further denies any and all liability to Plaintiff.

40.

This Defendant admits that Chief Clark signed a professional services agreement on November 4, 2020. The content of the agreement speaks for itself. This Defendant denies the remaining allegations set forth in paragraph 40.

41.

This Defendant denies the allegation set forth in paragraph 41.

42.

This Defendant denies the allegation set forth in paragraph 42.

43.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 43 and puts Plaintiff on strict proof of same.

44.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 44 and puts Plaintiff on strict proof of same.

- 9 -

45.

This Defendant admits the allegations set forth in paragraph 45.

46.

This Defendant admits that Fire Chief Horton was put on administrative leave. This Defendant is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 46 and puts Plaintiff on strict proof of same.

47.

This Defendant admits the allegations against Fire Chief Horton were investigated and that the findings of the investigation were submitted to the Governing Body. This Defendant further admits that Fire Chief Horton was terminated. This Defendant denies the remaining allegations set forth in paragraph 47 as stated.

48.

This Defendant denies the allegations set forth in paragraph 48. Responding further, this Defendant denies that she committed any wrongful acts, and she further denies any and all liability to Plaintiff.

49.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 49 and puts Plaintiff on strict proof of same. This Defendant denies that she committed any wrongful acts, and she further denies any and all liability to Plaintiff.

- 10 -

50.

This Defendant denies the allegations set forth in paragraph 50. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

51.

This Defendant denies the allegations set forth in paragraph 51. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

52.

This Defendant denies the allegations set forth in paragraph 52.

53.

This Defendant denies the allegations set forth in paragraph 53. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

54.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 54 and puts Plaintiff on strict proof of same.

55.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 55 and puts Plaintiff on strict proof of same.

56.

This Defendant denies the allegations set forth in paragraph 56.

{SECURE Firm/1049/00028/DRAFTS/03304488.DOCX }

57.

This Defendant denies the allegations set forth in paragraph 57.

58.

This Defendant denies the allegations set forth in paragraph 58.

59.

This Defendant denies that Plaintiff was responsible for hiring fire department employees as Public Safety Director. This Defendant denies the remaining allegations set forth in paragraph 59, as stated.

60.

This Defendant denies the allegations set forth in paragraph 60.

61.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 61 and puts Plaintiff on strict proof of same.

62.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 62 and puts Plaintiff on strict proof of same.

63.

This Defendant denies the allegations set forth in paragraph 63, as stated. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

{SECURE Firm/1049/00028/DRAFTS/03304488.DOCX }

64.

This Defendant denies the allegations set forth in paragraph 64. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

65.

This Defendant admits that she sought exit interview information in an effort to find ways to retain employees in the department. This Defendant denies the remaining allegations set forth in paragraph 65.

66.

This Defendant denies the allegations set forth in paragraph 66.

67.

This Defendant admits that she sought exit interview information in an effort to find ways to retain employees in the department. This Defendant denies the remaining allegations set forth in paragraph 67. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

68.

This Defendant admits a criminal investigation was opened regarding allegations against this Defendant and her husband. This Defendant is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 68 and puts Plaintiff on strict proof of same. Responding further, this Defendant denies that she committed any criminal or wrongful acts and she further denies any and all liability to Plaintiff.

69.

This Defendant denies receiving confidential information from someone at the police department regarding the details of the investigation. This Defendant is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 69 and puts Plaintiff on strict proof of same. Responding further, this Defendant denies that she committed any criminal or wrongful acts and she further denies any and all liability to Plaintiff.

70.

This Defendant admits posting a video to Facebook on September 22, 2021. The Defendant avers that the content of the Facebook video speaks for itself.  This Defendant denies the remaining allegations set forth in paragraph 70.

71.

This Defendant admits that the Facebook video posted on September 22, 2021, has received 49 comments to date. This Defendant denies making false statements about Plaintiff. This Defendant is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 71 and puts Plaintiff on strict proof of same. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

72.

This Defendant denies receiving any improper information regarding an anonymous email sent to Cooper on September 12, 2021. This Defendant states that the content of the purported email speaks for itself. This Defendant is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 72 and puts Plaintiff on strict proof of same.

Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

73.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 73 and puts Plaintiff on strict proof of same. This Defendant states that the content of the purported email speaks for itself. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

74.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 74 and puts Plaintiff on strict proof of same. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

75.

This Defendant denies participating in any retaliation against Plaintiff. This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 75 and puts Plaintiff on strict proof of same. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

76.

This Defendant denies participating in any retaliation against Plaintiff. This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 76 and puts Plaintiff on strict proof of same. Responding further,

- 15 -

this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

77.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 77 and puts Plaintiff on strict proof of same. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

## COUNT I

### Retaliation Under the Georgia Whistleblower Protection Act

### O.C.G.A. § 45-1-4 *et seq.*

*(Defendant City of Forest Park, GA)*

78.

Defendant incorporates herein by reference as if fully set forth herein its responses to paragraphs 1 through 77 of Plaintiff's Complaint.

79.

The allegations set forth in paragraph 79 are statements of law requiring no response from this Defendant. To the extent further response is required, this Defendant admits that Plaintiff purports to bring an action under the Georgia Whistleblower Act, O.C.G.A. § 45-1-4 ("GWA"), but this Defendant denies that Defendant violated the GWA. This Defendant denies any and all liability to Plaintiff.

- 16 -

80.

This Defendant admits that Chief Clark signed a professional services agreement on November 4, 2020. This Defendant states that the content of the agreement speaks for itself. This Defendant avers that the duties related to Public Safety Director and Chief of Police remained the same in this agreement. This Defendant denies the remaining allegations set forth in paragraph 80.

81.

This Defendant denies the allegations set forth in paragraph 81.

82.

This Defendant denies the allegations set forth in paragraph 82.

83.

This Defendant denies the allegations set forth in paragraph 83.

84.

This Defendant denies the allegations set forth in paragraph 84.

85.

This Defendant denies the allegations set forth in paragraph 85.

86.

This Defendant denies the allegations set forth in paragraph 86. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

## **COUNT II**

### **Intentional Infliction of Emotional Distress**

### **Under the Common Law of Georgia**

*(Defendant Wells)*

87.

Defendant incorporates herein by reference as if fully set forth herein its responses to paragraphs 1 through 86 of Plaintiff's Complaint.

88.

This Defendant denies the allegations set forth in paragraph 88. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

89.

This Defendant denies the allegations set forth in paragraph 89. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

## COUNT III

### Slander

*(Defendant Wells)*

90.

Defendant incorporates herein by reference as if fully set forth herein its responses to paragraphs 1 through 89 of Plaintiff's Complaint.

91.

This Defendant denies the allegations set forth in paragraph 91. Responding further, this Defendant denies that she made any false or defamatory statements.

92.

This Defendant denies the allegations set forth in paragraph 92. Responding further, this Defendant denies that she made any false or defamatory statements, and she further denies any and all liability to Plaintiff.

93.

This Defendant denies that she made any false, malicious, defamatory statements and she further denies any and all liability to Plaintiff.

94.

This Defendant denies the allegations set forth in paragraph 94. Responding further, this Defendant denies that Plaintiff is entitled to any recovery. Plaintiff is not entitled to the requested relief.

95.

This Defendant denies the allegations contained in the unnumbered "WHEREFORE" paragraph, and its subparts, of Plaintiff's Complaint. This Defendant further denies that she is liable to Plaintiff and that Plaintiff is entitled to any relief from this Defendant.

96.

All other allegations in Plaintiff's Complaint not specifically responded to are hereby denied.

## **THIRD DEFENSE**

This Defendant is entitled to official immunity as to Plaintiff's state law claims against her in her individual capacity.

## FOURTH DEFENSE

To the extent this Defendant published any statement about Plaintiff, any and all such statements are substantially true and/or privileged.

## FIFTH DEFENSE

This Defendant asserts that Plaintiff's alleged damages, if any, were directly and proximately caused by persons or entities other than Defendant.

## SIXTH DEFENSE

The claims and allegations set forth in Plaintiff's Complaint, even if taken as true, do not state a claim for relief under O.C.G.A. § 45-1-4.  As such, Defendant respectfully submits that this Court lacks subject matter jurisdiction over Plaintiff's Complaint.

## SEVENTH DEFENSE

Plaintiff cannot recover punitive damages against this Defendant.

## EIGHTH DEFENSE

Some or all of Plaintiff's claims are time-barred by the applicable statute of limitations.

## NINTH DEFENSE

Plaintiff's claims against this Defendant in her official capacity are barred by sovereign immunity.

## TENTH DEFENSE

Plaintiff's claims against this Defendant in her official capacity are duplicative of Plaintiff's claims against Defendant City of Forest Park.

## ELEVENTH DEFENSE

This Defendant asserts each and every defense set forth in O.C.G.A. § 9-11-8 to the extent applicable.

- 20 -

WHEREFORE, having answered fully, Defendant LATRESA AKINS-WELLS respectfully requests that this Court dismiss the Complaint and cast all costs against Plaintiff.

**DEFENDANT DEMANDS A TRIAL BY JURY OF 12 JURORS.**

Respectfully submitted this 6th day of January, 2022.

<div style="margin-left:40%">

**Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**

*/s/ Karen E. Woodward*
Karen E. Woodward
Georgia Bar No. 775260
Email:  kwoodward@cmlawfirm.com
Direct Dial:  404-881-2623

*/s/ Marisa M. Beller*
Marisa M. Beller
Georgia Bar No. 845893
Email: mbeller@cmlawfirm.com
Direct Dial: 678-684-2147

*Attorneys for Defendant*
*Latresa Akins-Wells*

</div>

Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092

{SECURE Firm/1049/00028/DRAFTS/03304488.DOCX }

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day electronically filed **ANSWER AND DEFENSES OF DEFENDANT LATRESA AKINS-WELLS TO PLAINTIFF'S COMPLAINT** with the Clerk of Court using the PeachCourt file and serve system which will automatically serve an electronic copy of same upon the following counsel of record:

Jackie Lee
LEE LAW FIRM, LLC
1100 Peachtree St., NE, Ste. 250
Atlanta, GA 30309
jackie@leelawga.com
*(Attorney for Plaintiff)*

Michael M. Hill
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
mhill@fmglaw.com
*(Attorney for the City of Forest Park)*

This 6th day of January, 2022.

**Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**

*/s/ Karen E. Woodward*
Karen E. Woodward
Georgia Bar No. 775260

- 22 -

✦ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
CLAYTON COUNTY, GEORGIA

**2021CV03928-14**

**JAN 06, 2022 04:52 PM**

Jacqueline D. Wills, Clerk
Clayton County, Georgia

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| vs. | ) | 2021-CV-03928-14 |
| | ) | |
| CITY OF FOREST PARK, GA, and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| Official and Individual Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## DEMAND FOR TRIAL BY A JURY OF 12 JURORS
## BY DEFENDANT LATRESA AKINS-WELLS

COMES NOW LATRESA AKINS-WELLS, a named Defendant in the above-styled

action, and files and serves this Demand for Trial by a Jury of 12 Jurors pursuant to O.C.G.A.

§15-12-122(a)(2), which states as follows:

> In all civil actions in the state courts in which the claim for damages is greater than
> $25,000.00, either party may demand in writing prior to the commencement of the
> trial term that the case be tried by a jury of 12.  If such a demand is made, the judge
> shall follow the procedures for superior courts of sub-section (b) of this Code
> section.

See also O.C.G.A. § 15-12-123(a)(2), which provides:

> In all civil actions in the state courts in which a jury of 12 is demanded, the judge
> shall follow the procedures for superior courts of sub-section (b) of this Code
> section.

WHEREFORE, demand is made for trial of this case by a jury of 12 as provided by law.

*[signatures on next page]*

- 1 -

Respectfully submitted this 6th day of January, 2022.

**Cruser, Mitchell, Novitz, Sanchez,
Gaston & Zimet, LLP**

*/s/ Karen E. Woodward*
Karen E. Woodward
Georgia Bar No. 775260
Email:  kwoodward@cmlawfirm.com
Direct Dial:  404-881-2623

*/s/ Marisa M. Beller*
Marisa M. Beller
Georgia Bar No. 845893
Email: mbeller@cmlawfirm.com
Direct Dial: 678-684-2147

*Attorneys for Defendant
Latresa Akins-Wells*

Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this day electronically filed **DEMAND FOR TRIAL BY A JURY OF 12 JURORS BY DEFENDANT LATRESA AKINS-WELLS** with the Clerk of Court using the PeachCourt file and serve system which will automatically serve an electronic copy of same upon the following counsel of record:

Jackie Lee
LEE LAW FIRM, LLC
1100 Peachtree St., NE, Ste. 250
Atlanta, GA 30309
jackie@leelawga.com
*(Attorney for Plaintiff)*

Michael M. Hill
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
mhill@fmglaw.com
*(Attorney for the City of Forest Park)*

This 6th day of January, 2022.

**Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**

*/s/ Karen E. Woodward*
Karen E. Woodward
Georgia Bar No. 775260

- 3 -

✒ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
CLAYTON COUNTY, GEORGIA

**2021CV03928-14**

**JAN 06, 2022 04:52 PM**

Jacqueline D. Wills, Clerk
Clayton County, Georgia

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| vs. | ) | 2021-CV-03928-14 |
| | ) | |
| CITY OF FOREST PARK, GA, and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| Official and Individual Capacity, | ) | **Jury Trial Demanded** |
| | ) | |
| Defendants. | ) | |

**<u>DEFENDANT LATRESA AKINS-WELLS' MOTION TO DISMISS PLAINTIFF'S OFFICIAL CAPACITY CLAIMS AND DEFENDANT WELLS' MOTION TO ADOPT AND INCORPORATE CITY OF FOREST PARK'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT</u>**

COMES NOW Latresa Akins-Wells, a Defendant in the above-styled action, and, pursuant to O.C.G.A. §§ 9-11-12(b)(1) and (6), hereby moves to dismiss Plaintiff's official capacity claims against her. In addition, this Defendant moves to adopt and incorporate City of Forest Park's Motion to Dismiss and its brief in support thereof, or, in the alternative, this Defendant moves that Plaintiff pursuant to O.C.G.A. § 9-11-12(e) to file a more definite statement of his defamation claim.

As grounds for the Motion to Dismiss Plaintiff's official capacity claims, this Defendant respectfully submits that the claims asserted against her in her official capacity are functionally equivalent and redundant to the claims asserted against the City of Forest Park. Accordingly, Plaintiff's official capacity claims against Defendant Wells should be dismissed for failure to state a claim upon which relief can be granted.

This Defendant also adopts City of Forest Park's Motion to Dismiss and its brief in support thereof or, in the alternative, this Defendant requests that Plaintiff provide a more definite

statement as to his defamation claims. Although this Defendant has answered to the best of her ability, the Complaint is so vague or ambiguous that this Defendant cannot reasonably be required to frame a proper responsive pleading. In particular, the Complaint fails to show:

1. The content of the allegedly false statements; and

2. The context of the allegedly false statements;

3. To whom the allegedly false statement statements were made;

4. The approximate date that the allegedly false statements occurred.

WHEREFORE, for the reasons stated above, this Defendant respectfully request that this court grant Defendant Wells' Motions to Dismiss Plaintiff's official capacity claims and adopt and incorporate City of Forest Park's Motion to Dismiss and brief in support thereof or in the alternative enter an order requiring Plaintiff to file a more definite statement as to his defamation claims.

Respectfully submitted, this 6th day of January, 2022.

**Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**

/s/ Karen E. Woodward
Karen E. Woodward
Georgia Bar No. 775260
Email:  kwoodward@cmlawfirm.com
Direct Dial:  404-881-2623

/s/ Marisa M. Beller
Marisa M. Beller
Georgia Bar No. 845893
Email: mbeller@cmlawfirm.com
Direct Dial: 678-684-2147

*Attorneys for Defendant*
*Latresa Akins-Wells*

Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing **DEFENDANT LATRESA AKINS-WELLS' MOTION TO DISMISS PLAINTIFF'S OFFICIAL CAPACITY CLAIMS AND DEFENDANT WELLS' MOTION TO ADOPT AND INCORPORATE CITY OF FOREST PARK'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT** to all parties in this matter via PeachCourt to counsel of record addressed as follows:

Jackie Lee
LEE LAW FIRM, LLC
1100 Peachtree St., NE, Ste. 250
Atlanta, GA 30309
jackie@leelawga.com
*(Attorney for Plaintiff)*

Michael M. Hill
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
mhill@fmglaw.com
*(Attorney for the City of Forest Park)*

This 6th day of January, 2022.

> **Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**
>
> */s/ Karen E. Woodward*
> Karen E. Woodward
> Georgia Bar No. 775260

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
CLAYTON COUNTY, GEORGIA

**2021CV03928-14**

**JAN 06, 2022 04:52 PM**

Jacqueline D. Wills, Clerk
Clayton County, Georgia

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| vs. | ) | 2021-CV-03928-14 |
| | ) | |
| CITY OF FOREST PARK, GA, and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| Official and Individual Capacity, | ) | **Jury Trial Demanded** |
| | ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF DEFENDANT LATRESA AKINS-WELLS' MOTION TO DISMISS OFFICIAL CAPACITY CLAIMS AGAINST DEFENDANT LATRESA AKINS-WELLS AND MOTION TO ADOPT DEFENDANT OF CITY OF FOREST PARK'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT

Pursuant to O.C.G.A. §§ 9-11-12(b)(1) and (6), Defendant Latresa Akins-Wells, a named Defendant in the above-styled civil action, files this Motion to Dismiss all Plaintiff's claims against her. In support of this motion, this Defendant relies on her argument below, and she adopts and incorporates herein Defendant City of Forest Park's Brief in Support of City of Forest Park's Motion to Dismiss. Defendant Akins-Wells submits that the claims against her should be dismissed or, in the Alternative, this Court should require Plaintiff to file a more definite statement of Plaintiff's defamation claim pursuant to O.C.G.A. § 9-11-12(e). In addition, Defendant Wells seeks dismissal of Plaintiff's claims against her in her official capacity on the ground that they are duplicative of Plaintiff's claims against the City of Forest Park.

## I.    INTRODUCTION

Plaintiff filed the instant action on action on November 1, 2020, alleging whistleblower retaliation by co-Defendant City of Forest Park pursuant to the Georgia Whistleblower Act

("GWA"), O.C.G.A. § 45-1-4, and alleging claims of Intentional Infliction of Emotional Distress and Slander against Defendant Wells.   Councilwoman Wells served as a councilwoman for the City of Forest Park at the time of these incidents allegedly occurred.  Plaintiff sued Defendant Wells in both her individual and official capacities. (Complaint, Caption). For the reasons argued below, this Court should grant Defendant Wells' motion to dismiss the official capacity claims as they are duplicative of Plaintiff's claims against the City of Forest Park. Accordingly, Plaintiff fails to state a claim upon which relief can be granted against this Defendant as to Plaintiff's official capacity claims. This Defendant also adopts and herein incorporates City of Forest Park's motion to dismiss and its brief in support of said motion filed on January 6, 2022, and moves for dismissal on the grounds set forth in the City's motion. If this Court declines to dismiss the case on those grounds, this Defendant requests this Court to enter an order directing Plaintiff to provide a more definite statement of his defamation claim.

## II.      <u>STANDARD OF REVIEW</u>

A motion to dismiss filed pursuant to O.C.G.A. § 9-11-12(b)(6) for failure to state a claim upon which relief can be granted will be sustained if:  (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. <u>Racette v. Bank of Am., N.A.</u>, 318 Ga. App. 171, 172 (2012); <u>Anderson v. Daniel</u>, 314 Ga. App. 394, 397 (2012).   In ruling on a motion to dismiss under O.C.G.A. § 9-11-12(b)(6), a court must assume the factual allegations of the complaint are true. <u>Charles H. Wesley Educ. Fund., Inc. v. State Election Bd.</u>, 282 Ga. 707, 714 (2007).  Plaintiff's official capacity claims against Defendant Wells should be dismissed for failure to state a claim.

### III.     ARGUMENT AND CITATION TO AUTHORITY

#### A.  Plaintiff's Official Capacity Claims Against Defendant Wells Are Duplicative and Subject to Dismissal

Defendant Wells respectfully submits that the claims asserted against her in her official capacity are functionally equivalent and redundant to the claims asserted against the City of Forest Park.  Therefore, these claims are subject to dismissal. A claim against a public official in his official capacity is considered a claim against the governmental entity that the official represents. Hafer v. Melo, 502 U.S. 21, 25 (1991). *See also*, Smith v. City of Atlanta, No. 1:11-CV-765-TWT, 2011 WL 4500022, at *3 (N.D. Ga. Sept. 27, 2011)(dismissing claims against individual defendants asserted in their official capacities because said claims were redundant to claims asserted against employer-entity).Therefore, this Defendant respectfully requests that this Court dismiss Plaintiff's claims against her in her official capacity.

#### B.  Plaintiff's Slander and Intentional Infliction of Distress Claims Fail as a Matter of Law

This Defendant adopts and incorporates co-Defendant City of Forest Park's brief in support of Motion to dismiss herein and moves for dismissal on those grounds.

#### C.  In the Alternative, this Defendant Request that This Court Grant Defendant's Motion for More Definite Statement

In the event this Court denies this Defendant's motion to dismiss set forth in section B, above, this Defendant moves this Court to enter an Order requiring Plaintiff to amend his pleading to assert a more definite statement. Pursuant to O.C.G.A. § 9-11-12(e), when "a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a proper responsive pleading…[s]he may move for a more definite statement." Plaintiff's Complaint failed to include facts showing the content, context, or timing of for the allegedly defamatory statements. Plaintiff must provide Defendant Wells with the notice she needs

to defend against Plaintiff's slander claim. Specifically, a plaintiff "must plead sufficient facts to provide a defendant with notice of both the content of the allegedly defamatory statements and the context in which those statements were made." Wylie v. Denton, 323 Ga. App. 161, 170–71 (2013). A complaint must contain "[a] short and plain statement of the claims showing that the pleader is entitled to relief." O.C.G.A. § 9–11–8(a)(2)(A); Bush v. Bank of NY Mellon, 313 Ga. App. 84, 90 (2011).  "[T]his short and plain statement must include enough detail to afford the defendant fair notice of the nature of the claim and a fair opportunity to frame a responsive pleading."  Id. (quoting Benedict v. State Farm Bank, FSB, 309 Ga. App. 133, 134 (2011)).

A slander claim against a public official requires the plaintiff to show (1) that the defendant made a false and defamatory statement concerning plaintiff in reference to that person's trade, office, or profession calculated to injure that person therein; (2) the defendant made an unprivileged communication of that statement to a third party; (3) fault by the defendant constituting at least negligence; and (3) either that the plaintiff suffered special harm or that the statement is actionable even in the absence of special harm. O.C.G.A. § 51-5-4(1)(3); Wylie v. Denton, 323 Ga. App. 161, 171 (2013) (citing Renton v. Watson, 319 Ga. App. 896, 900 (2013)). Plaintiff vaguely alleges that:

1. Councilwoman Wells has made numerous false and defamatory remarks concerning the Chief Clark's tenure at the city;

2. During public City Council meetings, Councilwoman Wells made comments regarding Chief Clark's integrity; and

3. Councilwoman Wells made several false statements about Chief Clark with the specific intent to do harm in Facebook video posted on September 22, 2021.

(Complaint, ¶¶ 48, 63, 91). Plaintiff does not identify to whom these allegedly false statements were made, nor does she state the content, context or approximate date of these allegedly false statements. The allegations in the Complaint are so broad, vague, and far-reaching that it is impossible for this Defendant to know whether these purportedly false statements occurred in the last two months or in the last three years and in what context the purported statements occurred. Further, this Defendant reviewed the Facebook post at issue and fails to see any false statements in this video.

## IV.   **CONCLUSION**

For the foregoing reasons, Defendant Wells respectfully requests that this Court enter an order dismissing Plaintiff's official capacity claims against her. In addition, she moves for this Court to dismiss all of Plaintiff's individual capacity claims against her or, in the alternative, require Plaintiff to amend his Complaint to plead more definite facts regarding his defamation claim.

This 6th day of January, 2022.

> **Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**
>
> */s/ Karen E. Woodward*
> Karen E. Woodward
> Georgia Bar No. 775260
> Email: kwoodward@cmlawfirm.com
> Direct Dial: 404-881-2623
>
> */s/ Marisa M. Beller*
> Marisa M. Beller
> Georgia Bar No. 845893
> Email: mbeller@cmlawfirm.com
> Direct Dial: 678-684-2147
>
> *Attorneys for Defendant*
> *Latresa Akins-Wells*

Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing **BRIEF IN SUPPORT OF DEFENDANT LATRESA AKINS-WELLS' MOTION TO DISMISS OFFICIAL CAPACITY CLAIMS AGAINST DEFENDANT LATRESA AKINS-WELLS AND MOTION TO ADOPT DEFENDANT OF CITY OF FOREST PARK'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, MOTION FOR MORE DEFINITE STATEMENT** to all parties in this matter via PeachCourt to counsel of record addressed as follows:

Jackie Lee
LEE LAW FIRM, LLC
1100 Peachtree St., NE, Ste. 250
Atlanta, GA 30309
jackie@leelawga.com
*(Attorney for Plaintiff)*

Michael M. Hill
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
mhill@fmglaw.com
*(Attorney for the City of Forest Park)*

This 6th day of January, 2022.

**Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**

*/s/ Karen E. Woodward*
Karen E. Woodward
Georgia Bar No. 775260

2021CV03928-14
CLAYTON COUNTY, GA
1/18/2022 4:24 PM
Jacquline D. Wills
CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| NATHANIEL CLARK, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| V. | ) |
| | ) |
| CITY OF FOREST PARK, GA; | )    Civil Action No.: 2021CV03928-14 |
| LATRESA AKINS-WELLS, in her | ) |
| Official and Individual capacity | ) |
| | ) |
| DEFENDANTS. | ) |

## PLAINTIFF'S RESPONSE TO DEFENDANT
## CITY OF FOREST PARK, GEORGIA'S MOTION TO DISMISS

COMES NOW Plaintiff Nathaniel Clark ("Plaintiff" or "Chief Clark") by and through his undersigned counsel, hereby files this Response to Defendant City of Forest Park, Georgia's Motion to Dismiss, showing the Court as follows:

## I.    INTRODUCTION.

The City of Forest Park (the City)'s attempt to boil down a 94-paragraph Complaint rife with details of corruption, fraud, unlawful activity, and retaliation—and exhibits to prove as much—into a frivolous complaint is unavailing.[1]  The City cannot genuinely argue that Chief Clark's cannot prove—under any set of facts—a claim under the Georgia Whistleblower Protection Act where the Complaint is replete with evidence that: Chief Clark has been blowing the whistle on fraudulent and unlawful conduct including his uncovering of financial discrepancies, pay discrepancies, systemic racism, illegal quotas, and other unlawful and

---

[1] The City's "Statement of the Case" section completely misrepresents portions of the Complaint and leaves out crucial facts.  Nonetheless, the Complaint speaks for itself.

JDW

fraudulent activity; he has been told by members of the Governing Body to stand down immediately on the financial audit he has been requesting; City Manager Barker told Chief Clark he had been offered a large sum of money to stop the financial audit; Barker warned Chief Clark he would face backlash over his identification of fraudulent and unlawful activity; Chief Clark **overheard** a city official make a statement that he (Chief Clark) takes detailed notes, to retrieve everything he has been working on as Deputy City Manager, and to "stop him;" and where several city officials, including the present City Manager Cooper, have admitted and acknowledged the retaliation Chief Clark has experienced and is continuing to experience.  For example, although Chief Clark was promoted to the position of Deputy City Manager/Public Safety Director—a new position that had been created—by Barker, Chief Clark has essentially been stripped of all duties related to that combined position.  Specifically, in November 2020—the same month Barker warned him he would face "backlash" for his uncovering of unlawful and fraudulent activity—he was demoted from the position of Deputy City Manager as his contract was amended so that he would only serve in that capacity in the City Manager's absence.  Moreover, more recently, after Chief Clark's involvement in the investigation into sexual harassment allegations against the Fire Chief Don Horton in March 2021, Chief Clark was stripped of his duties as Public Safety Director, specifically, overseeing the fire department.  Additionally, Chief Clark has been subjected to a hostile work environment for his raising of unlawful and fraudulent activity.  The City's attempt to argue that the Court should dismiss his whistleblower claim at this early juncture because he cannot prove a claim—under any set of facts—is nonsensical.

## II.     ARGUMENT AND CITATION TO AUTHORITY.[2]

### A.     Legal Standard for Motion to Dismiss for Failure to State a Claim.

Motions to dismiss are not taken lightly.  A trial court should not grant a motion to dismiss for failure to state a claim unless:

> (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.  In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.  In other words, a motion to dismiss for failure to state a claim should not be granted unless it appears with certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.  If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the compliant is sufficient.

*Webb v. Bank of America, N.A.*, 328 Ga.App. 62, 63, 761 S.E.2d 485, 486 (2014) (citations omitted).

Notably, "it is no longer necessary for a complaint to set forth all the elements of a cause of action in order to survive a motion to dismiss for failure to state a claim.  If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient." *Id*. at 64.

---

[2] The City also is requesting that the Court dismiss Chief Clark's claims against Councilwoman Wells in her official capacity.  Plaintiff plans to change the case caption to reflect that is only bringing claims against Councilwoman Wells in her individual capacity.  Because Plaintiff is not bringing claims against Councilwoman Wells in her official capacity, Plaintiff does not need to address the arguments brought forth in the City's Motion to Dismiss Sections II.A and II.B(2) & (3).  Plaintiff will address Councilwoman's Wells Motion to Dismiss or for More Definite Statement by separate response at the appropriate time.

**B.** **The City's Attempt to Have Plaintiff's Whistleblower Claim Dismissed is Unavailing; The City Cannot Plausibly Argue That There Are No State of Facts that Would Entitle Chief Clark to Relief.**

    *1.* *The City's Argument that Plaintiff Cannot Raise Events Occurring Before November 1, 2020 in its Complaint as They Are Time Bared is Contrary to the Statute.*

The City attempts to argue that Plaintiff cannot bring a retaliation claim "based on ***events*** occurring before November 1, 2020" (emphasis added) as those are time-barred. This is simply not true. The Georgia Whistleblower Protection Act, O.C.G.A. §45-1-4(e)(1) requires whistleblower retaliation claims to be asserted "within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier." Nowhere in the statute does it say that the claim must be brought within one-year of the protected activity, the event that precipitated the retaliation, as the City is attempting to argue. Here, to the extent the Complaint raises events that occurred before November 1, 2020, it is to establish that Chief Clark had engaged in protected activity, a necessary element of a retaliation claim.

    *2.* *Chief Clark Has Identified Several Adverse Employment Actions After November 1, 2020.*

The City attempts to argue that Chief Clark has only identified three "events" after November 1, 2020 and none of those three events is an adverse employment action under the Georgia Whistleblower Protection Act. According to the City, the three "events" that the Complaint lists after November 1, 2020 are as follows: (1) Chief Clark's November 2020 demotion; (2) the investigation into workplace surveillance; and (3) Councilwoman Wells's alleged comments. As an initial matter, the City has greatly mischaracterized the Complaint. The Complaint alleges adverse employment actions beyond those three identified by the City. For example, in addition to the November 2020 demotion during which Chief Clark was stripped of

4

his duties as a Deputy City Manager, the Complaint also alleges a retaliatory hostile work environment as well as Chief Clark being stripped of his duties as a Public Safety Director—including all authority regarding the fire department—as a result of his involvement in a sexual harassment investigation of Fire Chief Don Horton.

> a.   November 2020 Demotion.

As the Complaint alleges, in May 2020, Albert Barker was appointed to the position of City Manager. (Complaint, ¶ 22). On June 30, 2020, Chief Clark received his annual performance review. *Id.* at ¶ 23. The review was very complimentary of Chief Clark's performance. *Id.* In that review, Barker wrote that "Chief Clark identified and addressed an array of structural and systemic issues (*i.e. FLSA and Title VII Violations, Enhanced Recruitment and Disparities, CAD/Record Management System failures*)." *Id.* Moreover, his review stated that "during his appointment [as Police Chief] the reported crime rate was decreased significantly in 2019 (*8 year low*)." *Id.*

On or about July 1, 2020, Chief Clark was promoted to the position of Deputy City Manager/Public Safety Director while also maintaining his position as Police Chief. *Id.* at ¶ 24. The position of Deputy City Manager/Public Safety Director was a position that had been created by the Governing Body and Barker was given discretion to appoint someone to that position. *Id.* at ¶ 25. Exhibit A to the Complaint is an offer letter to Chief Clark offering him the position of Public Safety Director/Deputy City Manager to begin on July 1, 2020. *Id.* at ¶ 24, Ex. A. The job description (attached as Exhibit B to the Complaint) is attached to the offer letter. *Id.* at ¶ 26, Ex. B. Importantly, the job description states that the position is to have "supervisory responsibility over all departments in coordination with and subject to the director of the City Manager." *Id.*

Moreover, the list of other duties states that the Deputy City Manager is to provide "staff assistance to the City Manager." *Id.* In other words, the job description makes clear that the Deputy City Manager is to work in junction with the City Manager—***not*** to serve as the "acting city manager" in the City Manager's absence. *Id.* As the Deputy City Manager/Public Safety Director, Chief Clark also had full management responsibility for all public safety services and activities including the police department and fire department and also had supervisory responsibility over all departments in coordination with and subject to the direction of the City Manager. *Id.* The job description specifically states that the position will oversee "the hiring, supervision, training, evaluation and discipline of [the fire and police] department employees." *Id.*

When Barker appointed Chief Clark to that position, his decision was met with extreme resistance from some of the Governing Body as they were worried that, as Deputy City Manager, Chief Clark would continue to uncover fraudulent and unlawful activity as that position had access to the City's financial documents. *Id.* at ¶ 27. In fact, Barker told Chief Clark that the Governing Body in part was going to do all they could to ensure that the audit he had been requesting would never be conducted and also told Chief Clark that they would continue to harass and retaliate against him to the point of having his employment terminated. *Id.* at ¶ 28. Chief Clark even contacted the United States Department of Justice regarding the City's federal asset forfeiture account. *Id.* at ¶ 32. On October 28, 2020, Chief Clark again sent Barker another email requesting that a financial audit be conducted immediately based upon the DOJ's recommendation, Finance Director Ken Thompson's admissions, and financial discrepancies previously identified. *Id.* at ¶ 34, Ex. E. On November 2, 2020, Chief Clark received another stellar performance review from Barker. *Id.* at ¶ 37. In that review, Barker wrote the following: "Chief Clark was appointed Deputy

6

City Manager/Director of Public Safety on July 1, 2020; he also continues to hold the position of Police Chief; during this appointment the reported crime rate decreased significantly in 2020 (21-*year low*), this speaks volume [sic] of Chief Clark's dedication in making the community safe for all." *Id.* Barker also wrote, "Deputy City Manager/Public Safety Director Clark was warned that he will face backlash referencing the audits (*funding discrepancies)* and his continual exposure of biased practices." *Id.* at ¶ 38. On November 4, 2020, Chief Clark overheard a City Official make a statement that he (Chief Clark) takes detailed notes, to retrieve everything that he has been working on as Deputy City Manager and to "stop him." *Id.* at ¶ 39. That same day, on November 4, 2020, Chief Clark was demoted from his position of Deputy City Manager. *Id.* at ¶ 40. Specifically, Chief Clark's contract was amended so that he would only serve as Public Safety Director and Chief of Police. *Id.* Chief Clark was only to serve as Deputy City Manager in the absence of a City Manager. *Id.*

The City claims that the November 2020 demotion is not an "adverse employment action" because it does not meet the "threshold level of substantiality" as established in *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238-39 (11th Cir. 2001). The City further argues that Chief Clark's demotion did not meet this level of substantiality as changes in job duties or responsibilities does not meet the threshold level of substantiality. As an initial matter, the case law is misrepresented in the City's brief. The *Davis* case does not hold that changes in job duties or responsibilities can never constitute an adverse employment action. Instead, *Davis* states the following:

> Although the statute does not require proof of direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on plaintiff's effect on Plaintiff's employment. We therefore hold that, to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions, or privileges of employment. Moreover, the employee's

subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances.

*Davis*, 245 F.3d at 1239.[3]  Here, there can be no question that stripping Chief Clark of his Deputy City Manager role—to only be "acting City Manager" in the City Manager's absence—is a "serious and material change in the terms, conditions, or privileges of employment" and one that would be considered "materially adverse as viewed by a reasonable person in the circumstances." *Id.*  The Deputy City Manager role to which Chief Clark had been serving for a few months was one of the highest positions in the City (behind that of the City Manager, Mayor, and Governing Body).  The position allowed Chief Clark to essentially perform any function of a City Manager as assigned by the City Manager including, but not limited to, developing plans to improve department operations, developing annual department budgets, developing long-range capital budgets for various public safety programs, monitoring departmental budgets, participating on a variety of boards, directing the activities of assigned departments.  *Id.* at ¶ 26, Ex. B.  That was all stripped from in November 2020 when he was only to perform those functions in the City Manager's absence.  The City cannot possibly argue that this was not a "serious and material change in the terms, conditions, or privileges of employment" and one that would be considered "materially adverse as viewed by a reasonable person in the circumstances."  In fact, in *Albers v. Georgia Bd. of Regents of Univ. System of Ga.*—a Georgia Whistleblower Protection Act case—

---

[3] In *Davis*, the Court held—at trial (not at the motion to dismiss stage)—that the fact that the Plaintiff, a police officer, was removed from his Officer In Charge ("OIC") designation was not an adverse employment action. *Id.* at 1243-44. The Court held that the "OIC designation is, by definition, ephemeral: an officer is not permanently named the OIC for any given shift, but rather that determination is made on a case-by-case basis by the relevant supervisory officials." *Id.* at 1243.  The Court held that because it was "ephemeral" and was not a "permanent feature of his job responsibilities" as a police officer, the fact that it was taken away was not a demotion. *Id.* at 1243-44. This could not be further from the facts presented here.

the Georgia Court of Appeals expressly recognized that stripping a police chief of duties could be an adverse employment action. *Albers v. Georgia Bd. of Regents of Univ. System of Ga.*, 330 Ga. App. 58, 65, 766 S.E.2d 520, 525, n.22 (2014) ("Although other adverse actions were arguably taken against Albers—such as stripping him of his duties as police chief—he does not allege a retaliation claim based on these actions.").

Additionally, as *Franklin v. Pitts*, 349 Ga.App. 544, 556-57, 826 S.E.2d 427, 438 (2019)— a Georgia Whistleblower Protection Act case establishes—if the removal of job duties has an objectively negative impact on future employment opportunities—then it is more likely to be considered an "adverse employment action" under the statute. *See also Doe v. Dekalb County Sch. Dist.,* 145 F.3d 1441, 1449 (11th Cir. 2000) (listing missed "employment opportunities" as one factor in determining whether an action was adverse); *Swanson v. Civil Air Patrol*, 37 F.Supp.2d 1312, 1327-1328 (M.D. Ala. 1998) ("a term or condition of employment is affected if the adverse action has a demonstrable adverse impact on present or future performance or opportunity"); *Zachery v. Coosa County Bd. of Education*, No. 2:18-cv-982-RAH-JTA, 2021 WL 359731, at *5 (M.D. Ala. 2021) ("transfers that impede an employee's professional growth or advancement can constitute an adverse employment action"). Here, there can be no denying that Chief Clark's "demotion" or change in job duties as the City would refer to it—will have a negative objective impact on future employment opportunities. Chief Clark—as Director of Public Safety, Deputy City Manager, and Police Chief—holds some of the most visible positions at the City. A change whereby he is completely stripped of all Deputy City Manager functions—unless the City Manager is absent—will certainly have an impact on future employment opportunities as the very fact that it was stripped will need to be explained and moreover, it strips him of very crucial experience as

9

a City Manager.  If Chief Clark were to apply to a City Manager, Deputy City Manager, or even Police Chief position at another City, there is no denying that his ability to only function as a Deputy City Manager on those rare—if any—occasions in which the City Manager is absent, strips him of that crucial experience.

Lastly, although the City argues that the stripping of job duties is not a demotion because the City Charter contemplates that the "Acting City Manager" is only to serve as the City Manager in the City Manager's "temporary absence or disability" this argument completely misses the mark.  As the Complaint states, the Public Safety Director/Deputy City Manager position was a **new position** created by the Governing Body in June/July 2020 and City Manager Barker was given discretion to appoint someone to that position.  (Complaint, ¶ 25).  In fact, a job description had been created for this new position.  *Id.* at ¶ 26, Ex. B.  The fact that the City Charter—which should have been amended to reflect this new position but was not and instead provides for a "Acting City Manager"—an entirely different position—has no relevance whatsoever to the analysis.[4]

There can be no denying that Chief Clark's change in job duties to only serve as Deputy City Manager in the City Manager's absence was a "demotion" as discovery in this matter will reveal.  Because the Georgia Whistleblower Protection Act specifically identifies "demotion" as

---

[4] Similarly, the City's claim that Chief Clark was not demoted because he signed the employment agreement is likewise weak.  The City has not provided any case law supporting their position that because an employee signs a new employment contract—one in which he accepts a demotion—he cannot then bring a claim stemming from that demotion.  In fact, the quote the City cites in support of their position that one who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting part, is conclusively presumed to know its contents and to assent to them—is completely taken out of context.  That quote from the case of *Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799, 806 (11th Cir. 2020) was about the vagueness doctrine in contracts—nothing to do with the issues here.

an adverse employment action (O.C.G.A. § 45-1-4(a)(5))—and the City cannot possibly establish **with certainty** that Chief Clark would be entitled to no relief under any state of facts which could be proved in support of his claim—the Motion to Dismiss as to the November 2020 demotion is due to be denied.

       b.     Retaliatory Hostile Work Environment.

The City claims—in a footnote—that Chief Clark cannot bring a retaliatory hostile work environment claim because the City's attorney is "unaware of any controlling authority recognizing such a claim under the GWA." Interestingly, however, the City acknowledges in another part of the brief that "Georgia courts construe 'adverse employment action' under the GWA consistent with the interpretation given to discrimination claims under Title VII of the Civil Rights Act."[5] *See Franklin*, 349 Ga.App at 437. The Eleventh Circuit case law makes clear that Title VII ***does*** support a claim for retaliatory hostile work environment as an "adverse employment action." *See Babb v. Secretary, Dept. of Veterans Affairs*, 992 F.3d 1193 (11th Cir. 2021) (analyzing claim of retaliatory hostile work environment under Title VII). Additionally, although the City states it is unable to identify any case law recognizing a hostile work environment claim under the Georgia Whistleblower Protection Act, the case of *City of Pendergrass v. Rintoul*, 354 Ga.App. 618, 625, 841 S.E.2d 399, 405 (2020), demonstrates that such claims are recognized.[6] For these reasons, the Court should not bar Chief Clark's retaliatory hostile work environment

---

[5] O.C.G.A. § 45-1-4(a)(5) defines "retaliation" as "the discharge, suspension, or demotion by a public employer of a public employee ***or any other adverse employment action taken by a public employer against a public employee in the terms or conditions of employment*** for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency."

[6] That case held that the Plaintiff was not collaterally estopped from asserting he was subjected to a hostile work environment under the Georgia Whistleblower Protection Act.

claim and certainly not on a motion to dismiss which would require that the Court determine **_with certainty_** that under no set of facts would the plaintiff be entitled to relief.

               c.     Chief Clark Being Stripped of His Duties as Public Safety Director Including All Responsibilities Related to the Fire Department.

As a Deputy City Manager/Public Safety Director, Chief Clark had full management responsibility for all public safety services and activities including the police department and fire department and also had supervisory responsibility over all departments in coordination with and subject to the direction of the City Manager.  (Complaint, ¶ 26).  The job description specifically stated that the position would oversee "the hiring, supervision, training, evaluation and discipline of [the fire and police] department employees."  _Id._  Following Chief Clark's involvement in the sexual harassment allegations of Fire Chief Horton in March 2021, Chief Clark was stripped of essentially all job responsibilities related to the fire department. _Id._ at 57-62.  For example, the Fire Chief's reporting structure was changed so that the Fire Chief no longer reports to Chief Clark but instead reports directly to the City Manager, which is inconsistent with his job description and contract signed by the Governing Body.  _Id._ at 58.  Additionally, when the City was recruiting for the position of Fire Chief after Chief Horton was terminated, despite Chief's Clark job description stating that he would be responsible for hiring of the fire department employees, Chief Clark was excluded from screening applicants or participating on the hiring committee.  _Id._ at 59.

For the same reasons identified in Section II.(B)(2)(a) above (the November 2020 "demotion")—stripping Chief Clark of all job responsibilities related to the fire department is an "adverse employment action."  Given that Chief Clark has supervisory responsibility over the police department in his role as Police Chief, the promotion to Deputy City Manager gave him the **_additional_** role of supervisory responsibility over the fire department.  Following Chief Clark's

involvement in the sexual harassment allegations by Chief Horton—that has been taken away.  The City cannot possibly argue that this was not a "serious and material change in the terms, conditions, or privileges of employment" and one that would be considered "materially adverse as viewed by a reasonable person in the circumstances." *Davis*, 245 F.3d at 1239.  *See also Albers v. Georgia Bd. of Regents of Univ. System of Ga.*, 330 Ga. App. 58, 65, 766 S.E.2d 520, 525, n.22 (2014) (holding that stripping a police chief of job responsibilities may be considered an adverse employment action).

## III.    CONCLUSION.

A motion to dismiss for failure to state a claim should not be granted unless it appears ***with certainty*** that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.  *Webb*, 328 Ga.App. at 63 (emphasis added).  If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient." *Id*. at 64.  Here, dismissal is inappropriate because Plaintiff cannot demonstrate that there is no possible evidence that could be introduced which will sustain a grant of relief to Chief Clark—to the contrary—the Complaint is replete with evidence of egregious retaliation.  For the foregoing reasons, we respectfully request that the City's Motion to Dismiss be denied.

Respectfully submitted, this 18th day of January, 2022.

<div style="text-align:right">

*s/ Jackie Lee*
Jackie Lee
Georgia Bar No. 419196
jackie@leelawga.com
LEE LAW FIRM, LLC
1100 Peachtree Street NE, Suite 250
Atlanta, Georgia 30309
Telephone: (404) 301-8973

</div>

13

**COUNSEL FOR PLAINTIFF**

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

NATHANIEL CLARK,                           )
                                           )
          PLAINTIFF,                       )
                                           )
V.                                         )
                                           )
CITY OF FOREST PARK, GA;                   )     Civil Action No.: 2021CV03928-14
LATRESA AKINS-WELLS, in her                )
Official and Individual capacity           )
                                           )
          DEFENDANTS.                      )

### CERTIFICATE OF SERVICE

I certify that on January 18, 2022 I electronically filed the foregoing **Plaintiff's Response to the City of Forest Park, GA's Motion to Dismiss** with the Clerk of Court which will automatically send notification of such filing to all counsel of record and by e-mail to the following counsel of record:

Michael M. Hill
Shaheem M. Williams
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
mhill@ fmglaw.com
shaheem.williams@fmglaw.com

Karen Woodward
Marisa M. Beller
Cruser, Mitchell, Novitz, Gaston & Zimet, LLP
Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092
kwoodward@cmlawfirm.com
mbellar@cmlawfirm.com

*s/ Jackie Lee*
Jackie Lee

15

Georgia Bar No. 419196

2021CV03928-14
CLAYTON COUNTY, GA
2/7/2022 11:36 AM
Jacquline D. Wills
CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| NATHANIEL CLARK, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| V. | ) |
| | ) Civil Action No.: |
| CITY OF FOREST PARK, GA; | ) 2021CV03928-14 |
| LATRESA AKINS-WELLS, in her | ) |
| individual capacity | ) |
| | ) |
| DEFENDANTS. | ) |

### FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Nathaniel Clark ("Plaintiff" or "Chief Clark") by and through his undersigned counsel, files this FIRST AMENDED COMPLAINT against Defendants City of Forest Park, GA ("the City") and Latresa Akins-Wells ("Councilwoman Wells") (collectively "Defendants"), showing the Court as follows:

### PARTIES

1.      Plaintiff Nathaniel Clark was hired by the City of Forest Park as Police Chief on May 14, 2019 and remains employed by the City.  At all times relevant to this action, Chief Clark was a "public employee" for purposes of the Georgia Whistleblower Protection Act, O.C.G.A. § 45-1-4.

2.      Defendant City of Forest Park, GA is a "public employer" as defined in O.C.G.A. § 45-1-4.  City of Forest Park, GA has its principal address at 745 Forest Parkway, Forest Park, GA 30297.

1

LB

3.      Defendant Latresa Akins-Wells is a member of the Forest Park City Council.  She is sued in her individual capacity.

## JURISDICTION AND VENUE

4.      Jurisdiction and venue are proper in the Superior Court of Clayton County.

5.      The City of Forest Park, GA and Councilwoman Wells are all residents of Clayton County.  All the acts complained herein occurred in Clayton County.

6.      This action has been brought within the time provided by O.C.G.A. § 45-1-4(e)(1).

## WAIVER OF SOVERIGN IMMUNITY

7.      The right of action provided for in the Georgia Whistleblower Act, O.C.G.A. § 45-1-4, is a waiver of the City's sovereign immunity.  *See Pattee v. Ga. Ports Auth.,* 477 F.Supp.2d 1253, 1269 (S.D. Ga. 2006).

8.      The slanderous statements made by Councilwoman Wells were made outside her official function, and therefore official immunity does not bar Plaintiff's slander claim.  *See Gilbert v. Richardson*, 264 Ga. 744, 452 S.E.2d 476, 483 (1994) (an official function is "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts.").

9.      As for any acts Councilwoman Wells performed in her official function, an officer may be personally liable in the performance of a ministerial duty if she acts with negligence, actual malice or an intent to injure.  An officer may be liable for the performance of a discretionary function if she acts with actual malice or an intent to injure.  Ga. Const. art. 1, § 2, ¶ IX(d); *see* O.C.G.A. § 36–33–4.

2

## FACTUAL ALLEGATIONS

10.     Chief Clark was hired by the City of Forest Park as Police Chief on May 14, 2019. Chief Clark was the first and only permanent Black individual to be hired as Police Chief by the City.

11.     Chief Clark has been in law enforcement for approximately 33 years and was previously a police chief for a city in Arkansas.

12.     The former permanent Chief of Police for the City of Forest Park, L. Dwayne Hobbs, served as Police Chief for over two decades.

13.     As Chief of Police, Chief Clark is responsible for overseeing the City's police department which includes approximately 95 sworn personnel and is responsible for the safety and protection of the 20,000 civilians residing in the City.

14.     As Chief of Police, Chief Clark reports to the City Manager who in turn reports to the Governing Body.  The Governing Body is comprised of the Mayor and the five members of the City Council.

15.     Soon after becoming Chief of Police, Chief Clark immediately requested that an audit be conducted on the Police Department to, among other things, determine the financial status of the Police Department.

16.     The audit revealed that there were fraudulent, and unlawful, practices in the Police Department that had occurred under prior leadership.  Specifically, the audit revealed, among other things, that the police department was selling ammunition that belonged to the City to civilians, that the police department was cashing checks made out to the City of Forest Park/Forest Park Police Department for cash and then were not turning it over to the finance department for proper

3

documentation, and that some members of the department were doing surveillance on two city council members.

17.     Two supplemental audits were conducted which collaborated the initial audit.  As a result of the audit, some individuals in the police department were terminated and some left voluntarly.  The cases were reviewed by the Georgia Bureau of Investigations ("GBI") and were subsequently forwarded to the Clayton County prosecutor's office for possible criminal charges.

18.     In addition to the financial deficiencies uncovered in the audit requested by Chief Clark, Chief Clark uncovered other illegal practices within the police department including an illegal quota system for citations and systemic race and religious discrimination practices including recruitment disparities and "Give a Christian a Ticket Sunday" which was a practice whereby police officers would target Black and Hispanic Churches and give citations to members of those communities.

19.     In fact, the City's Hispanic population has dropped by ten (10) percentage points since 2010, from 37% to 27%, in part due to the police department previously targeting the Hispanic community and issuing them an unprecedented number of citations.     *See https://canopyatlanta.org/forest-park/hispanic-communities-police/*

20.     Despite Chief Clark's uncovering of the illegal quota system for citations, some members of the Governing Body wanted the police department to continue issuing citations for profit.  Chief Clark made it clear to the Governing Body that citations would be issued for the protection of society and not to generate revenue.

21.     In January 2020, City Manager Angela Redding left her employment with the City. Chief Clark was assigned as Interim City Manager and Police Chief from on or about January 6, 2020 until on or about May 18, 2020.

22.     As Interim City Manager, Chief Clark had access to the City's financial records and accounts, not just those of the police department.

23.     Soon after becoming Interim City Manager, Chief Clark identified financial deficiencies throughout the City, on a much larger scale.  Specifically, Chief Clark identified unlawful commingling of E-911 funds (balancing the budget by using E-911 funds) and charging SPLOST expenditures to accounts that did not exist.

24.     After identifying these financial deficiencies, Chief Clark immediately requested that an audit be conducted on the City's financial accounts given that it appeared there was unlawful activity occurring within the City.  However, upon information and belief, the City never conducted an audit on the E-911 or SPLOST accounts.

25.     In May 2020, Albert Barker was appointed to the position of City Manager.

26.     On June 30, 2020, Chief Clark received his annual performance review.  The review was very complimentary of Chief Clark's performance.  In that review, Barker wrote that "Chief Clark identified and addressed an array of structural and systemic issues (*i.e. FLSA and Title VII Violations, Enhanced Recruitment and Disparities, CAD/Record Management System failures*)."  Moreover, his review stated that "during his appointment [as Police Chief] the reported crime rate was decreased significantly in 2019 (*8 year low*)."

27.     On or about July 1, 2020, Chief Clark was promoted to the position of Deputy City Manager/Public Safety Director while also maintaining his position as Police Chief.  *See **Exhibit A**, Correspondence from Barker regarding Chief Clark's promotion.*

28.     The position of Deputy City Manager/Public Safety Director was a position that had been created by the Governing Body and Barker was given discretion to appoint someone to that position.

29.     As a Deputy City Manager/Public Safety Director, Chief Clark had full management responsibility for all public safety services and activities including the police department and fire department and also had supervisory responsibility over all departments in coordination with and subject to the direction of the City Manager.  The job description specifically stated that the position would oversee "the hiring, supervision, training, evaluation and discipline of [the fire and police] department employees."  *See **Exhibit B**, Public Safety Director/Deputy City Manager job description.*

30.     When Barker appointed Chief Clark to that position, his decision was met with extreme resistance from some of the Governing Body as they were worried that, as Deputy City Manager, Chief Clark would continue to uncover fraudulent and unlawful activity as that position had access to the City's financial documents.

31.     In fact, Barker told Chief Clark that the Governing Body in part was going to do all they could to ensure that the audit he had been requesting would never be conducted and also told Chief Clark that they would continue to harass and retaliate against him to the point of having his employment terminated.

6

32.     On September 4, 2020, Chief Clark sent Barker an email that stated the following: "Recently Finance Director Ken Thompson brought to our attention that in past years SPLOST expenditures were charged to account(s) that doesn't exist.  Based on the financial inconsistencies recently brought to our attention, I am recommending that an external audit be conducted immediately regarding any and all finances."  *See **Exhibit C,** 09.04.2020 Email from Chief Clark to Barker.*

33.     Chief Clark also identified procedural concerns with the City's federal asset forfeiture account and requested that an audit be conducted.

34.     Upon information and belief, the financial audit that Chief Clark recommended regarding the federal asset forfeiture account was never conducted.  *See **Exhibit D,** 08.27.2021 Email from Chief Clark to Deputy Finance Director Darquita Williams.*

35.     Because Chief Clark was extremely concerned regarding potential fraudulent and unlawful activity occurring, Chief Clark contacted the United States Department of Justice ("DOJ") regarding the City's federal asset forfeiture account.  The DOJ stated that an audit needed to be conducted immediately.

36.     Chief Clark also discovered, or was instrumental in bringing to light, other financial discrepancies including discrepancies with the bank reconciliations (approximately $200,000 worth of discrepancies), discrepancies with the FBI reimbursement, and discrepancies with the Georgia Emergency Management and Homeland Security Agency ("GEMA") grant.

37.     On October 28, 2020, Clark again sent Barker another email requesting that a financial audit be conducted immediately based upon the DOJ's recommendation, Finance

Director Ken Thompson's admissions, and financial discrepancies previously identified.  *See Exhibit E, 10.28.2020 Email from Chief Clark to Barker.*

38.     Barker told Chief Clark that he was getting directives from members of the Governing Body to stand down immediately on the financial audit.

39.     In fact, Barker told Chief Clark and others that he had been offered a large sum of money to stop the financial audits.

40.     On November 2, 2020, Chief Clark received another stellar performance review from Barker.  In that review, Barker wrote the following: "Chief Clark was appointed Deputy City Manager/Director of Public Safety on July 1, 2020; he also continues to hold the position of Police Chief; during this appointment the reported crime rate decreased significantly in 2020 (21-*year low*), this speaks volume [sic] of Chief Clark's dedication in making the community safe for all."

41.     Barker also wrote, "Deputy City Manager/Public Safety Director Clark was warned that he will face backlash referencing the audits (*funding discrepancies)* and his continual exposure of biased practices."

42.     On November 4, 2020, Chief Clark overheard a City Official make a statement that he (Chief Clark) takes detailed notes, to retrieve everything that he has been working on as Deputy City Manager and to "stop him."

43.     That same day, on November 4, 2020, Chief Clark was demoted from his position of Deputy City Manager.  Specifically, Chief Clark's contract was amended so that he would only serve as Public Safety Director and Chief of Police.  Chief Clark was only to serve as Deputy City Manager in the absence of a City Manager.

44.     Chief Clark was demoted due to his uncovering of unlawful and fraudulent activity, specifically including his uncovering of financial discrepancies, pay disparities, systemic racism, illegal quotas, and other unlawful and fraudulent activity.

45.     Chief Clark also experienced a hostile work environment in retaliation for his uncovering of these unlawful and fraudulent activities.  Specifically, Chief Clark was asked to do things that other department heads were not required to do and his work was scrutinized and nitpicked.

46.     Soon after Chief Clark's report to the DOJ as well as his insistence on a financial audit in part due to Finance Director's Ken Thompson's admissions that SPLOST expenditures were charged to accounts that did not exist, Thompson resigned his employment with the City and took with him what appeared to be an extensive amount of confidential and highly sensitive financial documents belonging to the City.

47.     Moreover, on or about November 23, 2020, financial documents were removed from the police department without Chief Clark's consent.

48.     In March 2021, Shalonda Brown, Director of Human Resources, filed a formal complaint alleging sexual harassment by Fire Chief Don Horton.  As Public Safety Director, Chief Clark oversaw the Fire Department and Chief Horton reported to him.

49.     Chief Clark subsequently put Chief Horton on administrative leave and recommended that an external investigation be conducted.

50.     The investigation—which was ultimately submitted to the City Manager and Governing Body—confirmed that Chief Horton had been sexually harassing Brown and Chief Horton was ultimately terminated.

51.     However, during the investigation and appeal process, Chief Clark was subjected to continued harassment and verbal attacks by the Governing Body in part and Councilwoman Wells.  Specifically, during public City Council meetings, Councilwoman Wells made comments regarding Chief Clark's integrity.

52.     In fact, during the appeal hearing, Chief Clark was berated for nearly two hours by Chief Horton.  Chief Clark was mandated to appear but was not afforded an opportunity by the Governing Body to speak or defend himself in front of the community.

53.     Councilwoman Wells told Chief Clark prior to the sexual harassment allegations against Chief Horton that Chief Horton had given her $1,000 and that she had not recorded it to either her ward or to her campaign.

54.     Chief Clark told Councilwoman Wells twice that the $1,000 Chief Horton had given her needed to be recorded, however, upon information and belief, it was never recorded.

55.      Chief Clark has experienced a hostile work environment in retaliation for his protected activity, namely, his involvement in the investigation into Brown's sexual harassment allegations against Chief Horton.

56.     Specifically, Chief Clark has been verbally attacked and harassed by Wells.

57.     On or about May 28, 2021, Chief Clark was summoned to City Manager Marc-Antonie Cooper's office and accused of having the Deputy Fire Chief, Latasha Clemmons followed.  Ms. Clemmons was hired by Chief Horton.

58.     Chief Clark was placed under investigation, but the investigation showed that the allegations were unfounded.

59.     Upon information and belief, this was a conspiracy to have Chief Clark terminated.

60.     Moreover, Chief Clark has been stripped of additional job responsibilities.

61.     For example, in May 2021, the Fire Chief's reporting structure was changed so that the Fire Chief no longer reports to Chief Clark but instead reports directly to the City Manager, which is inconsistent with his job description and contract signed by the Governing Body.

62.     Additionally, when the City was recruiting for the position of Fire Chief after Chief Horton was terminated, despite Chief's Clark job description stating that he would be responsible for hiring of the fire department employees, Chief Clark was excluded from screening applicants or participating on the hiring committee.

63.     In fact, Chief Clark has been stripped of all authority regarding the fire department.

64.     Moreover, at one point Chief Clark was directed to cease all appointments/promotions at the police department until further notice.

65.     Chief Clark also has been excluded from meetings regarding police operations.

66.     Councilwoman Wells also continues to attack Chief Clark's integrity by undermining and questioning Chief Clark's actions with respect to the police department.

67.     For example, every time a police officer leaves the department, Councilwoman Wells takes it upon herself to blame them leaving on Chief Clark.

68.     Councilwoman Wells is constantly asking for data regarding the police department in an attempt to find something to attack or look for ways to blame Chief Clark.

69.     By way of example, in September 2021, Councilwoman Wells wanted Cooper to reopen an investigation that had concluded nearly a year ago during which a member of the police department had made claims against Chief Clark, which were investigated, and found to be unfounded.

70.     Moreover, Councilwoman Wells wanted to see a copy of every exit interview and every grievance filed against Chief Clark in an attempt to demean Chief Clark and punish him for participating in the sexual harassment investigation into Chief Horton.

71.     On or about September 12, 2021, Cooper received an email from an anonymous individual(s), specifically "Concerned Citizens of Forest Park," that stated that Councilwoman Wells and her husband had physically assaulted a citizen.  A criminal investigation was opened.

72.     Soon thereafter, Chief Clark received information that the investigation appeared to have been compromised as Councilwoman Wells had received confidential information from someone at the police department regarding details of the investigation.

73.     In fact, on September 22, 2021, Councilwoman Wells posted a lengthy video (14.5 minutes) to Facebook in which she appears to reference paperwork she was receiving from a member of the police department regarding the investigation.  Councilwoman Wells compromised the integrity of the police department which is a violation of her duties as a City Council member.

74.     In that same Facebook video, which to date has received 49 comments and 364 views, Councilwoman Wells made several false statements about Chief Clark with the specific intent to do harm.

75.     Specifically, among other things, Councilwoman Wells accused Chief Clark of conducting an "illegal" investigation against her, one that was "not investigatable."

76.     Moreover, the Facebook video said, "So Chief Clark….go back to Arkansas because we don't need these issues as far as well, we got rid of it.  You know we got rid of it.  Now you want to try and sue the City because you're afraid of your job.  Well if you did your job, you wouldn't have to worry about it…"

77.     In other words, Councilwoman Wells was compromising the integrity and credibility of the police department, and more specifically, Chief Clark.

78.     This video caused considerable disruption to the order and morale of the police department and caused several subordinates to question Chief Clark's leadership.

79.     The video also harmed Chief Clark's reputation both internally and externally with the general public.

80.     The video was so controversial that on January 4, 2022 another Councilwoman, Kimberly James, filed an ethics complaint against Councilwoman Wells alleging, among other things that the Facebook video was "false, misleading, unethical, without merit, humiliating and defaming the character of staff and elected officials." The ethics complaint further stated, "[t]he information caused the public, which includes staff in every department including police, as well as residents, non-residents, business owners and potential business owners to question the integrity of everyone personally named in the outrageous video."

81.     Although it appeared that at least one high-ranking City official was aware that Councilwoman Wells had received this information improperly, and had known for some time, no action was taken to investigate.

82.     On October 7, 2021, Chief Clark sent Cooper an email requesting an external investigation (to avoid the appearance of impropriety) as it had appeared that someone at the police department has been leaking information to Councilwoman Wells while there was an open investigation pending.

83.     Upon information and belief, no action has been taken to investigate Chief Clark's concerns.

13

84.     Chief Clark has repeatedly complained to his City Managers, members of the Governing Body, the City's in-house attorney and the City's outside attorney regarding the retaliation he is experiencing.

85.     Several City officials, including Cooper, have admitted and acknowledged the retaliation Chief Clark is experiencing but have done nothing to stop it.

86.     Chief Clark was told by a City official that the City is attempting to dissolve the position of Public Safety Director, decrease his salary, and eventually terminate his employment based on his involvement in the sexual harassment investigation of Chief Horton.

**COUNT I**
**RETALIATION UNDER THE**
**GEORGIA WHISTLEBLOWER PROTECTION ACT, O.C.G.A. § 45-1-4 *et seq.***
**(DEFENDANT CITY OF FOREST PARK, GA)**

87.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

88.     Pursuant to O.C.G.A. § 45-1-4, it is unlawful for a public employer to retaliate against a public employee "in the terms or conditions of employment for disclosing a violation of or noncompliance with a law, rule, or regulation to either a supervisor or government agency."

89.     On November 4, 2020, Chief Clark demoted from his position of Deputy City Manager.  Specifically, Chief Clark's contract was amended so that he would only serve as Public Safety Director and Chief of Police.  Chief Clark was only to serve as Deputy City Manager in the absence of a City Manager.

90.     Chief Clark was demoted due to his uncovering of unlawful and fraudulent activity, specifically including his uncovering of financial discrepancies, pay disparities, systemic racism, illegal quotas, and other unlawful and fraudulent activity.

14

91.     Chief Clark also experienced a hostile work environment in retaliation for his uncovering of these unlawful and fraudulent activities.  Specifically, Chief Clark was asked to do things that other department heads were not required to do and his work continues to be scrutinized and nitpicked.

92.     Moreover, Chief Clark has experienced a hostile work environment in retaliation for his involvement in the investigation into Brown's sexual harassment allegations against Chief Horton.

93.     Chief Clark has also been stripped of additional job responsibilities because of his involvement in the investigation into Brown's sexual harassment allegations against Chief Horton.

94.     These adverse employment actions were in retaliation for Chief Clark's disclosing violations or noncompliance with laws, rules or regulations in violation of the Georgia Whistleblower Protection Act, O.C.G.A. § 45-1-4 *et seq*.

95.     These adverse employment actions have caused Chief Clark to suffer damages in the form of loss of future earning capacity in that his credentials as Police Chief, Public Safety Director and Deputy City Manager and reputation have been besmirched.

### COUNT II
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### UNDER THE COMMON LAW OF GEORGIA
### (DEFENDANT WELLS)

96.     Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

97.     As a direct and proximate cause of Councilwoman Wells' actions, Chief Clark has suffered damages in an amount to be proven at trial.

98.     Councilwoman Wells' actions demonstrate willful misconduct, malice, wantonness, oppression and want of caring raising the presumption of conscious indifference to

the consequences of her actions, entitling Plaintiff to punitive damages under O.C.G.A. § 51-12-5.1.

99.    Chief Clark has suffered extreme emotional distress as a result of the actions of Councilwoman Wells as his reputation—something a Police Chief relies heavily on and cannot function without—has been tarnished in the police department, the City, and the community.

## COUNT III
## SLANDER
## (DEFENDANT WELLS)

100.    Plaintiff incorporates by reference all preceding paragraphs of the Complaint.

101.    Councilwoman Wells' Facebook post on September 22, 2021 contained numerous false and defamatory remarks regarding Chief Clark's tenure at the City.

102.    In this video, Councilwoman Wells was compromising the integrity and credibility of the police department, and more specifically, Chief Clark.

103.    This video caused considerable disruption to the order and morale of the police department and caused several subordinates to question Chief Clark's leadership.

104.    These statements have negatively impacted Chief Clark's reputation both internally in the City and police department and externally in the community in which he works.

105.    Councilwoman Wells made these statements maliciously and with the specific intent to do harm to Chief Clark and to punish him for exposing a hostile work environment and for questionable and illegal acts.

106.    Councilwoman Wells' actions demonstrate willful misconduct, malice, wantonness, oppression and want of caring raising the presumption of conscious indifference to

16

the consequences of her actions, entitling Plaintiff to punitive damages under O.C.G.A. § 51-12-5.1.

**WHEREFORE,** the Plaintiff demands that a trial by jury be had on all Counts of his Complaint and that the following such judgment be entered on his behalf against Defendants granting the following relief:

(a) that Defendants be Ordered to make Plaintiff whole by providing for his out-of-pocket losses including any back pay in an amount equal to the sum of any wages, salary, employment benefits or other compensation denied or lost as a result of Defendants' unlawful and discriminatory acts, together with interest thereon, all in amounts to be determined at the trial;

(b) that front pay be awarded as the employment relationship has been so severely damaged that the relationship is unsalvageable;

(c) that compensatory damages be awarded against each Defendant individually to compensate Plaintiff for his mental and emotional distress, anxiety, humiliation, outrage, and loss of professional and personal reputation as a consequence of Defendants' actions in an amount to be determined at the trial;

(d) that punitive damages be awarded against Defendants in an amount to be determined at trial to deter Defendants and others from similar misconduct in the future;

(e) that Plaintiff be granted attorney's fees and expenses of litigation pursuant to O.C.G.A. §§ 45-1-4(f) and 13-6-11;

(f) appropriate declaratory and injunctive relief;

(g) that pre-judgment and post-judgment interest be awarded; and

(h) that Plaintiff be granted such other and further additional relief as the jury deems equitable and just.

Respectfully submitted, this 7th day of February, 2022.

> *s/ Jackie Lee*
> Jackie Lee
> Georgia Bar No. 419196
> jackie@leelawga.com
> LEE LAW FIRM, LLC
> 1100 Peachtree Street NE, Suite 250
> Atlanta, Georgia 30309
> Telephone: (404) 301-8973
>
> **COUNSEL FOR PLAINTIFF**

**IN THE SUPERIOR COURT OF CLAYTON COUNTY**
**STATE OF GEORGIA**

NATHANIEL CLARK,                          )
                                          )
                  PLAINTIFF,              )
                                          )
V.                                        )
                                          )
                                          )        Civil Action No.: 2021CV03928-14
CITY OF FOREST PARK, GA;                  )
LATRESA AKINS-WELLS, in her               )
individual capacity                       )
                                          )
                  DEFENDANTS.             )

## CERTIFICATE OF SERVICE

I certify that on February 7, 2022 I electronically filed the foregoing **Plaintiff's First Amended Complaint** with the Clerk of Court which will automatically send notification of such filing to all counsel of record and by e-mail to the following counsel of record:

Michael M. Hill
Shaheem M. Williams
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
mhill@ fmglaw.com
shaheem.williams@fmglaw.com

Karen Woodward
Marisa M. Beller
Cruser, Mitchell, Novitz, Gaston & Zimet, LLP
Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092
kwoodward@cmlawfirm.com
mbellar@cmlawfirm.com

_s/ Jackie Lee_____
Jackie Lee
Georgia Bar No. 419196

19

# Exhibit A



**Albert Barker Jr.**
City Manager

745 Forest Parkway
Forest Park, GA 30297
Phone: (404) 366-4720
abarker@forestparkga.org

CITY OF
**FOREST PARK**

Date: June 19, 2020

RE: Employment Offer

Mr. Nathaniel Clark,

Pursuant to our conversation, the City of Forest Park would like to offer you the position of **Public Safety Director/Deputy City Manager**. A copy of the job description is attached. Your salary will be discussed at a later date.

Please formally confirm your acceptance of this job offer and starting date of July 1, 2020 by signing the appropriate section below and return it to me at your earliest convenience.

Sincerely,

Albert Barker,
City Manager

**Accept Job Offer**
**I accept this job offer:**
Signature: _____    Date: 6/19/20

**Decline Job Offer**
**I decline this job offer:**
Signature: _____    Date: _____

CITY HALL • 745 FOREST PARKWAY, FOREST PARK, GA 30297
WWW.FORESTPARKGA.ORG

Scanned with CamScanner



**City of**
# FOREST PARK

**Albert Barker Jr.**
City Manager

745 Forest Parkway
Forest Park, GA 30297
Phone: (404) 366-4720
abarker@forestparkga.org

August 10, 2020

To: Nathaniel Clark, Public Safety Director/Deputy City Manager

From: Albert Barker, City Manager

RE: Public Safety Director/Deputy City Manager

This letter comes as congratulations referencing your acceptance of the position of Public Safety Director/Deputy City Manager, effective July 01, 2020. As stated in your acceptance letter, you shall be afforded all benefits and education incentives granted to a department head, specifically Police Chief and Fire Chief. Also, pursuant to the Council Meeting on July 20, 2020 and pursuant to a unanimous vote by the governing body, your initial contract is hereby amended to reflect the new position of Public Safety Director//Deputy City Manager, education incentives and salary.

_Albert Barker_ (signature)

Albert Barker

City Manager

City of Forest Park

Scanned with CamScanner

# Exhibit B

## THE CITY OF FOREST PARK

**SUMMARY DESCRIPTION - Public Safety Director/Deputy City Manager**

The Public Safety Director/Deputy City Manager reports to the City Manager and his/her primary role is to assist in the planning, directing, management and review of the activities and operations of the city relating to Police Department * Fire Service * 911 * Animal Control * Public Information Officer. However, the Deputy City Manager has supervisory responsibility over all departments in coordination with and subject to the direction of the City Manager.

**JOB FUNCTIONS** The following duties are normal for this position. They are not to be construed as exclusive or all inclusive. Other duties may be required and assigned.

- Assumes full management responsibility for public safety services and activities; manages the development and implementation of departmental goals, objectives, and priorities for each assigned service area; recommends and administers policies and procedures.
- Plans, organizes and directs the activities of all departments pertaining to public safety, including the Police Department and Fire Department, providing general law enforcement, criminal investigation, fire suppression and prevention, rescue services and emergency medical services and disaster responses. Oversees the hiring, supervision, training, evaluation and discipline of department employees.
- Develops long term plans to improve departmental operations.
- Develops annual department budgets for operations and equipment. Also assists in developing long-range capital budgets for various public safety programs. Monitors the departmental budgets throughout the fiscal year and oversees the purchase and maintenance of equipment, vehicles, and supplies.
- Establishes, within City policy, appropriate service and staffing levels; monitors and evaluates the efficiency and effectiveness of service delivery methods and procedures; allocates resources accordingly.
- Plans, directs, and coordinates, through subordinate level staff, the work plans for the Police Department and Fire Department; assigns projects and programmatic areas of responsibility; reviews and evaluates work methods and procedures; meets with key staff to identify and resolve problems.
- Provides staff assistance to the City Manager and City Council; prepares and presents staff reports and other necessary correspondence; attends City Council and other meetings as required.
- Coordinates assigned activities between public safety departments with those of other city departments and outside agencies and organizations.
- Responds to and resolves difficult and sensitive citizen inquiries and complaints; explains, justifies, and defends department programs, policies, and activities.
- Participates on a variety of boards; serves as the city's representative and/or appoints a designee to committees and community organizations concerned with improvements in law enforcement and fire services, public education, and departmental public relations.
- Supervise a group of department heads and/or other staff.
- Direct the activities of assigned departments, review and evaluate work methods and procedures, identify opportunities for improvement and implement changes.

6/19/00

Scanned with CamScanner

# Exhibit C

| From: | Nathaniel Clark/fppolice |
|---|---|
| To: | Albert Barker/CoFP@CoFP |
| Cc: | Nathaniel Clark/fppolice@fppolice, Gretta Harris/CoFP@CoFP |
| Bcc: | nclark71603@yahoo.com |

| Date: | Friday, September 04, 2020 12:23PM |
|---|---|
| Subject: | Finance Department - External Audit Recommended |

Mr. Barker,

Recently Finance Director Ken Thompson brought to our attention that in past years SPLOST expenditures were charged to account(s) that doesn't exist. Based on the financial inconsistencies recently brought to our attention, I am recommending that an external audit be conducted immediately regarding any and all finances.

Thanks in advance.

Chief Nathaniel Clark
Deputy City Manager/Public Safety Director
City of Forest Park
745 Forest Parkway
Forest Park, Georgia 30297
(w) 404-366-4720

'Serving with Pride, Honor and Professionalism'

# Exhibit D

**From:** Nathaniel Clark
**Sent:** Friday, August 27, 2021 7:17 AM
**To:** Darquita Williams <DWilliams@forestparkga.gov>
**Cc:** Nathaniel Clark <nclark@forestparkga.gov>
**Subject:** Federal Asset Audit (status)
**Importance:** High

Good Morning Deputy Finance Director Williams,

Pursuant to the conversation with the city manager on 8/19/21 whereas you were authorized to have an audit conducted on the federal asset accounts(s), I am respectfully requesting the status regarding said and to be kept abreast.

Thanks in advance.

# Exhibit E

**From:** Nathaniel Clark
**Sent:** Wednesday, October 28, 2020 8:11 AM
**To:** Albert Barker <abarker@forestparkga.gov>
**Cc:** Nathaniel Clark <nclark@forestparkga.gov>
**Subject:** Funding Concerns
**Importance:** High

'Follow-up'

Good Morning Sir.

Pursuant to discussions, during the past few months assessments of various city departments have been conducted and several discrepancies were identified in the area of finance, please note the following area of concerns:

SPLOST Funds
E-911 Funds
FBI Reimbursement (*task force*)
Federal Asset Forfeiture/Equitable Sharing
Documentary and Procedural Issues with these and other funding issues

I have spoken with Finance Director Ken Thompson regarding these issues and the following were stated/identified in part:

* Current SPLOST Funds (*per Director Thompson's admission to you and me - funds were charged in the past to accounts that doesn't exist*)
* E-911 Funds (*possibly co-mingled with the city's general funds*)
* Bank Reconciliations/Discrepancy (*per Lori Muise, Finance Dept. approximately $200,000+*)
* FBI Reimbursement - Task Force (*per Wanda Dutton, there appear to be funding discrepancies*)
* GEMA - Emergency Management Performance Grant (*per Elaine Comer, Fire Department*) there appear to be funding discrepancies)
* Federal Asset Forfeiture/Equitable Sharing (*procedural concerns i.e. bank books, employee names on accounts*)

As you are aware, in the past two companies conducted audits of the police department where issues were found and corrected (*see audits by Ken Bell and Associates and Lawrence Johnson*)

On or about October 23, 2020 I contacted Brian Boykin, Equitable Sharing Program Manager - U.S. Department of Justice; pursuant to the conversation and updating you, I am recommending an immediate audit referencing procedural concerns, expenditures and balance to ensure transparency and compliance review.

1

**IN THE SUPERIOR COURT OF CLAYTON COUNTY**
**STATE OF GEORGIA**

NATHANIEL CLARK,                                )
                                               )
               PLAINTIFF,                      )
                                               )
V.                                             )
                                               )
CITY OF FOREST PARK, GA;                       )    Civil Action No.: 2021CV03928-14
LATRESA AKINS-WELLS, in her                    )
individual capacity                            )
                                               )
               DEFENDANTS.                     )

**NOTICE OF LEAVE OF ABSENCE**

COMES NOW, Jackie R. Lee, respectfully notifies the Judge, Clerk of Court, and all opposing counsel in the above-referenced matter, that she will be out of the country from February 24, 2022 to March 3, 2022.

Respectfully submitted, this 7th day of February, 2022.

_s/ Jackie Lee_____
Jackie Lee
Georgia Bar No. 419196
jackie@leelawga.com
LEE LAW FIRM, LLC
1100 Peachtree Street NE, Suite 250
Atlanta, Georgia 30309
Telephone: (404) 301-8973

**COUNSEL FOR PLAINTIFF**

1

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

NATHANIEL CLARK,            )
                                     )
      PLAINTIFF,        )
                                     )
V.                              )
                                   )   Civil Action No.: 2021CV03928-14
CITY OF FOREST PARK, GA;  )
LATRESA AKINS-WELLS, in her )
individual capacity         )
                                   )
      DEFENDANTS.    )

## CERTIFICATE OF SERVICE

I certify that on February 7, 2022, I electronically filed the foregoing **Notice of Leave of Absence** with the Clerk of Court which will automatically send notification of such filing to all counsel of record and by e-mail to the following counsel of record:

Michael M. Hill
Shaheem M. Williams
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
mhill@ fmglaw.com
shaheem.williams@fmglaw.com

Karen Woodward
Marisa M. Beller
Cruser, Mitchell, Novitz, Gaston & Zimet, LLP
Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092
kwoodward@cmlawfirm.com
mbellar@cmlawfirm.com

*s/ Jackie Lee*
Jackie Lee
Georgia Bar No. 419196

2

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

NATHANIEL CLARK,                          )
                                          )
            PLAINTIFF,                     )
                                          )
V.                                        )
                                          )
CITY OF FOREST PARK, GA;                  )     Civil Action No.: 2021CV03928-14
LATRESA AKINS-WELLS, in her               )
individual capacity                       )
                                          )
            DEFENDANTS.                    )

**PLAINTIFF'S RESPONSE TO DEFENDANT
LATRESA AKINS-WELLS' MOTION TO DISMISS**

COMES NOW Plaintiff Nathaniel Clark ("Plaintiff" or "Chief Clark") by and through his

undersigned counsel, hereby files this Response to Defendant Latresa Akins-Wells' Motion to

Dismiss, showing the Court as follows:

**I.    INTRODUCTION.**

Defendant Latresa Akins-Wells' ("Councilwoman Wells") submitted a brief two-page

Motion to Dismiss asking the Court to dismiss this matter.  However, the grounds upon which

Councilwoman Wells relies to support her Motion to Dismiss are entirely unclear.  Although she

claims to incorporate the Defendant City of Forest Park's Motion to Dismiss, the grounds by which

the City sought to dismiss the Complaint are, for the most part, entirely irrelevant to

Councilwoman Wells.  Plaintiff cannot—and should not—be required to guess as to which

arguments from the City's brief Councilwoman Wells seeks to rely.

1

## II.    ARGUMENT AND CITATION TO AUTHORITY.

### A.    Legal Standard for Motion to Dismiss for Failure to State a Claim.

Motions to dismiss are not taken lightly.  A trial court should not grant a motion to dismiss for failure to state a claim unless:

> (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought.  In deciding a motion to dismiss, all pleadings are to be construed most favorably to the party who filed them, and all doubts regarding such pleadings must be resolved in the filing party's favor.  In other words, a motion to dismiss for failure to state a claim should not be granted unless it appears with certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.  If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the compliant is sufficient.

*Webb v. Bank of America, N.A.*, 328 Ga.App. 62, 63, 761 S.E.2d 485, 486 (2014) (citations omitted).

Notably, "it is no longer necessary for a complaint to set forth all the elements of a cause of action in order to survive a motion to dismiss for failure to state a claim.  If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient." *Id*. at 64.

### B.    Plaintiff's Slander Claim Against Defendant Wells Should Not be Dismissed as Plaintiff Has Amended His Complaint to Add More Details Surrounding that Claim.

In her Motion to Dismiss, Councilwoman Wells requests that the Court dismiss Plaintiff's slander claim due to being "vague or ambiguous" or in alternative, enter an order requiring Plaintiff to file a more definite statement as to his defamation claim.  Although the Complaint contained more than enough detail surrounding the slander claim—and even included a link to the Facebook

2

post in considered slanderous—in an abundance of caution, Plaintiff has contemporaneously filed

a First Amended Complaint adding more detail surrounding that claim.

  **C.**  **To the Extent Councilwoman Wells' Attempts to Have Plaintiff's Intentional Infliction of Emotional Distress Claim Dismissed, Her Attempt is Unavailing; She Cannot Plausibly Argue That There Are No State of Facts that Would Entitle Chief Clark to Relief.**

  Plaintiff respectfully requests that the Court not consider any argument Councilwoman

Wells' purports to make that are not included in Councilwoman Well's Motion to Dismiss.

Although Councilwoman Wells claims to incorporate the City's Motion to Dismiss in her Motion

to Dismiss, many of the arguments in the City's Motion to Dismiss are simply inapplicable to

Councilwoman Wells as an individual.  As a result, Plaintiff is having to sort through the City's

Motion to Dismiss to determine which, if any, arguments could possibly pertain to Councilwoman

Wells.  This is simply not required nor permissible.

  Nonetheless, should the Court be inclined to allow Councilwoman Wells to argue that the

intentional infliction of emotional distress claim be dismissed, in an abundance of caution, Plaintiff

will respond to that argument.  As an initial matter, tellingly, the City did not cite one Georgia

state court case that dismissed an intentional infliction of emotional distress claim on a Motion to

Dismiss.  Moreover, any reliance on case law from the Northern District of Georgia is not

persuasive as the federal courts have a different standard governing a Motion to Dismiss—one that

is more stringent for the Plaintiff.  By contrast, the standard governing this Court requires that the

Court deny a Motion to Dismiss unless it appears ***with certainty*** that the plaintiff would be entitled

to no relief under any state of facts which could be proved in support of his claim.  *Webb*, 328

Ga.App. at 63 (emphasis added).

Here, Councilwoman Wells cannot prove with certainty that Chief Clark would not be entitled to relief under any set of facts. To the contrary, the relationship between Councilwoman Wells and Chief Clark—and the intentional slander and retaliatory conduct to which she subjected him—make it likely that such a claim would prevail.

A plaintiff must prove the following elements in order to recover for intentional infliction of emotional distress: (1) intentional or reckless conduct (2) which is extreme and outrageous and (3) caused the emotional distress (4) which is severe. *Bridges v. Winn-Dixie Atlanta,* 176 Ga.App. 227, 230, 335 S.E.2d 445 (1985). The existence of a special relationship between the actor and victim, such as that of employer to employee, may make otherwise non-egregious conduct outrageous. *Trimble v. Circuit City Stores*, 220 Ga.App. 498, 499, 469 S.E.2d 776, 778 (1996). "[B]y its very nature, [the employee-employer relationship] provides a captive victim who may fear reprisal for complaining, so that the injury is exacerbated by repetition, and it presents a hierarchy of structured relationships [that] cannot easily be avoided." *Id.* at 500 (internal citations omitted). Moreover, in *Yarbray v. Southern Bell Tel., etc., Co.*, 261 Ga. 703, 704, 409 S.E.2d 835 (1991), the Georgia Supreme Court held that an employer's retaliation against an employee for testifying against the employer could provide the basis for an employee's intentional infliction of emotional distress claim.

Here, Councilwoman Wells retaliated against Chief Clark for bringing forth unlawful conduct, including for his involvement in the investigation into Shalonda Brown's (Director of Human Resources) formal complaint of sexual harassment by Fire Chief Don Horton. Since that time, as alleged in the First Amended Complaint, and discovery will show, Councilwoman Wells has: 1) made comments regarding Chief Clark's integrity during public City Council meetings; 2)

<center>4</center>

verbally attacked and harassed Chief Clark; 3) placed Chief Clark under investigation; 4) requested that an investigation be reopened that had concluded nearly a year earlier during which a member of the police department had made claims against Chief Clark that were investigated and found to be unfounded; 5) repeatedly requested that paperwork be submitted to her regarding police operations; and 6) posted a completely inappropriate and slanderous Facebook video which accused Chief Clark of conducting an illegal investigation against her and compromised the integrity of the police department and more specifically, Chief Clark, and caused considerable disruption to the order and morale of the police department.  As for the Facebook post, as detailed in the First Amended Complaint, the conduct was so controversial that on January 4, 2022, another Councilwoman, Kimberly James, filed an ethics complaint against Councilwoman Wells alleging, among other things, that the Facebook video was "false, misleading, unethical, without merit, humiliating and defaming the character of staff and elected officials."  The ethics complaint further stated, "[t]he information caused the public, which includes staff in every department including police, as well as residents, non-residents, business owners and potential business owners to question the integrity of everyone personally named in the outrageous video."

Not only is there a special relationship between Councilwoman Wells and Chief Clark (employer/employee) that would make otherwise non-egregious conduct outrageous, but here, we are dealing with specialized concerns that come with the paramilitary nature of a police department.  As stated in *Gresham v. City of Atlanta et al.*, No.1:10-CV-1301-RWS, 2011 WL 4601020, at *2 (Sept. 30, 2011 N.D. Ga.):

> The government's interest in efficient public service is particularly acute in the context of police departments, which have more specialized concerns than a normal government office.  Indeed, the Supreme Court has noted a particular "need for discipline[,] esprit de corps, and uniformity" within the police force.  *Kelley v.*

*Johnson*, 425 U.S. 238, 246, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976).  The Eleventh Circuit has likewise recognized the unique needs of police departments, noting, "Order and morale are critical to successful police work: a police department is a 'paramilitary organization, with a need to secure discipline, mutual respect, trust and particular efficiency among the ranks due to its status as a quasi-military entity different from other public employers.'"  *Hansen v. Soldenwagner*, 19 F.3d 573, 577 (11th Cir. 1994) (quoting *Bryson v. City of Waycross*, No. CV588-017, 1988 WL 428478, at \*9 (S.D. Ga. Nov. 1, 1988), *aff'd* 888 F.2d 1562 (11th Cir. 1989)).

Given Councilwoman Well's slanderous comments and intentional retaliatory behavior toward Chief Clark—which she did knowing it would have a detrimental effect on his reputation and the order and morale in the police department—the intentional infliction of emotional distress claim should remain.

## III.    CONCLUSION.

A motion to dismiss for failure to state a claim should not be granted unless it appears **with certainty** that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.  *Webb*, 328 Ga.App. at 63 (emphasis added).  If, within the framework of the complaint, evidence may be introduced which will sustain a grant of relief to the plaintiff, the complaint is sufficient."  *Id*. at 64.  Here, dismissal is inappropriate because Plaintiff cannot demonstrate that there is no possible evidence that could be introduced which will sustain a grant of relief to Chief Clark—to the contrary—the First Amended Complaint is replete with evidence that would support a slander and intentional infliction of emotional distress claim.  For the foregoing reasons, we respectfully request that the Councilwoman Wells' Motion to Dismiss be denied.

Respectfully submitted, this 7th day of February, 2022.

> *s/ Jackie Lee*
> Jackie Lee
> Georgia Bar No. 419196

jackie@leelawga.com
LEE LAW FIRM, LLC
1100 Peachtree Street NE, Suite 250
Atlanta, Georgia 30309
Telephone: (404) 301-8973

**COUNSEL FOR PLAINTIFF**

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

NATHANIEL CLARK,           )
                            )
          PLAINTIFF,          )
                            )
V.                           )
                            )   Civil Action No.: 2021CV03928-14
CITY OF FOREST PARK, GA;  )
LATRESA AKINS-WELLS, in her  )
individual capacity          )
                            )
          DEFENDANTS.     )

## CERTIFICATE OF SERVICE

I certify that on February 7, 2022, I electronically filed the foregoing **Plaintiff's Response Defendant Latresa Akins-Wells' Motion to Dismiss** with the Clerk of Court which will automatically send notification of such filing to all counsel of record and by e-mail to the following counsel of record:

Michael M. Hill
Shaheem M. Williams
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
mhill@ fmglaw.com
shaheem.williams@fmglaw.com

Karen Woodward
Marisa M. Beller
Cruser, Mitchell, Novitz, Gaston & Zimet, LLP
Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092
kwoodward@cmlawfirm.com
mbellar@cmlawfirm.com

*s/ Jackie Lee*
Jackie Lee

8

Georgia Bar No. 419196

**EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
CLAYTON COUNTY, GEORGIA

**2021CV03928-14**

**Jewel Scott**
**FEB 21, 2022 05:16 PM**

Jacqueline D. Wills, Clerk
Clayton County, Georgia

**IN THE SUPERIOR COURT OF CLAYTON COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 2021CV03928-14 |
| v. | ) | |
| | ) | |
| CITY OF FOREST PARK, GA and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**CITY OF FOREST PARK, GEORGIA'S REPLY**
**BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

COMES NOW the City of Forest Park, Georgia ("the City"), by and through the undersigned counsel of record, and hereby files this Reply Brief In Support of Its Motion to Dismiss.[1]

**A.     Plaintiff's Slander and Intentional Infliction of Emotional Distress Claims Are Not Applicable to the City**

In Plaintiff's response, he concedes that he intended to assert his intentional infliction of emotional distress and slander claims in Counts II and III of the Complaint *only* against Councilwoman Wells in her *individual* capacity. (Pl. Resp. Brief, p. 3, n.2). Plaintiff since has amended the case caption to reflect that no claims are asserted against Councilwoman Wells in her official capacity. (*See generally* Am. Compl.) Accordingly, to the extent Counts II and III of the Complaint ever were asserted against the City, the Court should deem these claims voluntarily

---

[1] On February 7, 2022, Plaintiff filed an Amended Complaint, in which he changed the case caption to reflect that co-defendant Latresa Akins-Wells ("Councilwoman Wells") is being sued only in her individual capacity and that he is dropping all official-capacity claims against Councilwoman Wells. The factual allegations regarding his whistleblower retaliation claim against the City have not changed. Therefore, the City respectfully submits that the arguments in its Motion to Dismiss Plaintiff's Complaint, with respect to Plaintiff's whistleblower retaliation claim, apply equally to Plaintiff's Amended Complaint. Of course, if the Court prefers that the City instead file a Motion to Dismiss Plaintiff's Amended Complaint, the undersigned counsel respectfully will do so.

dismissed with regard to the City. Plaintiff's claim in Count I under the Georgia Whistleblower Act ("GWA") is the only remaining claim asserted against the City.

**B.    Plaintiff's Complaint Does Not State A Viable Claim For Relief Against The City Under The Georgia Whistleblower Act**

As discussed in the City's initial brief, none of Plaintiff's alleged supervisory "nitpicking," changes in job duties, being investigated, or "scrutiny" rises to the threshold level of substantiality for an actionable adverse employment action. *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1238-39 (11th Cir. 2001).[2] Plaintiff responds by arguing that his allegations of a November 2020 "demotion," removal of duties as Public Safety Director, and retaliatory hostile work environment, constitute adverse employment actions. But none of these alleged actions meets the requirement of a "serious and material change" set forth in *Davis*.

**1.    Plaintiff's Alleged "Demotion" Was Not An Adverse Employment Action**

Plaintiff appears to argue that his perception of an amended employment contract as an involuntary "demotion"—even though he ***agreed*** to the terms of the contract by ***signing it***—is sufficient to establish an adverse employment action for a whistleblower retaliation claim. (Pl. Resp. Brief, pp. 5-11). This is not the correct legal standard. When the Court in *Davis* held that "an employee must show a serious and material change in the terms, conditions, or privileges of employment to prove an adverse employment action," it also held that "the employee's ***subjective*** view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a ***reasonable*** person in the circumstances." 245 F.3d at 1239 (emphasis added).

---

[2] For purposes of the GWA, courts construe the phrase "adverse employment action" consistently with federal courts' interpretation of the same phrase in the context of discrimination claims brought under Title VII of the Civil Rights Act ("Title VII"), which requires an employment action analogous to or of a similar kind as a "discharge, suspension, or demotion." *Franklin v. Pitts*, 349 Ga. App. 544, 552, 554 (2019).

*Davis* also stressed that a mere change in job duties, unaccompanied by any decrease in salary, work-hour changes, or other tangible harm, is outside the scope of Title VII.[3] *Id.* at 1244-45 (citing *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997) (agreeing with "other circuits which have held that changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes")); *see also id.* at 1236 ("[C]ourts have uniformly held that changes in assignments or work-related duties do not amount to actionable adverse employment action if unaccompanied by a decrease in salary."). It is only in "unusual instances" that changes in work duties could be sufficiently substantial and material to alter the "terms, conditions, or privileges" of one's employment. *Id*. at 1245. "In the vast majority of instances, . . . an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm [*e.g.*, decrease in salary], will be outside the protection afforded by [Title VII]." *Id*.

Given the above guidance from *Davis*, it is clear the alleged change in job duties here, viewed objectively, is not one of the "unusual instances" that constitutes a serious and material change in employment. *See id*. Not only is this amended employment contract something to which Plaintiff agreed, but Plaintiff does not even allege any tangible economic loss, such as a reduction in pay or benefits. Nor does he allege any facts to indicate the change was involuntary or that otherwise would call into question the mutual assent of his entering into a new employment contract with the City.

Moreover, the alleged change in duties under the November 2020 contract is not even inconsistent with the job description of Deputy City Manager/Public Safety Director. The job description itself makes clear that his supervisory duties were subject to change, and that the

---

[3] *See supra* note 2.

Deputy City Manager role is subordinate to his duties as Public Safety Director. The job description expressly provides that Plaintiff's supervisory responsibilities as Deputy City Manager are "***subject to*** the direction of the City Manager" and that Plaintiff's "primary role" is to "assist" the City Manager in the activities and operations of the Police Department, Fire Service, 911, Animal Control, and Public Information Officer. (Am. Compl., Ex. B (emphasis added)). Thus, regardless of the supervisory duties listed in the job description, the City Manager always retained discretion to determine which duties the Deputy City Manager could exercise and under what circumstances. There is no inconsistency between Plaintiff's November 2020 employment contract and the Deputy City Manager/Public Safety Director job description, much less one that could be considered a "serious and material" change to constitute an adverse employment action. *Cf. McNely v. Ocala Star -Banner Corp.*, 99 F.3d 1068, 1078 (11th Cir. 1996) (adverse action where supervisor at newspaper reassigned to janitor duties, including cleaning toilets in bathrooms and also performing physically strenuous tasks in the shipping department).

### 2.    The Alleged Changes To Plaintiff's Public Safety Director Duties Do Not Constitute Adverse Employment Actions

Plaintiff also claims he suffered an adverse employment action because his duties as Public Safety Director to oversee the Fire Department were "stripped." (Pl. Resp. Brief, p. 12). Plaintiff specifically alleges that the Fire Chief no longer was required to report to him and that he was excluded from the Fire Chief's hiring process. (*Id.*, pp. 12-13.) For the same reasons identified in the preceding section, however, none of these allegations constitutes a serious and material change in the terms, conditions, or privileges of Plaintiff's employment. *See supra* part B.1.

As with Plaintiff's Deputy City Manager position, the language in the job description gave Plaintiff express notice his duties as Public Safety Director were subject to change. The job description provides the listed duties "are not to be construed as exclusive or all inclusive" and

that "[o]ther duties may be required and assigned." (Am. Compl., Ex. B.) This means any duty, even if listed in the job description, may or may not be required to be performed by Plaintiff and, if the City so decides, even *other* duties could be required or assigned at any time and perhaps take priority over others. Plaintiff's contention that he suffered a "serious and material" change regarding his work responsibilities is thus directly contradicted by the job description itself, which is replete with language permitting his duties to be varied at the City Manager's discretion. Accordingly, Plaintiff does not and cannot allege an adverse employment action based on the purported "stripping" of his Public Safety Director duties.

**C.**   **Plaintiff Fails To State A Claim For Retaliatory Hostile Work Environment**

As the City pointed out in its initial brief, no controlling authority presented with the question has held a retaliatory hostile work environment claim to be actionable under the GWA. (*See* City's Init. Br., p. 10 n.1.) In response, Plaintiff cites only to *City of Pendergrass v. Rintoul*, 354 Ga. App. 618, 625 (2020). But Plaintiff overstates the holding in that case.

The question of whether the GWA contemplates a claim for retaliatory hostile work environment was not presented to the Court in *Rintoul*. What *Rintoul* actually held was that, on a defendant's motion for directed verdict, the plaintiff was not collaterally estopped from asserting a retaliation claim merely because the trial court already had granted the employer's summary judgment motion on the plaintiff's constructive discharge claim. *Id.* at 624-26. The Court noted that, beyond the issue of constructive discharge, the plaintiff had introduced evidence of *other* adverse employment actions that fell squarely within the definition of actionable retaliation under the GWA, including a suspension, a demotion, and a loss of a $5,000 to $10,000 a year benefit to the plaintiff's employment. *Id.* at 625-26. Thus, the Court's references to hostile work environment in *Rintoul* are *dicta* at best.

In addition, Plaintiff fails to state a claim for retaliatory hostile work environment. To prevail on such a claim, Plaintiff is required to show that "(1) []he engaged in a protected activity; (2) after doing so, []he faced unwelcome harassment; (3) the protected activity was a 'but for' cause of the harassment; (4) the harassment was sufficiently severe or pervasive to alter the terms of h[is] employment; and (5) h[is] employer is responsible for the environment under either vicarious or direct liability." *Joseph v. Board of Regents*, No. 1:20-cv-502-TCB, 2020 U.S. Dist. LEXIS 208570, at *18 (N.D. Ga. May 8, 2020) (assessing retaliatory hostile work environment claim under Title VII (citing *Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1248-49 (11th Cir. 2014))). In evaluating whether certain treatment is sufficiently "severe or pervasive," courts are required to consider "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Courts generally require the alleged harassment to be so frequent as to render the workplace "permeated with discriminatory intimidation, ridicule, and insult." *Barrow v. Georgia Pacific Corp.*, 144 F. App'x 54, 56 (11th Cir. 2005) (quoting *Harris*, 510 U.S. at 21).

Plaintiff fails to allege even in conclusory fashion that he experienced severe or pervasive harassment. He alleges he was asked to do "things other department heads were not required to do"; his work was "scrutinized" and "nitpicked" by unknown actors in nonspecific ways; he received vague "verbal attacks" from "the Governing Body" and Councilwoman Wells; his job duties changed over time (with no reduction in pay or benefits); and the City investigated him after receiving an employee complaint about him (which investigation ultimately found in Plaintiff's favor). (Am. Compl., ¶¶ 45, 55, 57-58, 69, 91-92). Importantly, he alleges nothing to show these

actions were physically threatening or humiliating or that they unreasonably interfered with his job performance. *See, e.g.*, *Kelly v. Dun & Bradstreet, Inc.*, 2014 U.S. Dist. LEXIS 198480, at *15 (N.D. Ga. Sep. 12, 2014) (no retaliatory hostile work environment because plaintiff not abused, physically threatened, marginalized, or humiliated).

Even Plaintiff's vague allegations of being "verbally attacked" by the Governing Body and Councilwoman Wells with "comments" regarding his "integrity" are insufficient to meet the required level of severity or pervasiveness. Courts routinely reject claims of pervasive harassment if the remarks were not made on a daily or near-daily basis. "Courts have rejected claims of pervasiveness in hostile work environment claims, for example, where the alleged incidents numbered seven in six months; four in nine months; four in nine months [*sic*]; or seven in thirteen months." *Frizzell v. Delta Air Lines*, No. 1:19-CV-1573-TWT-JSA, 2019 U.S. Dist. LEXIS 186699, at *32-33 (N.D. Ga. Aug. 29, 2019) (citing *Dawkins v. Fulton Cnty. Gov't*, No. 1:10-CV-1718-WCO-AJB, 2012 U.S. Dist. LEXIS 193726, 2012 WL 12891446, at *17-18 (N.D. Ga. Jan. 31, 2012) (collecting cases)); *see also Zarza v. Tallahassee Hous. Auth.*, 686 F. App'x 747, 752 (11th Cir. 2017) (no hostile work environment based on race where "Plaintiff was not subjected to racially pejorative remarks multiple times a day, every day"); *Aristyld v. City of Lauderhill*, 543 F. App'x 905, 909 (11th Cir. 2013) (isolated comments do not rise to level necessary to support retaliatory hostile work environment); *Garrett v. Tyco Fire Prods., LP*, 301 F. Supp. 3d 1099, 1119 (N.D. Ala. 2018) (four unwelcome comments and two instances of graffiti in three-month period not sufficiently pervasive to establish hostile work environment); *Fortson v. Columbia Farms Feed Mill*, 34 F. Supp. 3d 1302, 1305-08 (M.D. Ga. 2014) (twelve unwelcome comments in seven months insufficiently frequent to show hostile work environment claim); *Cushmeer-Muhammad v. Fulton Cnty.*, No. 1:08-CV-3256-GET-JFK, 2010 WL 11500831, 2010 U.S. Dist. LEXIS

158003, at *19 (N.D. Ga. July 19, 2010) (one incident of supervisor's yelling not considered hostile work environment).

Accordingly, any claim for a retaliatory hostile work environment under the GWA fails as a matter of law and should be dismissed.

**D.**   **Conclusion**

For the reasons set forth above and in the City's initial brief, the City respectfully requests that its Motion to Dismiss be granted and that the Court dismiss with prejudice all claims asserted against the City in this action.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Michael M. Hill*
Michael M. Hill
Georgia Bar No. 770486
Shaheem M. Williams
Georgia Bar No. 666654
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339
T: (770) 818-0000
F: (770) 937-9960

*Counsel for City of Forest Park, GA*

**IN THE SUPERIOR COURT OF CLAYTON COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 2021CV03928-14 |
| v. | ) | |
| | ) | |
| CITY OF FOREST PARK, GA and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| Official and individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I certify that on this day I served the foregoing **CITY OF FOREST PARK, GEORGIA'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS** by electronically filing the same with the Clerk of Court using the Peach Court e-filing system, which will automatically send email notification of such filing to all counsel of record, and via email pursuant to agreement of the parties to all counsel of record as follows:

Jackie Lee
LEE LAW FIRM, LLC
1100 Peachtree Street NE, Suite 250
Atlanta, Georgia 30309
jackie@leelawga.com

Karen E. Woodward
Marisa M. Beller
Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP
275 Scientific Drive
Meridian II, Suite 2000
Peachtree Corners, Georgia 30092
kwoodward@cmlawfirm.com; mbeller@cmlawfirm.com

This 21st day of February, 2022.

/s/ Michael M. Hill
Michael M. Hill
Georgia Bar No. 770486

- 9 -

IN THE SUPERIOR COURT OF CLAYTON COUNTY

STATE OF GEORGIA

FILED
CLAYTON COUNTY, GA
2022 FEB 23  PM 4:57

CLERK SUPERIOR COURT

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | CIVIL ACTION FILE |
|     Plaintiff   , | ) | NO. 2021-CV-03928-14 |
| vs. | ) | |
| CITY OF FOREST PARK, GA and, | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| Official and Individual Capacity, | ) | |
|     Defendants, | ) | |

## ORDER OF RECUSAL

I, Jewel C. Scott, hereby recuse myself from the above-styled case.  The Clerk of Superior Court is directed to reassign the above-styled case to another Superior Court division and notify the parties of the recusal.

SO, ORDERED this 23rd day of february , 2022

JEWEL C. SCOTT
Judge, Superior Court
Clayton Judicial Circuit
Division 14

IN THE SUPERIOR COURT FOR THE COUNTY OF CLAYTON COUNTY

STATE OF GEORGIA

FILED
CLAYTON COUNTY GA

2022 FEB 23  PM 4:57

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | CIVIL ACTION FILE |
| Plaintiff, | ) | NO. 2021-CV-03928-14 |
| vs. | ) | |
| CITY OF FOREST PARK, GA and, | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| Official and Individual Capacity, | ) | |
| Defendants, | ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have served the forgoing ORDER OF RECUSAL upon all parties by placing a true copy in the U.S. Mail, with adequate postage affixed thereto, and addressed to:

Tasha Mosley, District Attorney
Clayton County District Attorney's Office
Via Interoffice Mail

Jackie Lee
LEE LAW FIRM, LLC
1100 Peachtree St., NE, Ste. 250
Atlanta, GA 30309

Michael M. Hill
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339

This 23rd day of February, 2022

Tanya Donahue, Judicial Secretary for
Judge Jewel C. Scott
Superior Court, Clayton Judicial Circuit



*Jacquline D. Wills*
*Clerk Superior & Magistrate Courts*
CLAYTON COUNTY JUSTICE CENTER
*9151 Tara Boulevard*
*Jonesboro, Georgia 30236-4912*
*www.claytoncountyga.gov/courts*

February 28, 2022

| | |
|---|---|
| Jackie Lee<br>Lee Law Firm, LLC<br>1100 Peachtree St, NE St.<br>Atlanta, GA 30309 | Michael M. Hill<br>Freeman Mathis & Gary LLP<br>100 Galleria Pkwy, Suite 1600<br>Atlanta, GA 30339 |
| Office of the District Attorney<br>9151 Tara Blvd<br>Jonesboro, GA 30236 | |

RE: Nathaniel Clark vs. city of Forest Park GA et al; 2021CV03928

To whom it may concern:

Judge Jewel C. Scott has recused herself from the above referenced case. The new assignment is Judge Geronda V. Carter which is determined by Georgia Uniform Superior Court Rules 25.7 and 25.4 (c). The new case number is 2021CV03928-09.


Sincerely
Office of Jacquline D. Wills
Clerk of Superior & Magistrate Court
Clayton County Georgia

SUPERIOR COURT
(770) 477-3405

REAL ESTATE RECORDS
(770) 477-3395

MAGISTRATE COURT
(770) 477-3443

⛪ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
CLAYTON COUNTY, GEORGIA

**2021CV03928-14**

**Jewel Scott**
**MAR 07, 2022 02:20 PM**

Jacqueline D. Wills, Clerk
Clayton County, Georgia

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| vs. | ) | 2021-CV-03928-14 |
| | ) | |
| CITY OF FOREST PARK, GA, and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| Official and Individual Capacity, | ) | **Jury Trial Demanded** |
| | ) | |
| Defendants. | ) | |

### ANSWER AND DEFENSES OF DEFENDANT LATRESA AKINS-WELLS TO PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW LATRESA AKINS-WELLS (hereinafter "this Defendant"), a named Defendant in the above-styled action, and files and serves this Answer and Defenses to Plaintiff's First Amended Complaint, respectfully showing this Court as follows:

### FIRST DEFENSE

Plaintiff's First Amended Complaint fails to state or set forth claims against this Defendant upon which relief can be granted.

### SECOND DEFENSE

As a Second Defense, this Defendant answers the numbered paragraphs of Plaintiff's First Amended Complaint as follows:

PARTIES

1.

The allegations set forth in paragraph 1 regarding O.C.G.A. § 45-1-4 are statements of law requiring no response from this Defendant. This Defendant responds that she is without sufficient

knowledge or information to admit or deny the remaining allegations set forth in paragraph 1 and puts Plaintiff on strict proof of same.

2.

This Defendant admits that the City of Forest Park's principal address is located at 745 Forest Parkway, Forest Park, GA 30297.  The remaining allegations set forth in paragraph 2 regarding O.C.G.A. § 45-1-4 are statements of law requiring no response from this Defendant. To the extent further response is required, this Defendant denies the allegations as stated.

3.

This Defendant admits that she serves as an elected member of the City Council of the City of Forest Park. Defendant also admits that Plaintiff purports to sue this Defendant in her individual capacity, but she denies any and all liability to Plaintiff.

JURISDICTION AND VENUE

4.

The allegation regarding venue and jurisdiction is a statement of law requiring no response from this Defendant. This Defendant denies any and all liability to Plaintiff in connection with the acts, events or omissions alleged in Plaintiff's First Amended Complaint.

5.

This Defendant admits that she and the City of Forest Park reside in Clayton County, but she is without sufficient knowledge or information to admit or deny the remaining allegations. Defendant denies that she engaged in any unlawful conduct.

6.

This Defendant denies the allegations set forth in paragraph 6.

{SECURE Firm/1049/00028/DRAFTS/03422864.DOCX }

## WAIVER OF SOVERIGN IMMUNITY

7.

The allegations set forth in paragraph 7 regarding O.C.G.A. § 45-1-4 are statements of law requiring no response from this Defendant.

8.

This Defendant denies the allegation set forth in paragraph 8. This Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff. This Defendant avers that she is entitled to official immunity for Plaintiff's claims.

9.

The allegations set forth in paragraph 9 regarding the Georgia Constitution art. 1, § 2, ¶ IX(d) and O.C.G.A. § 36-33-4 are statements of law requiring no response from this Defendant. To the extent further response is required this Defendant denies the allegations set forth in paragraph 9 as stated.

## FACTUAL ALLEGATIONS

10.

Defendant avers that Plaintiff was hired as Police Chief on May 15, 2019. Defendant denies the allegations in paragraph 10 as stated.

11.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 11 and puts Plaintiff on strict proof of same.

12.

This Defendant admits the allegations contained within paragraph 12.

{SECURE Firm/1049/00028/DRAFTS/03422864.DOCX }

13.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 13 and puts Plaintiff on strict proof of same.

14.

This Defendant admits the allegations contained within paragraph 14.

15.

This Defendant admits that, shortly after Chief Clark was hired, an audit was conducted on the City of Forest Park Police Department. This Defendant is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 15 and puts Plaintiff on strict proof of same.

16.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 16 and puts Plaintiff on strict proof of same.

17.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 17 and puts Plaintiff on strict proof of same.

18.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 18 and puts Plaintiff on strict proof of same.

19.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 19 and puts Plaintiff on strict proof of same. In further response, this Defendant states that the document referenced speaks for itself.

20.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 20 and puts Plaintiff on strict proof of same

21.

This Defendant admits that the City appointed Plaintiff as Interim City Manager/Police Chief after City Manager left her employment with the City in January of 2020. This Defendant denies the remaining allegations set forth in paragraph 21.

22.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 22 and puts Plaintiff on strict proof of same.

23.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 23 and puts Plaintiff on strict proof of same.

24.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 24 and puts Plaintiff on strict proof of same.

25.

This Defendant admits the allegations set forth in paragraph 25.

26.

This Defendant admits that Plaintiff's June 30, 2020, annual performance review states that "Chief Clark identified and addressed an array of structural and systemic issues (i.e. FLSA and Title VII violations, Enhanced Recruitment and Disparities, CAD/Record Management failures)" and that "during this appointment the reported crime rate decreased significantly in 2019 (8 year

low)." This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 26 and puts Plaintiff on strict proof of same. This Defendant states that the performance review speaks for itself.

27.

This Defendant admits that a copy of a document titled "Correspondence from Barker regarding Chief Clark's promotion" is attached to the Complaint as Exhibit A. This Defendant states that Exhibit A speaks for itself. To the extent that any allegations contained in paragraph 27 of Plaintiff's Complaint are inconsistent with the statements contained therein, those allegations are denied. This Defendant denies the remaining allegations set forth in paragraph 27.

28.

This Defendant denies the allegations set forth in paragraph 28 as stated.

29.

This Defendant admits that a copy of a document titled "Public Safety Director/Deputy City Manager job description" is attached to the Complaint as Exhibit B. To the extent that any allegations contained in paragraph 29 of Plaintiff's Complaint are inconsistent with the statements contained therein, those allegations are denied.  This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 29 and puts Plaintiff on strict proof of same.

30.

This Defendant denies the allegations set forth in paragraph 30.

{SECURE Firm/1049/00028/DRAFTS/03422864.DOCX }

31.

This Defendant denies that she harassed or retaliated against Plaintiff. This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 31 and puts Plaintiff on strict proof of same.

32.

This Defendant admits that a copy of a purported email dated September 4, 2020, from Chief Clark to Albert Barker is attached to the Complaint as Exhibit C. The content of Exhibit C speaks for itself. To the extent that any allegations contained in paragraph 32 of Plaintiff's Complaint are inconsistent with the statements contained therein, those allegations are denied. This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 32 and puts Plaintiff on strict proof of same.

33.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 33 and puts Plaintiff on strict proof of same.

34.

This Defendant admits that a copy of an email dated August 27, 2021, from Chief Clark to Deputy Finance Director Darquita Williams is attached to the Complaint as Exhibit D. The content of Exhibit D speaks for itself. To the extent that any allegations contained in paragraph 34 of Plaintiff's Complaint are inconsistent with the statements contained therein, those allegations are denied. This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 34 and puts Plaintiff on strict proof of same.

35.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 35 and puts Plaintiff on strict proof of same.

36.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 36 and puts Plaintiff on strict proof of same.

37.

This Defendant admits that a copy of an email dated October 28, 2020, from Chief Clark to Albert Barker is attached to the Complaint as Exhibit E. The content of Exhibit E speaks for itself. To the extent that any allegations contained in paragraph 37 of Plaintiff's Complaint are inconsistent with the statements contained therein, those allegations are denied. This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 37 and puts Plaintiff on strict proof of same.

38.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 38 and puts Plaintiff on strict proof of same. This Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

39.

This Defendant denies that she told Barker to offer Chief Clark a large sum of money to stop the financial audits. This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 39 and puts Plaintiff on strict proof of same.

40.

This Defendant admits that Barker's November 2, 2020, performance review noted that "Chief Clark was appointed Deputy City Manager/Director of Public Safety on July 1, 2020; he also continues to hold the position of Police Chief; during this appointment the reported crime rate decreased significantly in 2020 (21-year low), this speaks volume [sic] of Chief Clark's dedication in making the community safe for all." The content of the performance review speaks for itself. This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 40 and puts Plaintiff on strict proof of same.

41.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 41 and puts Plaintiff on strict proof of same. The content of the performance review speaks for itself.

42.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 42 and puts Plaintiff on strict proof of same. This Defendant denies that she committed any wrongful acts, and she further denies any and all liability to Plaintiff.

43.

This Defendant admits that Chief Clark signed a professional services agreement on November 4, 2020. The content of the agreement speaks for itself. This Defendant denies the remaining allegations set forth in paragraph 43.

44.

This Defendant denies the allegation set forth in paragraph 44.

45.

This Defendant denies the allegation set forth in paragraph 45.

46.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 46 and puts Plaintiff on strict proof of same.

47.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 47 and puts Plaintiff on strict proof of same.

48.

This Defendant admits the allegations set forth in paragraph 48.

49.

This Defendant admits that Fire Chief Horton was put on administrative leave. This Defendant is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 49 and puts Plaintiff on strict proof of same.

50.

This Defendant admits the allegations against Fire Chief Horton were investigated and that the findings of the investigation were submitted to the Governing Body. This Defendant further admits that Fire Chief Horton was terminated. This Defendant denies the remaining allegations set forth in paragraph 50 as stated.

51.

This Defendant denies the allegations set forth in paragraph 51. Responding further, this Defendant denies that she committed any wrongful acts, and she further denies any and all liability to Plaintiff.

- 10 -

52.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 52 and puts Plaintiff on strict proof of same. This Defendant denies that she committed any wrongful acts, and she further denies any and all liability to Plaintiff.

53.

This Defendant denies the allegations set forth in paragraph 53. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

54.

This Defendant denies the allegations set forth in paragraph 54. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

55.

This Defendant denies the allegations set forth in paragraph 55.

56.

This Defendant denies the allegations set forth in paragraph 56. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

57.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 57 and puts Plaintiff on strict proof of same.

58.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 58 and puts Plaintiff on strict proof of same.

59.

This Defendant denies the allegations set forth in paragraph 59.

60.

This Defendant denies the allegations set forth in paragraph 60.

61.

This Defendant denies the allegations set forth in paragraph 61.

62.

This Defendant denies that Plaintiff was responsible for hiring fire department employees as Public Safety Director. This Defendant denies the remaining allegations set forth in paragraph 62, as stated.

63.

This Defendant denies the allegations set forth in paragraph 63.

64.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 64 and puts Plaintiff on strict proof of same.

65.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 65 and puts Plaintiff on strict proof of same.

{SECURE Firm/1049/00028/DRAFTS/03422864.DOCX }

66.

This Defendant denies the allegations set forth in paragraph 66, as stated. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

67.

This Defendant denies the allegations set forth in paragraph 67. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

68.

This Defendant admits that she sought exit interview information in an effort to find ways to retain employees in the department. This Defendant denies the remaining allegations set forth in paragraph 68.

69.

This Defendant denies the allegations set forth in paragraph 69.

70.

This Defendant admits that she sought exit interview information in an effort to find ways to retain employees in the department. This Defendant denies the remaining allegations set forth in paragraph 70. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

71.

This Defendant admits a criminal investigation was opened regarding allegations against this Defendant and her husband. This Defendant is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 71 and puts Plaintiff on strict proof

- 13 -

of same. Responding further, this Defendant denies that she committed any criminal or wrongful acts and she further denies any and all liability to Plaintiff.

72.

This Defendant denies receiving confidential information from someone at the police department regarding the details of the investigation. This Defendant is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 72 and puts Plaintiff on strict proof of same. Responding further, this Defendant denies that she committed any criminal or wrongful acts and she further denies any and all liability to Plaintiff.

73.

This Defendant admits posting a video to Facebook on September 22, 2021. The Defendant avers that the content of the Facebook video speaks for itself.  This Defendant denies the remaining allegations set forth in paragraph 73. In further response, by way of further answer this Defendant hereby incorporates by reference, the September 22, 2021, Facebook post attached hereto as Exhibit 1.

74.

This Defendant admits that the Facebook video posted on September 22, 2021, has received 49 comments to date. This Defendant denies making false statements about Plaintiff. This Defendant is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 74 and puts Plaintiff on strict proof of same. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

- 14 -

75.

This Defendant denies the allegations set forth in paragraph 75 as stated. Responding further, this Defendant denies that she made any false or defamatory statements and she further denies any and all liability to Plaintiff.

76.

This Defendant admits the allegations set forth in paragraph 76. Responding further, this Defendant denies that she made any false or defamatory statements and she further denies any and all liability to Plaintiff.

77.

This Defendant denies the allegations set forth in paragraph 77. Responding further, this Defendant denies that she made any false or defamatory statements and she further denies any and all liability to Plaintiff.

78.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 78 and puts Plaintiff on strict proof of same. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

79.

This Defendant denies the allegations set forth in paragraph 79. Responding further, this Defendant denies that she made any false or defamatory statements and she further denies any and all liability to Plaintiff.

80.

This Defendant denies the allegations set forth in paragraph 80 as stated.

81.

This Defendant denies receiving any improper information regarding an anonymous email sent to Cooper on September 12, 2021. This Defendant states that the content of the purported email speaks for itself. This Defendant is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 81 and puts Plaintiff on strict proof of same. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

82.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 82 and puts Plaintiff on strict proof of same. This Defendant states that the content of the purported email speaks for itself. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

83.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 83 and puts Plaintiff on strict proof of same. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

84.

This Defendant denies participating in any retaliation against Plaintiff. This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 84 and puts Plaintiff on strict proof of same. Responding further,

this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

<div align="center">85.</div>

This Defendant denies participating in any retaliation against Plaintiff. This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 85 and puts Plaintiff on strict proof of same. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

<div align="center">86.</div>

This Defendant responds that she is without sufficient knowledge or information to admit or deny the allegations set forth in paragraph 86 and puts Plaintiff on strict proof of same. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

<div align="center">

**COUNT I**

**Retaliation Under the Georgia Whistleblower Protection Act**

**O.C.G.A. § 45-1-4 *et seq.***

*(Defendant City of Forest Park, GA)*

87.
</div>

Defendant incorporates herein by reference as if fully set forth herein its responses to paragraphs 1 through 86 of Plaintiff's Complaint.

<div align="center">88.</div>

The allegations set forth in paragraph 88 are statements of law requiring no response from this Defendant. To the extent further response is required, this Defendant admits that Plaintiff

<div align="center">- 17 -</div>

purports to bring an action under the Georgia Whistleblower Act, O.C.G.A. § 45-1-4 ("GWA"), but this Defendant denies that Defendant violated the GWA. This Defendant denies any and all liability to Plaintiff.

89.

This Defendant admits that Chief Clark signed a professional services agreement on November 4, 2020. This Defendant states that the content of the agreement speaks for itself. This Defendant avers that the duties related to Public Safety Director and Chief of Police remained the same in this agreement. This Defendant denies the remaining allegations set forth in paragraph 89.

90.

This Defendant denies the allegations set forth in paragraph 90.

91.

This Defendant denies the allegations set forth in paragraph 91.

92.

This Defendant denies the allegations set forth in paragraph 92.

93.

This Defendant denies the allegations set forth in paragraph 93.

94.

This Defendant denies the allegations set forth in paragraph 94.

95.

This Defendant denies the allegations set forth in paragraph 95. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

{SECURE Firm/1049/00028/DRAFTS/03422864.DOCX }

## COUNT II

**Intentional Infliction of Emotional Distress**

**Under the Common Law of Georgia**

*(Defendant Wells)*

96.

Defendant incorporates herein by reference as if fully set forth herein its responses to paragraphs 1 through 95 of Plaintiff's Complaint.

97.

This Defendant denies the allegations set forth in paragraph 97. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

98.

This Defendant denies the allegations set forth in paragraph 98. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

99.

This Defendant denies the allegations set forth in paragraph 99. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

## COUNT III

### Slander

*(Defendant Wells)*

100.

Defendant incorporates herein by reference as if fully set forth herein its responses to paragraphs 1 through 99 of Plaintiff's Complaint.

101.

This Defendant admits that the Facebook video posted on September 22, 2021. This Defendant denies making false statements about Plaintiff. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

102.

This Defendant denies the allegations set forth in paragraph 102. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

103.

This Defendant responds that she is without sufficient knowledge or information to admit or deny the remaining allegations set forth in paragraph 103 and puts Plaintiff on strict proof of same. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

104.

This Defendant denies making false statements about Plaintiff. Responding further, this Defendant denies that she committed any wrongful acts and she further denies any and all liability to Plaintiff.

105.

This Defendant denies that she made any false, malicious, defamatory statements and she further denies any and all liability to Plaintiff.

106.

This Defendant denies the allegations set forth in paragraph 106. Responding further, this Defendant denies that Plaintiff is entitled to any recovery. Plaintiff is not entitled to the requested relief.

107.

This Defendant denies the allegations contained in the unnumbered "WHEREFORE" paragraph, and its subparts, of Plaintiff's First Amended Complaint. This Defendant further denies that she is liable to Plaintiff and that Plaintiff is entitled to any relief from this Defendant.

108.

All other allegations in Plaintiff's First Amended Complaint not specifically responded to are hereby denied.

**THIRD DEFENSE**

This Defendant is entitled to official immunity as to Plaintiff's state law claims against her in her individual capacity.

**FOURTH DEFENSE**

To the extent this Defendant published any statement about Plaintiff, any and all such statements are substantially true and/or privileged.

**FIFTH DEFENSE**

This Defendant asserts that Plaintiff's alleged damages, if any, were directly and proximately caused by persons or entities other than Defendant.

- 21 -

## SIXTH DEFENSE

The claims and allegations set forth in Plaintiff's Complaint, even if taken as true, do not state a claim for relief under O.C.G.A. § 45-1-4.  As such, Defendant respectfully submits that this Court lacks subject matter jurisdiction over Plaintiff's First Amended Complaint.

## SEVENTH DEFENSE

Plaintiff cannot recover punitive damages against this Defendant.

## EIGHTH DEFENSE

Some or all of Plaintiff's claims are time-barred by the applicable statute of limitations.

## NINTH DEFENSE

Plaintiff's claims against this Defendant in her official capacity are barred by sovereign immunity.

## TENTH DEFENSE

Plaintiff's claims against this Defendant in her official capacity are duplicative of Plaintiff's claims against Defendant City of Forest Park.

## ELEVENTH DEFENSE

This Defendant asserts each and every defense set forth in O.C.G.A. § 9-11-8 to the extent applicable.

WHEREFORE, having answered fully, Defendant LATRESA AKINS-WELLS respectfully requests that this Court dismiss Plaintiff's First Amended Complaint and cast all costs against Plaintiff.

**DEFENDANT DEMANDS A TRIAL BY JURY OF 12 JURORS.**

*[signatures on next page]*

Respectfully submitted this 7th day of March, 2022.

**Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**

*/s/ Karen E. Woodward*
Karen E. Woodward
Georgia Bar No. 775260
Email:  kwoodward@cmlawfirm.com
Direct Dial:  404-881-2623

*/s/ Marisa M. Beller*
Marisa M. Beller
Georgia Bar No. 845893
Email: mbeller@cmlawfirm.com
Direct Dial: 678-684-2147

*Attorneys for Defendant*
*Latresa Akins-Wells*

Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this day electronically filed **ANSWER AND DEFENSES OF DEFENDANT LATRESA AKINS-WELLS TO PLAINTIFF'S FIRST AMENDED COMPLAINT** with the Clerk of Court using the PeachCourt file and serve system which will automatically serve an electronic copy of same upon the following counsel of record:

Jackie Lee
LEE LAW FIRM, LLC
1100 Peachtree St., NE, Ste. 250
Atlanta, GA 30309
jackie@leelawga.com
*(Attorney for Plaintiff)*

Michael M. Hill
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
mhill@fmglaw.com
*(Attorney for the City of Forest Park)*

This 7th day of March, 2022.

**Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**

*/s/ Karen E. Woodward*
Karen E. Woodward
Georgia Bar No. 775260

- 24 -

# EXHIBIT "1"

CLARK V COUNCILWOMAN WELLS


September 22, 2021 Facebook Video


Janice Baker & Associates
235 Peachtree Street, North Tower, Ste 400
Atlanta, Georgia 30303
(404)969-1206

1

INDEX

PAGE

Video transcription:            3

Certificate:                    17

TRANSCRIPT CODES

| | |
|---|---|
| -- | denotes interruption/change in thought |
| . . . | denotes incomplete thought |
| [sic] | denotes word/phrase written verbatim |
| (ph) | denotes word spelt phonetically |
| (unintelligible) | denotes word cannot be understood |

```
 1                P R O C E E D I N G S
 2        COUNCILWOMAN WELLS:  Good morning, y'all.
 3        So look.  This is something that I don't
 4   normally do.  I don't do the talking through the
 5   phone stuff, the video stuff.  I don't do none of
 6   that.
 7        But it's 9 o'clock in the morning.  And I'm on
 8   my way to meet with somebody to give me evidence
 9   that the Forest Park Police Department is
10   investigating me again.  Again.
11        I got a call the other day, and they just
12   called me -- the first call I got, they said:
13   Please help us.
14        This from our police department:  Please help
15   us.
16        And I'm, like, you know, just ever- --
17   everything is going to get better.  Just give us
18   time, you know.  I'm sorry y'all having to go
19   through this.  This is -- I get these calls
20   constantly.  Constantly; right?
21        So nobody knows what I have to deal with as a
22   councilperson and how it affects me, how it bothers
23   me, just trying to fight and do the -- the right
24   thing for my community, and the one that's doing
25   the most, getting the most heat, you know.  If I
```

3

1    wasn't doing nothing, they wouldn't bother me.

2         So I can take that.  I can accept that.  But

3    when other people's hurt it -- hurting, it bothers

4    me, because we made changes before.

5         And first it was:  Why the administration

6    investigating me?  Now it's a Black administration

7    investigating me; our new city manager who has been

8    there less than a year, Mr. Cooper; our new police

9    chief who has been there almost three years, if not

10   three years already, Nathaniel Clark; Angelyne

11   Butler, who is the current mayor; Kimberly James.

12        So it's not a Black and white thing.  It's not

13   a Black and white thing.  Race has absolutely

14   nothing to do with it, I guess, now, since they

15   investigating me.

16        They say that I got into a fight at a club and

17   me and my husband sell drugs and we get money from

18   the people in the club.  I don't even go to the

19   club.

20        Yeah, I go to JB's.  That's the only place in

21   the city for -- for adults to go and enjoy an adult

22   night.  So I go when I get ready.  I'm human.  I

23   can do that.

24        It's not unethical.  It's not illegal.

25        But when people write a letter to the city

4

1     manager who works for us, the mayor and council,

2     we're his bosses, so you order the -- the police

3     chief, Nathaniel Clark, to investigate your boss

4     illegally, because nobody filed any complaints with

5     the police department.

6          There's no victim.  There's no nothing.

7          And I got into a fight.  Who I get into a

8     fight with?  Who filed the complaint?

9          Because a letter is not a formal complaint,

10    Cooper, Dr. Cooper.

11         So while you, Angelyne Butler, Ellen Miers

12    (ph.), and y'all, you know -- Kimberly James, y'all

13    doing everything y'all can to get rid of

14    Councilwoman Wells.

15         What have y'all done in this community?

16         Angelyne Butler, what have you done in this

17    community?

18         I'm sick of it.  Sick -- and they want me to

19    be quiet.  And that's what they get angry about,

20    that's why they frustrated with me because I -- I'm

21    outspoken and that's what the people elected me to

22    do.

23         So I'm going to speak up.  I'm going to speak

24    up.

25         They tried to pass an ordinance on Monday that

                                                    5

1       restricted everything because they trying to get me

2       caught up.  They want everything that I do -- I

3       open my door and step on my step, they want it to

4       be a ethics violation against me.

5           So they tried to make it happen.  But no

6       weapon formed shall prosper.  And it didn't pass.

7       And they were so upset that they was all looking

8       crazy and texting each other during the meeting

9       because they planning to plot against Councilwoman

10      Wells.

11          But God, He's not seeing it.  That's why God

12      brought this person to me.

13          And this guy called me and said:  I want you

14      to be careful because they are after you.  They are

15      after you.

16          We got 50 in- -- investigations on this desk,

17      50 investigations on this desk, yet they want to

18      waste the tech -- the ti- -- the -- the city

19      resources, which is your police department, on

20      investigating something that's not even

21      investigatable -- if that's a word.

22          Shouldn't even be investigated.  It's nothing

23      criminal.  You -- you're investigating behavior?

24      You can't get mad if I don't like somebody, if I

25      don't speak to somebody.  That's me.

1          But to have somebody investigating me for

2     y'all to come up with these frivolous complaints is

3     ridiculous.

4          Like, we got so much other stuff we can be

5     focused on.  Like why the mayor been in office for

6     four years, this fire station supposed to have been

7     built, the -- the sign been out there two years?

8     That hasn't happened.

9          We've got these Fortune 500 companies, which

10    she sit on the board, she know about.  But she

11    haven't opened those jobs to the citizens of Forest

12    Park.

13         Nobody in For- -- nobody I know got one of

14    those jobs over at Fort Gillem making 18-, $20 an

15    hour.  Nobody that I know.  I don't know if y'all

16    got somebody over there.

17         But that's the type of stuff we need to be

18    focused on.  But yet and still they want to keep

19    focusing on me.

20         Because they love what I do; they just hate

21    the fact that it's me doing it.  You know, they

22    just hate the fact that it's me doing it.

23         And it's embarrassing.  It's so embarrassing.

24    Thirteen people out of the City of Forest Park came

25    out to vote yesterday for the commissioner of

1       Clayton County for the School Board.

2          Y'all, we got to really -- y'all got to know

3       who y'all putting in office.  Y'all got to know

4       that these people don't care nothing about y'all.

5          Angelyne Butler moved here just to run for

6       mayor.  Okay?  She moved here just to run for

7       mayor, because the last one -- the other one needed

8       to go.  And that was the only person that we had to

9       go with.

10         So we messed up.  Please don't mess up this

11      time.

12         Kimberly James does absolutely nothing.  This

13      Mr. Cooper guy came from Florida to investigate

14      your council people, people that he worked for.

15         Because I'm not a -- because I'm not a yo-yo

16      and they can't tell me what to do, I don't work for

17      y'all.  I work for the people of Forest Park.

18      That's who can call me and tell me what to --

19      that's who can call me and say:  Councilwoman

20      Wells, be quiet.

21         If you live in Ward 4 and you want me to be

22      quiet and you want me to stop doing what you

23      elected me to do, call me.  Call me.  I will do it.

24         But don't -- another elected official that's

25      on the same level as me, don't control me.  And

1    see, that's what they want.  They want somebody

2    that they can control.

3         That's why they moved my daughter out of HR,

4    which was a better -- a good move because she

5    didn't have to deal with the politics up there.

6    They did all that because of me.

7         Now they -- now they harassing my husband on

8    his job.  They getting rid of people because they

9    sat on councilwoman's side at the -- at the council

10   meeting.

11        They get this man to write a -- the -- for a

12   appeal, you know, to voice his opinion.  They

13   just -- listen, well, his appeal was in writing

14   so -- what I heard.

15        You know, but this is the type of stuff that

16   they do.  This is the type of stuff they focus --

17   this is so middle school and high school to me.

18        But I refuse to be quiet.

19        So I'm getting ready to go meet this guy, get

20   the information that he has for me to let me know

21   that they are investigating me again, and talk to

22   my attorneys again.

23        This is what I have to deal with.  Like, don't

24   nobody know.  And I tell you, nobody know how I

25   feel coming from a council meeting, being a voice

1    for the people, getting out here trying to do

2    things to bring my community together.

3        You never seen nary one of them at the event.

4    That should tell you something.  It's a City-

5    sponsored event.  If it's about the people, why

6    aren't they there?

7        Because it's not about you; it's about me.

8    Like, they focus- -- they so focused on me.  And

9    it's heartbreaking.

10        Like, there's no way I should have to wake up

11    to -- to go meet somebody from our department

12    that's scared of losing their job but want to help

13    me.

14        I'm tired of it.  Like, I'm so tired of it.

15    And see, the thing is, they want me to step down.

16        But you don't have no reasons.

17        I have two ethics violations -- well, two

18    complaints.  One person said I was stalking her.  I

19    ain't got time to stalk nobody.

20        Because our police chief was meeting -- had a

21    meeting.  You got time to meet with these people

22    that's political activists.

23        But you ain't got time to come to the meeting

24    and address the people concerned, or you don't have

25    time to explain to us why all of these officers are

10

1       leaving up under your leadership, but you got time

2       to appoint somebody to investigate me.

3           That's a problem.  Like, that's a problem.

4           And this stuff bothering me so much.  And it

5       shouldn't because I've been in it for ten years.

6       But ever since I've been in it, I've been giving my

7       all and getting nothing.

8           So it ain't never about me.  It ain't about no

9       money, because I don't get paid enough to deal with

10      what I have to deal with, you know.

11          The same community I'm fighting for, fighting

12      against me.  And I have to go through this nonsense

13      stuff.  Nobody know what I have to deal with with

14      that.  It still -- it affects me.

15          It ain't never about no money.  Never about no

16      money.  It's about this community, man.  I do all

17      this for my community.  You got people that ain't

18      even from the community that don't even know the

19      community coming in here trying to take me.

20          And I'm tired of it.  Like I was just telling

21      my son, like, 'Quez, I was so frustrated yesterday,

22      I was so frustrated because I had just got the

23      call.  He wanted to come in a joke with me and

24      stuff.  And I'm just trying to smile.  But deep

25      down inside, I'm hurting because this job is so

                                                              11

1    frustrating.

2         Like, why y'all keep coming for me?  Why y'all

3    keep coming for me?  Because I'm fighting for my

4    community and you don't like it because you don't

5    do nothing?

6         But I'm not going to be quiet.  So file all

7    the ethics complaints you want.  You know, I got

8    into it with -- with a landlord.  They want to file

9    an ethics complaint.

10        All of it is political.  They doing everything

11   in they power to try to get rid of me.

12        They didn't put me in office.  The people did.

13   So y'all want me gone?  I will go.  I will go.

14        But I don't deserve to keep going through this

15   stuff because somebody taking something personal.

16   That's on you.

17        But I ain't never had a passion for fighting

18   for people like I do now, because I feel like I

19   make a difference.  I know I make a difference.

20   And they know I make a difference.  And that's why

21   they hate me.

22        But I didn't know people can be that low-down

23   and dirty to the point where you would just make up

24   all types of things, come and ask me, the one

25   person that's going hard and fighting so hard for

12

1    the community, come and ask me to step down because

2    you feel -- because you got issues with yourself?

3        You know, like, you want to be in power?  Tell

4    me about the power.  Nobody ain't got to call me

5    councilwoman.

6        No.  I am Shante.  Okay?  I'm Shante.  I'm

7    going to always be Shante.

8        A title don't make me.  And if I step down

9    today, I'm going to still be out in my community

10   and still doing what I need to do.

11       That's what make y'all mad.  Y'all -- but

12   y'all hung up on titles.  I don't care about that.

13       So, Chief Clark, go back to Arkansas, because

14   we don't need these issues in Forest Park.  We got

15   rid of that.  You know, we got rid of that.

16       Now you want to try to sue the City because

17   you're afraid of your job.  Well, if you did your

18   job, you wouldn't have to worry about it.

19       Butler, if you did your job, you wouldn't have

20   to worry about it, you know.

21       Like, it's ridiculous.  Like, these people

22   ganging up on me, little old Shante.  I got that

23   much power?

24       Put that energy into something else.  Put that

25   energy into our community.  I promise you it need

13

1       it.  We need grocery stores.  We need restaurants.

2       We need boutiques.  We need the Main Street to look

3       like a Main Street.

4       We need something for our kids to do.  We need

5       jobs for our people.  We need better homes, you

6       know.  Focus on that.

7       Why y'all so hung up on me?  I don't get it.

8       I don't get it.  But I'm tired of it.  I am so

9       tired of it.

10      So I'm going to meet with my attorneys.  And I

11      got to sue the city that I love and the city that I

12      grew up in.  I'm doing it because they want to keep

13      illegally investigating me.

14      I ain't told my mama.  I ain't told my

15      brothers.  I ain't told nobody, nobody, because

16      I've been trying to deal with it by myself.

17      But this just is so overwhelming and so

18      frustrating.  And I'm tired of it.  I'm so tired of

19      it.  I am tired of it.

20      Dr. Lawanda Falomi stand up in the council

21      meeting and threaten me:  Oh, I'm from the streets,

22      so I know how -- I -- I'm -- what'd she say?  I'm

23      stalking her.

24      Because somebody sent me a picture of her

25      meeting with our police chief, a car -- her car and

14

1          another person's car.  So the other lady said that

2          I'm stalking them and filed an ethics complaint on

3          me.

4               Well, baby, I didn't even take the picture.

5          So now what they got the officers doing is focusing

6          on who sent me that picture instead of focusing on

7          her threatening me in the council meeting.

8               You from the street?  What that mean?

9               Now I'm fearing for my life because I don't

10         know what she -- what that meant.  You from the

11         streets, you know how to deal with it?

12              But they ain't did nothing about that, but

13         they investigating me.

14              Well, I'm going to go get my evidence.  And

15         I'm going to meet with my attorney.  And I'm going

16         to handle it the right way, you know.

17              So y'all just pray for me, because I'm tired.

18         Like, this, y'all, is impacting my life.  I'm out

19         here fighting for the people and then -- and -- and

20         trying to make everybody else happy and put some

21         eyes on everybody else and make something happen,

22         and I'm going to bed at night crying because of

23         what's going on with me, what people are trying to

24         do to me.

25              You know, I got a family -- I got -- I care

                                                          15

1    for.  But I focus so much on this city and the

2    people in this city, and then these people don't

3    even focus on -- on the things that need to be

4    focused on.

5    Like, you have a councilwoman that cares, that

6    has your best interest at heart.  But you got these

7    people that move here because they want power.  And

8    we give it to them, and then they turn around and

9    do stuff like this.

10    So if you support me, the only thing I ask you

11    to do is please go November the 2nd to Parks and

12    Rec and cast your vote and get Kimberly James out

13    of office, get Angelyne Butler out of office.

14    And -- and mayor's coming up when I come up in

15    2023.  There has got to be a change.  Like, we done

16    came too far.  We still got a long way to go, but

17    they trying to set us ten years back.

18    And they hate the fact that I ain't with them.

19    They hate the fact that I ain't with them.

20    But I love y'all.  Pray for me.  It is what it

21    is, I guess.  The fight is on once again.

22

23

24

25

C E R T I F I C A T E

G E O R G I A:

Rockdale County:

    I hereby certify that the foregoing transcript was stenographically recorded by me, as stated in the caption; the colloquies, statements, questions, and answers thereto were reduced to typewriting under my direction and supervision; and the transcript is a true and correct record of the video recording given to the best of my ability.

    I further certify that I am not a relative or employee or attorney or counsel of any of the parties, nor am I a relative or employee of such attorney or counsel, nor am I financially interested in the action.

March 1, 2022.

*J. Robin Sawyer*
_____

J. Robin Sawyer

Certified Court Reporter

#4882-9574-0787-9168

17

## WORD INDEX

< $ >
$20  7:14

< 1 >
1  17:1
17  2:1
18  7:14

< 2 >
2021  1:1
2022  17:1
2023  16:15
22  1:1
235  1:1
2nd  16:11

< 3 >
3  2:1
30303  1:1

< 4 >
4  8:21
400  1:1
404)969-1206  1:1
4882-9574-0787-9168
  17:1

< 5 >
50  6:16, 17
500  7:9

< 9 >
9  3:7

< A >
ability  17:1
absolutely  4:13  8:12
accept  4:2
action  17:1
activists  10:22
address  10:24
administration  4:5, 6
adult  4:21
adults  4:21
afraid  13:17
ain  10:19, 23  11:8,
  15, 17  12:17  13:4
  14:14, 15  15:12
  16:18, 19

Angelyne  4:10  5:11,
  16  8:5  16:13
angry  5:19
answers  17:1
appeal  9:12, 13
appoint  11:2
aren  10:6
Arkansas  13:13
Associates  1:1
Atlanta  1:1
attorney  15:15  17:1
attorneys  9:22  14:10

< B >
baby  15:4
back  13:13  16:17
Baker  1:1
bed  15:22
behavior  6:23
best  16:6  17:1
better  3:17  9:4  14:5
Black  4:6, 12, 13
board  7:10  8:1
boss  5:3
bosses  5:2
bother  4:1
bothering  11:4
bothers  3:22  4:3
boutiques  14:2
bring  10:2
brothers  14:15
brought  6:12
built  7:7
Butler  4:11  5:11, 16
  8:5  13:19  16:13

< C >
call  3:11, 12  8:18,
  19, 23  11:23  13:4
called  3:12  6:13
calls  3:19
caption  17:1
car  14:25  15:1
care  8:4  13:12
  15:25
careful  6:14
cares  16:5
cast  16:12
caught  6:2
Certificate  2:1

Certified  17:1
certify  17:1
change  16:15
changes  4:4
chief  4:9  5:3  10:20
  13:13  14:25
citizens  7:11
city  4:7, 21, 25  6:18
  7:24  10:4  13:16
  14:11  16:1, 2
CLARK  1:1  4:10
  5:3  13:13
Clayton  8:1
clock  3:7
club  4:16, 18, 19
CODES  2:1
colloquies  17:1
come  7:2  10:23
  11:23  12:24  13:1
  16:14
coming  9:25  11:19
  12:2, 3  16:14
commissioner  7:25
community  3:24
  5:15, 17  10:2  11:11,
  16, 17, 18, 19  12:4
  13:1, 9, 25
companies  7:9
complaint  5:8, 9
  12:9  15:2
complaints  5:4  7:2
  10:18  12:7
concerned  10:24
constantly  3:20
control  8:25  9:2
Cooper  4:8  5:10
  8:13
correct  17:1
council  5:1  8:14
  9:9, 25  14:20  15:7
councilperson  3:22
COUNCILWOMAN
  1:1  3:2  5:14  6:9
  8:19  9:9  13:5  16:5
counsel  17:1
County  8:1  17:1
Court  17:1
crazy  6:8
criminal  6:23
crying  15:22

current  4:11

< D >
daughter  9:3
day  3:11
deal  3:21  9:5, 23
  11:9, 10, 13  14:16
  15:11
deep  11:24
denotes  2:1
Department  3:9, 14
  5:5  6:19  10:11
deserve  12:14
desk  6:16, 17
didn  6:6  9:5  12:12,
  22  15:4
difference  12:19, 20
direction  17:1
dirty  12:23
doing  3:24  4:1  5:13
  7:21, 22  8:22  12:10
  13:10  14:12  15:5
don  3:3, 4, 5  4:18
  6:24, 25  7:15  8:4,
  10, 16, 24, 25  9:23
  10:16, 24  11:9, 18
  12:4, 14  13:8, 12, 14
  14:7, 8  15:9  16:2
door  6:3
Dr  5:10  14:20
drugs  4:17

< E >
elected  5:21  8:23, 24
Ellen  5:11
embarrassing  7:23
employee  17:1
energy  13:24, 25
enjoy  4:21
ethics  6:4  10:17
  12:7, 9  15:2
event  10:3, 5
everybody  15:20, 21
evidence  3:8  15:14
explain  10:25
eyes  15:21

< F >
Facebook  1:1
fact  7:21, 22  16:18,

*19*
**Falomi**  14:*20*
**family**  15:*25*
**far**  16:*16*
**fearing**  15:*9*
**feel**  9:*25*  12:*18*  13:*2*
**fight**  3:*23*  4:*16*  5:*7,*
*8*  16:*21*
**fighting**  11:*11*  12:*3,*
*17, 25*  15:*19*
**file**  12:*6, 8*
**filed**  5:*4, 8*  15:*2*
**financially**  17:*1*
**fire**  7:*6*
**first**  3:*12*  4:*5*
**Florida**  8:*13*
**focus**  9:*16*  10:*8*
*14:6*  16:*1, 3*
**focused**  7:*5, 18*  10:*8*
*16:4*
**focusing**  7:*19*  15:*5, 6*
**foregoing**  17:*1*
**Forest**  3:*9*  7:*11, 24*
*8:17*  13:*14*
**formal**  5:*9*
**formed**  6:*6*
**Fort**  7:*14*
**Fortune**  7:*9*
**four**  7:*6*
**frivolous**  7:*2*
**frustrated**  5:*20*
*11:21, 22*
**frustrating**  12:*1*
*14:18*
**further**  17:*1*

**< G >**
**ganging**  13:*22*
**Georgia**  1:*1*
**getting**  3:*25*  9:*8, 19*
*10:1*  11:*7*
**Gillem**  7:*14*
**give**  3:*8, 17*  16:*8*
**given**  17:*1*
**giving**  11:*6*
**go**  3:*18*  4:*18, 20, 21,*
*22*  8:*8, 9*  9:*19*
*10:11*  11:*12*  12:*13*
*13:13*  15:*14*  16:*11,*
*16*
**God**  6:*11*

**going**  3:*17*  5:*23*
*12:6, 14, 25*  13:*7, 9*
*14:10*  15:*14, 15, 22,*
*23*
**Good**  3:*2*  9:*4*
**grew**  14:*12*
**grocery**  14:*1*
**guess**  4:*14*  16:*21*
**guy**  6:*13*  8:*13*  9:*19*

**< H >**
**handle**  15:*16*
**happen**  6:*5*  15:*21*
**happened**  7:*8*
**happy**  15:*20*
**harassing**  9:*7*
**hard**  12:*25*
**hasn**  7:*8*
**hate**  7:*20, 22*  12:*21*
*16:18, 19*
**haven**  7:*11*
**heard**  9:*14*
**heart**  16:*6*
**heartbreaking**  10:*9*
**heat**  3:*25*
**help**  3:*13, 14*  10:*12*
**high**  9:*17*
**homes**  14:*5*
**hour**  7:*15*
**HR**  9:*3*
**human**  4:*22*
**hung**  13:*12*  14:*7*
**hurt**  4:*3*
**hurting**  4:*3*  11:*25*
**husband**  4:*17*  9:*7*

**< I >**
**illegal**  4:*24*
**illegally**  5:*4*  14:*13*
**impacting**  15:*18*
**incomplete**  2:*1*
**INDEX**  2:*1*
**information**  9:*20*
**inside**  11:*25*
**interest**  16:*6*
**interested**  17:*1*
**interruption/change**
*2:1*
**investigatable**  6:*21*
**investigate**  5:*3*  8:*13*

*11:2*
**investigated**  6:*22*
**investigating**  3:*10*
*4:6, 7, 15*  6:*20, 23*
*7:1*  9:*21*  14:*13*
*15:13*
**investigations**  6:*16,*
*17*
**issues**  13:*2, 14*

**< J >**
**James**  4:*11*  5:*12*
*8:12*  16:*12*
**Janice**  1:*1*
**JB**  4:*20*
**job**  9:*8*  10:*12*  11:*25*
*13:17, 18, 19*
**jobs**  7:*11, 14*  14:*5*
**joke**  11:*23*

**< K >**
**keep**  7:*18*  12:*2, 3,*
*14*  14:*12*
**kids**  14:*4*
**Kimberly**  4:*11*  5:*12*
*8:12*  16:*12*
**know**  3:*16, 18, 25*
*5:12*  7:*10, 13, 15, 21*
*8:2, 3*  9:*12, 15, 20,*
*24*  11:*10, 13, 18*
*12:7, 19, 20, 22*  13:*3,*
*15, 20*  14:*6, 22*
*15:10, 11, 16, 25*
**knows**  3:*21*

**< L >**
**lady**  15:*1*
**landlord**  12:*8*
**Lawanda**  14:*20*
**leadership**  11:*1*
**leaving**  11:*1*
**letter**  4:*25*  5:*9*
**level**  8:*25*
**life**  15:*9, 18*
**listen**  9:*13*
**little**  13:*22*
**live**  8:*21*
**long**  16:*16*
**look**  3:*3*  14:*2*
**looking**  6:*7*
**losing**  10:*12*

**love**  7:*20*  14:*11*
*16:20*
**low-down**  12:*22*

**< M >**
**mad**  6:*24*  13:*11*
**Main**  14:*2, 3*
**making**  7:*14*
**mama**  14:*14*
**man**  9:*11*  11:*16*
**manager**  4:*7*  5:*1*
**March**  17:*1*
**mayor**  4:*11*  5:*1*  7:*5*
*8:6, 7*  16:*14*
**mean**  15:*8*
**meant**  15:*10*
**meet**  3:*8*  9:*19*
*10:11, 21*  14:*10*
*15:15*
**meeting**  6:*8*  9:*10, 25*
*10:20, 21, 23*  14:*21,*
*25*  15:*7*
**mess**  8:*10*
**messed**  8:*10*
**middle**  9:*17*
**Miers**  5:*11*
**Monday**  5:*25*
**money**  4:*17*  11:*9, 15,*
*16*
**morning**  3:*2, 7*
**move**  9:*4*  16:*7*
**moved**  8:*5, 6*  9:*3*

**< N >**
**nary**  10:*3*
**Nathaniel**  4:*10*  5:*3*
**need**  7:*17*  13:*10, 14,*
*25*  14:*1, 2, 4, 5*  16:*3*
**needed**  8:*7*
**never**  10:*3*  11:*8, 15*
*12:17*
**new**  4:*7, 8*
**night**  4:*22*  15:*22*
**nonsense**  11:*12*
**normally**  3:*4*
**North**  1:*1*
**November**  16:*11*

**< O >**
**office**  7:*5*  8:*3*  12:*12*

16:*13*
**officers** 10:*25* 15:*5*
**official** 8:*24*
**Oh** 14:*21*
**Okay** 8:*6* 13:*6*
**old** 13:*22*
**once** 16:*21*
**open** 6:*3*
**opened** 7:*11*
**opinion** 9:*12*
**order** 5:*2*
**ordinance** 5:*25*
**outspoken** 5:*21*
**overwhelming** 14:*17*

**< P >**
**PAGE** 2:*1*
**paid** 11:*9*
**Park** 3:*9* 7:*12, 24*
8:*17* 13:*14*
**Parks** 16:*11*
**parties** 17:*1*
**pass** 5:*25* 6:*6*
**passion** 12:*17*
**Peachtree** 1:*1*
**people** 4:*3, 18, 25*
5:*21* 7:*24* 8:*4, 14,
17* 9:*8* 10:*1, 5, 21,
24* 11:*17* 12:*12, 18,
22* 13:*21* 14:*5*
15:*19, 23* 16:*2, 7*
**person** 6:*12* 8:*8*
10:*18* 12:*25* 15:*1*
**personal** 12:*15*
**ph** 2:*1* 5:*12*
**phone** 3:*5*
**phonetically** 2:*1*
**picture** 14:*24* 15:*4, 6*
**place** 4:*20*
**planning** 6:*9*
**Please** 3:*13, 14* 8:*10*
16:*11*
**plot** 6:*9*
**point** 12:*23*
**Police** 3:*9, 14* 4:*8*
5:*2, 5* 6:*19* 10:*20*
14:*25*
**political** 10:*22* 12:*10*
**politics** 9:*5*
**power** 12:*11* 13:*3, 4,*

*23* 16:*7*
**pray** 15:*17* 16:*20*
**problem** 11:*3*
**promise** 13:*25*
**prosper** 6:*6*
**put** 12:*12* 13:*24*
15:*20*
**putting** 8:*3*

**< Q >**
**questions** 17:*1*
**Quez** 11:*21*
**quiet** 5:*19* 8:*20, 22*
9:*18* 12:*6*

**< R >**
**Race** 4:*13*
**ready** 4:*22* 9:*19*
**really** 8:*2*
**reasons** 10:*16*
**Rec** 16:*12*
**record** 17:*1*
**recorded** 17:*1*
**recording** 17:*1*
**reduced** 9:*18*
**refuse** 9:*18*
**relative** 17:*1*
**Reporter** 17:*1*
**resources** 6:*19*
**restaurants** 14:*1*
**restricted** 6:*1*
**rid** 5:*13* 9:*8* 12:*11*
13:*15*
**ridiculous** 7:*3* 13:*21*
**right** 3:*20, 23* 15:*16*
**Robin** 17:*1*
**Rockdale** 17:*1*
**run** 8:*5, 6*

**< S >**
**sat** 9:*9*
**Sawyer** 17:*1*
**scared** 10:*12*
**School** 8:*1* 9:*17*
**see** 9:*1* 10:*15*
**seeing** 6:*11*
**seen** 10:*3*
**sell** 4:*17*
**sent** 14:*24* 15:*6*
**September** 1:*1*

**set** 16:*17*
**Shante** 13:*6, 7, 22*
**Shouldn** 6:*22* 11:*5*
**sic** 2:*1*
**sick** 5:*18*
**side** 9:*9*
**sign** 7:*7*
**sit** 7:*10*
**smile** 11:*24*
**somebody** 3:*8* 6:*24,
25* 7:*1, 16* 9:*1*
10:*11* 11:*2* 12:*15*
14:*24*
**son** 11:*21*
**sorry** 3:*18*
**speak** 5:*23* 6:*25*
**spelt** 2:*1*
**sponsored** 10:*5*
**stalk** 10:*19*
**stalking** 10:*18* 14:*23*
15:*2*
**stand** 14:*20*
**stated** 17:*1*
**statements** 17:*1*
**station** 7:*6*
**Ste** 1:*1*
**stenographically** 17:*1*
**step** 6:*3* 10:*15* 13:*1,
8*
**stop** 8:*22*
**stores** 14:*1*
**Street** 1:*1* 14:*2, 3*
15:*8*
**streets** 14:*21* 15:*11*
**stuff** 3:*5* 7:*4, 17*
9:*15, 16* 11:*4, 13, 24*
12:*15* 16:*9*
**sue** 13:*16* 14:*11*
**supervision** 17:*1*
**support** 16:*10*
**supposed** 7:*6*

**< T >**
**take** 4:*2* 11:*19* 15:*4*
**talk** 9:*21*
**talking** 3:*4*
**tech** 6:*18*
**tell** 8:*16, 18* 9:*24*
10:*4* 13:*3*
**telling** 11:*20*

**ten** 11:*5* 16:*17*
**texting** 6:*8*
**thereto** 17:*1*
**thing** 3:*24* 4:*12, 13*
10:*15* 16:*10*
**things** 10:*2* 12:*24*
16:*3*
**Thirteen** 7:*24*
**thought** 2:*1*
**threaten** 14:*21*
**threatening** 15:*7*
**three** 4:*9, 10*
**ti** 6:*18*
**time** 3:*18* 8:*11*
10:*19, 21, 23, 25* 11:*1*
**tired** 10:*14* 11:*20*
14:*8, 9, 18, 19* 15:*17*
**title** 13:*8*
**titles** 13:*12*
**today** 13:*9*
**told** 14:*14, 15*
**Tower** 1:*1*
**TRANSCRIPT** 2:*1*
17:*1*
**transcription** 2:*1*
**tried** 5:*25* 6:*5*
**true** 17:*1*
**try** 12:*11* 13:*16*
**trying** 3:*23* 6:*1*
10:*1* 11:*19, 24*
14:*16* 15:*20, 23*
16:*17*
**turn** 16:*8*
**two** 7:*7* 10:*17*
**type** 7:*17* 9:*15, 16*
**types** 12:*24*
**typewriting** 17:*1*

**< U >**
**understood** 2:*1*
**unethical** 4:*24*
**unintelligible** 2:*1*
**upset** 6:*7*

**< V >**
**verbatim** 2:*1*
**victim** 5:*6*
**Video** 1:*1* 2:*1* 3:*5*
17:*1*
**violation** 6:*4*

**violations**  10:*17*
**voice**  9:*12, 25*
**vote**  7:*25*   16:*12*

**< W >**
**wake**  10:*10*
**want**  5:*18*   6:*2, 3, 13,*
*17*   7:*18*   8:*21, 22*
 9:*1*   10:*12, 15*   12:*7,*
*8, 13*   13:*3, 16*   14:*12*
 16:*7*
**wanted**  11:*23*
**Ward**  8:*21*
**wasn**  4:*1*
**waste**  6:*18*
**way**  3:*8*   10:*10*
 15:*16*   16:*16*
**weapon**  6:*6*
**well**  9:*13*   10:*17*
 13:*17*   15:*4, 14*
**WELLS**  1:*1*   3:*2*
 5:*14*   6:*10*   8:*20*
**white**  4:*12, 13*
**word**  2:*1*   6:*21*
**word/phrase**  2:*1*
**work**  8:*16, 17*
**worked**  8:*14*
**works**  5:*1*
**worry**  13:*18, 20*
**wouldn**  4:*1*   13:*18, 19*
**write**  4:*25*   9:*11*
**writing**  9:*13*
**written**  2:*1*

**< Y >**
**Yeah**  4:*20*
**year**  4:*8*
**years**  4:*9, 10*   7:*6, 7*
 11:*5*   16:*17*
**yesterday**  7:*25*   11:*21*
**yo-yo**  8:*15*

⚡ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
CLAYTON COUNTY, GEORGIA

**2021CV03928-14**
**Jewel Scott**
MAR 07, 2022 02:20 PM

Jacqueline D. Wills, Clerk
Clayton County, Georgia

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| vs. | ) | 2021-CV-03928-14 |
| | ) | |
| CITY OF FOREST PARK, GA, and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| Official and Individual Capacity, | ) | **Jury Trial Demanded** |
| | ) | |
| Defendants. | ) | |

## DEFENDANT LATRESA AKINS-WELLS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW Latresa Akins-Wells, a Defendant in the above-styled action, and, pursuant to O.C.G.A. §§ 9-11-12(b) (6), hereby moves to dismiss Plaintiff's claims against her. As grounds for the Motion, Defendant states that Plaintiff has failed to state a claim of slander or intentional infliction of emotional distress against this Defendant. This Defendant is also entitled to official immunity and supplemental official immunity as to Plaintiff's claims. Accordingly, Plaintiff's First Amended Complaint against this Defendant should be dismissed, in its entirety, for failure to state a claim upon which relief can be granted.

In support of its Motion, this Defendant files concurrently herewith her Brief in Support of her Motion to Dismiss Plaintiff's First Amended Complaint.

Respectfully submitted, this 7th day of March, 2022.

*{Signatures on Following Page}*

**Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**

/s/ Karen E. Woodward
Karen E. Woodward
Georgia Bar No. 775260
Email:  kwoodward@cmlawfirm.com
Direct Dial:  404-881-2623

/s/ Marisa M. Beller
Marisa M. Beller
Georgia Bar No. 845893
Email: mbeller@cmlawfirm.com
Direct Dial: 678-684-2147

*Attorneys for Defendant*
*Latresa Akins-Wells*

Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing **DEFENDANT LATRESA AKINS-WELLS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** to all parties in this matter via PeachCourt to counsel of record addressed as follows:

Jackie Lee
LEE LAW FIRM, LLC
1100 Peachtree St., NE, Ste. 250
Atlanta, GA 30309
jackie@leelawga.com
*(Attorney for Plaintiff)*

Michael M. Hill
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
mhill@fmglaw.com
*(Attorney for the City of Forest Park)*

This 7th day of March, 2022.

**Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**

*/s/ Karen E. Woodward*
Karen E. Woodward
Georgia Bar No. 775260

⚡ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
CLAYTON COUNTY, GEORGIA

**2021CV03928-14**
**Jewel Scott**
**MAR 07, 2022 02:20 PM**

Jacqueline D. Wills, Clerk
Clayton County, Georgia

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| vs. | ) | 2021-CV-03928-14 |
| | ) | |
| CITY OF FOREST PARK, GA, and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| Individual Capacity, | ) | **Jury Trial Demanded** |
| | ) | |
| Defendants. | ) | |

### BRIEF IN SUPPORT OF DEFENDANT LATRESA AKINS-WELLS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

Pursuant to O.C.G.A. §§ 9-11-12(b)(1) and (6), Defendant Latresa Akins-Wells, a named Defendant in the above-styled civil action, files this Motion to Dismiss all Plaintiff's claims against her. In support of this motion, this Defendant submits this brief in support of her Motion to Dismiss. For the reasons set forth below, this Defendant respectfully requests this Court to dismiss Plaintiff's First Amended Complaint with prejudice pursuant to O.C.G.A. § 9-11-12(b)(6).

### I.    INTRODUCTION

Plaintiff filed the instant action on action on November 1, 2020, alleging whistleblower retaliation by co-Defendant City of Forest Park pursuant to the Georgia Whistleblower Act ("GWA"), O.C.G.A. § 45-1-4, and alleging claims of Intentional Infliction of Emotional Distress and Slander against Defendant Wells in her individual capacity. Councilwoman Wells served as a councilwoman for the City of Forest Park at the time of these incidents allegedly occurred.  For the reasons argued below, this Court should grant Defendant Wells' Motion to Dismiss the Plaintiff's First Amended Complaint.

## II.    <u>STANDARD OF REVIEW</u>

A motion to dismiss filed pursuant to O.C.G.A. § 9-11-12(b)(6) for failure to state a claim upon which relief can be granted will be sustained if:  (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant a grant of the relief sought. <u>Racette v. Bank of Am., N.A.</u>, 318 Ga. App. 171, 172 (2012); <u>Anderson v. Daniel</u>, 314 Ga. App. 394, 397 (2012).   In ruling on a motion to dismiss under O.C.G.A. § 9-11-12(b)(6), a court must assume the factual allegations of the complaint are true. <u>Charles H. Wesley Educ. Fund., Inc. v. State Election Bd.</u>, 282 Ga. 707, 714 (2007).  Plaintiff's official capacity claims against Defendant Wells should be dismissed for failure to state a claim.

## III.    <u>STATEMENT OF THE CASE</u>

Plaintiff is the current Police Chief and Deputy City Manager/Public Safety Director for the City of Forest Park. (First Amended Complaint, ¶¶ 1¸ 29).  Co-Defendant Latresa Akins- Wells is a member of the City Council for the City of Forest Park. (<u>Id</u>., ¶ 3, 11).  Plaintiff takes umbrage with a September 22, 2021, Facebook video posted by Councilwoman Wells. (<u>Id</u>., ¶ 73).  In this video, Councilwoman Wells discusses an investigation being conducted by the City of Forest Park Police Department into allegations against her. (Defendant's Answer to First Amended Complaint, Transcript of September 22, 2021, Facebook Video, Exhibit 1, hereinafter "Exhibit 1", p. 3, ll. 9-10, p. 4, ll. 16-19, p. 5, ll. 4-6).   Councilwoman Wells explained that she believed that the **City of Forest Park Mayor and Council ordered Plaintiff to investigate her illegally** and that she feels that the allegations against her are "investigatable" because they are unfounded and "frivolous". (<u>Id</u>., p. 5. ll.1-5, p. 6, ll. 20-21, p. 7, l. 2, p. 14, ll. 11-13).  Councilwoman Wells also expressed her

unhappiness with Plaintiff and City of Forest Park Mayor Angelyne Butler's job performance. (Id., p. 13, ll. 16-19).

## IV. ARGUMENT AND CITATION TO AUTHORITY

### A. Plaintiff Fails to State a Slander Claim Against Councilwoman Wells

A slander claim against a public official requires the plaintiff to show (1) that the defendant made a false and defamatory statement concerning plaintiff in reference to that person's trade, office, or profession calculated to injure that person therein; (2) the defendant made an unprivileged communication of that statement to a third party; (3) fault by the defendant constituting at least negligence; and (3) either that the plaintiff suffered special harm or that the statement is actionable even in the absence of special harm. O.C.G.A. § 51-5-4(1)(3); Wylie v. Denton, 323 Ga. App. 161, 171 (2013) (citing Renton v. Watson, 319 Ga. App. 896, 900 (2013)).

Councilmember Wells' statements were not false, defamatory, or made with the specific intent to do harm. For a public official or public figure to prevail in a slander action, the official must establish that the allegedly defamatory statement was false and made with actual malice. New York Times v. Sullivan, 376 U.S. 254, 279-80 (1964); Murray v. Williams, 166 Ga. App. 865, 866 (1983). Defamed public officials can only recover upon a showing of actual malice, that is, proof that the statement was made with knowledge that it was false or with reckless disregard of whether it was false or not. Sparks v. Peaster, 260 Ga. App. 232, 236 (2003) (citing Williams v. Tr. Co. of Ga., 140 Ga. App. 49, 59–60 (1976)). The standard of proof to make this showing is high. Id. A plaintiff "must show in a clear and convincing manner that a defendant in fact entertained serious doubts as to the truth of his statements." Id., 260 Ga. App. at 237 (quoting Davis v. Shavers, 225 Ga.

App. 497, 500-501(3) (1997) *aff'd* 269 Ga. 75 (1998)). A court may not assume knowledge or falsity of reckless disregard for the truth, nor can it be derived solely from the language of the publication itself. <u>Jessup v. Rush</u>, 271 Ga. App. 243, 245 (2005).  As detailed below, there is no evidence to support Plaintiff's slander claim.

Plaintiff alleges that Councilwoman Wells made several false statements: (1) that Plaintiff was conducting an "illegal investigation" into her and said investigation was "not investigatiable". (First Amended Complaint, ¶ 75). However, Councilwoman Wells' actually complained that the City of Forest Park was illegally investigating her not Plaintiff. Indeed, Councilwoman Wells, stated that the **City of Forest Park Mayor and Council ordered Plaintiff to investigate her** illegally. (<u>Id</u>., p. 5, ll. 1-5, p. 14, ll. 11-13)(emphasis added). These statements are not defamatory because they do not concern Plaintiff. Similarly, allegations that Councilwoman Wells compromised the integrity of an investigation and that she received information improperly do not amount to slander because these allegations do not concern Plaintiff.  (First Am. Compl, ¶¶ 77, 80). Therefore, Plaintiff's contention that these statements were slanderous fail as a matter of law.

1.     <u>**Non-actionable Opinion is not Defamatory**</u>

Councilwoman Wells' opinions about Clark's performance of his duties as Police Chief are mere opinion, not defamatory. Statements that are rhetorical hyperbole, or expressions of opinion on matters with respect to which reasonable people might have differing opinions, cannot support a claim for defamation. <u>McCall v. Couture</u>, 293 Ga. App. 305, 308 (2008).  Similarly,"[a] speaker cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be." <u>Elder v. Cardoso</u>, 205 Ga. App. 144, 145 (1992)(*quoting* <u>Bergen v.</u>

Martindale–Hubbell, 176 Ga. App. 745, 747(3)(1985)). Plaintiff claims that Councilwoman Wells' statement that Plaintiff "tried to sue the City because he is afraid to do his job, and if he did his job he wouldn't have to worry about it" is defamatory. (First Amended Complaint, ¶¶ 73, 75-76). These statements are pure opinion and express Councilwoman Wells' her feelings as to Plaintiff's job performance. *See* Chaney v. Harrison & Lynam, LLC, 308 Ga. App. 808 (2011)(a sign inviting the public to ask the defendant purchasers' to give their opinion why not to buy a home from the plaintiff builder was not defamatory, as it did not connote anything sufficiently factual to be susceptible of being proved true or false). Therefore, Plaintiff's slander claim fails as a matter of law.

### B.    Plaintiff's Intentional Infliction of Emotional Distress Claim Against Wells Fails as a Matter of law.

A claim of intentional infliction of emotional distress ("IIED") requires a showing that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) a causal connection existed between the wrongful conduct and the emotional distress; and (4) the emotional harm was severe. Abdul-Malik v. AirTran Airways, Inc., 297 Ga. App. 852, 855–56 (2009).  Extreme and outrageous conduct is that which is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Abdul-Malik, 297 Ga. App. at 856 (*quoting* Biven Software v. Newman, 222 Ga. App. 112, 113-114(1) (1996)).

"[D]erogatory comments in the employment context generally do not fall into this category of extreme and outrageous conduct… even though (i) given in crude and obscene language, (ii) done with a smirk, (iii) conducted in a belittling, rude, and condescending manner to embarrass and humiliate the employee, (iv) given at a poor time, (v) tinged with

the intent to retaliate for former conflicts, and (vi) constituting a false accusation of dishonesty or lack of integrity." Jarrard v. United Parcel Serv., Inc., 242 Ga. App. 58, 59-62 (2000). *See also*, Harris v. Pierce Cnty., No. CV 513–82, 2014 WL 3974668, at *18 (S.D. Ga. Aug. 14, 2014) (statements regarding plaintiff's job performance made to the public and to newspapers not extreme and outrageous). Councilwoman Wells' expressed her opinion with Chief Clark's job performance, merely stating that he was "afraid of his job" and that "if he did his job he wouldn't have to worry about it." These opinions clearly do not rise to the level of extreme or outrageous conduct that would support his claim for IIED. Likewise, Councilwoman Wells' opinion that the city directed Chief Clark to conduct an illegal investigation into her is neither extreme or outrageous. Therefore, Plaintiff's intentional infliction of emotional distress claim fails as a matter of law.

## C.    Councilwoman Wells is Entitled to Official Immunity

Councilwoman Wells is entitled to official immunity for any statements made while she was acting within the scope of her duties. Smith v. Lott, 317 Ga. App. 37, 38 (2012). In Georgia, a municipal official acting within the scope of her discretionary authority is entitled to "official immunity" from state law claims against her in her official capacity. Outlaw v. Nasworthy, 250 Ga. App. 362, 365 (2001). Immunity applies unless the official acted "with actual malice or with actual intent to cause injury." Todd v. Kelly, 244 Ga. App. 404, 406 (2000). "Actual malice denotes 'express malice or malice in fact.'" Id. (*citing* Merrow v. Hawkins, 266 Ga. 390, 392 (1996)). In other words, this standard requires a "deliberate intention to do wrong." Merrow, 266 Ga. at 392. Plaintiff cannot show that Councilwoman Wells' statements of opinion were made with the deliberate intent to do wrong. Therefore, Councilwoman Wells' is entitled to official immunity as to

Plaintiff's claims.

**D.** **Councilwoman Wells is Entitled Supplemental Immunity under O.C.G.A.** **§ 51-1-20(a)**

Finally, Councilmember Wells is entitled to immunity under O.C.G.A. § 51-1-20(a). Unlike official immunity, O.C.G.A. § 51-1-20 immunity "applies regardless of whether the nature of the person's actions was ministerial or discretionary." Atlanta Airmotive v. Royal, 214 Ga. App. 760, 761 (1994). Councilmember Wells is an elected official "serving with or without compensation as a member…of [a] local governmental…board" when these false statements were allegedly made. O.C.G.A. § 51-1-20(a). Therefore, Councilmember Wells cannot be held personally liable. Dyches v. McCorkle, 212 Ga. App. 209, 215-17(1994).

**V.** **CONCLUSION**

For the foregoing reasons, Defendant Wells respectfully requests that this Court enter an order dismissing Plaintiff's First Amended Complaint.

This __ day of March, 2022.

> **Cruser, Mitchell, Novitz, Sanchez,**
> **Gaston & Zimet, LLP**
>
> */s/ Karen E. Woodward*
> Karen E. Woodward
> Georgia Bar No. 775260
> Email: kwoodward@cmlawfirm.com
> Direct Dial: 404-881-2623
>
> */s/ Marisa M. Beller*
> Marisa M. Beller
> Georgia Bar No. 845893
> Email: mbeller@cmlawfirm.com
> Direct Dial: 678-684-2147
>
> *Attorneys for Defendant*
> *Latresa Akins-Wells*

Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing **BRIEF IN SUPPORT OF DEFENDANT LATRESA AKINS-WELLS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** to all parties in this matter via PeachCourt to counsel of record addressed as follows:

Jackie Lee
LEE LAW FIRM, LLC
1100 Peachtree St., NE, Ste. 250
Atlanta, GA 30309
jackie@leelawga.com
*(Attorney for Plaintiff)*

Michael M. Hill
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
mhill@fmglaw.com
*(Attorney for the City of Forest Park)*

This 7th day of March, 2022.

**Cruser, Mitchell, Novitz, Sanchez,
Gaston & Zimet, LLP**

*/s/ Karen E. Woodward*
Karen E. Woodward
Georgia Bar No. 775260

⚖ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
CLAYTON COUNTY, GEORGIA

**2021CV03928-14**

**Jewel Scott**
**MAR 09, 2022 11:38 AM**

Jacqueline D. Wills, Clerk
Clayton County, Georgia

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| vs. | ) | 2021-CV-03928-14 |
| | ) | |
| CITY OF FOREST PARK, GA, and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| Individual Capacity, | ) | **Jury Trial Demanded** |
| | ) | |
| Defendants. | ) | |

## NOTICE OF ENTRY OF APPEARANCE

COME NOW MARISA M. BELLER and KAREN E. WOODWARD of the law firm of
CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET, LLP and hereby enter an
appearance as additional counsel for Defendant Latresa Akins-Wells, in her individual capacity.
The undersigned request that they be copied on all court filings, notices, orders, etc. regarding the
above-styled action.  All pleadings, notices, orders and other documents required to be served shall
be directed to:

*Marisa M. Beller.*
*Karen E. Woodward*
*CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET, LLP*
*Meridian II, Suite 2000*
*275 Scientific Drive*
*Peachtree Corners, GA 30092*
mbeller@cmlawfirm.com
kwoodward@cmlawfirm.com

[SIGNATURE ON FOLLOWING PAGE]

Respectfully submitted, this 9th day of March, 2022.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have electronically filed this **NOTICE OF ENTRY OF APPEARANCE** with the Clerk of Court via the PeachCourt file and serve system which will automatically serve a copy of same upon the following counsel of record:

Jackie Lee
LEE LAW FIRM, LLC
1100 Peachtree St., NE, Ste. 250
Atlanta, GA 30309
jackie@leelawga.com
*(Attorney for Plaintiff)*

Michael M. Hill
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
mhill@fmglaw.com
*(Attorney for the City of Forest Park)*

This 9th day of March, 2022.

**CRUSER, MITCHELL, NOVITZ, SANCHEZ, GASTON & ZIMET, LLP**

*/s/ Marisa M. Beller*
Marisa M. Beller
Georgia Bar No. 845893

⊕ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
CLAYTON COUNTY, GEORGIA

**2021CV03928-14**
Jewel Scott
MAR 09, 2022 02:38 PM

Jacqueline D. Wills, Clerk
Clayton County, Georgia

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 2021CV03928-09 |
| v. | ) | |
| | ) | |
| CITY OF FOREST PARK, GA and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## CITY OF FOREST PARK, GEORGIA'S ANSWER
## AND DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW the City of Forest Park, Georgia (the "City"), pursuant to O.C.G.A. §§ 9-11-8 and 9-11-12, and hereby files this Answer and Defenses to Plaintiff's First Amended Complaint, and by way of said Answer respectfully shows the following:

### FIRST DEFENSE

The First Amended Complaint ("Amended Complaint") fails, in whole or in part, to state a claim upon which relief can be granted.

### SECOND DEFENSE

Some or all of Plaintiff's claims are barred by the applicable statute of limitations, including the failure to file the instant lawsuit within the time-period required by the applicable statute.

### THIRD DEFENSE

All actions taken with respect to the Plaintiff were for legitimate, non-retaliatory reasons.

### FOURTH DEFENSE

The legitimate, non-retaliatory reasons for any adverse action taken with respect to the

Plaintiff were not pretexts for unlawful retaliation.

### FIFTH DEFENSE

Even if any adverse actions were taken against the Plaintiff for reasons related to Plaintiff's protected class status, protected activity, or any exercise by Plaintiff of protected rights, Plaintiff would have been subject to adverse employment actions or otherwise for reasons unrelated to any protected class status or activities, including after-acquired evidence.

### SIXTH DEFENSE

Any adverse action taken against Plaintiff was done so in good faith without malice or reckless indifference to Plaintiff's protected rights.

### SEVENTH DEFENSE

Plaintiff did not make any disclosure or engage in any other activity protected under the Georgia Whistleblower Act ("GWA"), O.C.G.A. § 45-1-4.

### EIGHTH DEFENSE

Plaintiff has no actual or reasonable belief that he complained of or reported the possible existence of any activity constituting fraud, waste, or abuse in or relating to any state programs or operations under the jurisdiction of the City.

### NINTH DEFENSE

Plaintiff has no actual or reasonable belief that he complained of, disclosed, objected to, or refused to participate in any violation of any law, rule, or regulation, as defined by O.C.G.A. § 45-1-4(d).

### TENTH DEFENSE

The City has not made, adopted or enforced a policy or practice of preventing disclosure of or noncompliance with any law, rule, or regulation.

- 2 -

## ELEVENTH DEFENSE

Any complaint made by Plaintiff was made knowing it was false or with reckless disregard for its truth or falsity.

## TWELFTH DEFENSE

No act or omission of the City either proximately caused or contributed to any injuries or damages allegedly incurred by Plaintiff. Therefore, Plaintiff has no right of recovery against the City.

## THIRTEENTH DEFENSE

Some or all of Plaintiff's claims under the GWA fail because Plaintiff did not experience a tangible adverse employment action.

## FOURTEENTH DEFENSE

Plaintiff's damages are limited to those remedies and those amounts provided for by statute.

## FIFTEENTH DEFENSE

Plaintiff has failed to mitigate damages as required by law.

## SIXTEENTH DEFENSE

Plaintiff's Amended Complaint fails to state a claim for punitive, actual, special, exemplary, and/or compensatory damages.

## SEVENTEENTH DEFENSE

Plaintiff's Amended Complaint fails to state a claim for punitive damages. The City is immune from liability for punitive damages, and punitive damages are the responsibility of none other than the active tortfeasor.

### EIGTHTEENTH DEFENSE

Some or all of Plaintiff's claims are barred by the doctrine of fraud.

### NINETEENTH DEFENSE

Plaintiff has unclean hands.

### TWENTIETH DEFENSE

The GWA does not support a claim for retaliatory hostile work environment.

### TWENTY-FIRST DEFENSE

Even if Plaintiff was subject to unlawful conduct based on Plaintiff's protected class status, protected activity, or any exercise by Plaintiff of protected rights, the City exercised reasonable care to prevent and correct the actions which support Plaintiff's claim and Plaintiff unreasonably failed to avail himself of preventive or corrective opportunities or to avoid harm otherwise.

### TWENTY-SECOND DEFENSE

Plaintiff has not been subjected to retaliatory harassment and Plaintiff's Amended Complaint does not allege, nor has Plaintiff experienced, retaliatory conduct sufficiently severe or pervasive to constitute conduct for which there is a legal remedy.

### TWENTY-THIRD DEFENSE

The City is not liable for the individual acts of Defendant Latresa Akins-Wells.

### TWENTY-FOURTH DEFENSE

Plaintiff's claims may be subject to apportionment including pursuant to O.C.G.A § 51-12-33 and otherwise.

### TWENTY-FIFTH DEFENSE

The City reserves the right to plead and prove such other defenses as may become known during the course of its investigation.

## TWENTY-SIXTH DEFENSE

For answers to the respective paragraphs of the Amended Complaint, the City shows as follows:

## PARTIES

1.

The City shows that this paragraph contains a legal conclusion to which no response is required; however, to the extent a response is required, the City admits Plaintiff was hired as Police Chief on May 14, 2019.  The City denies the remaining allegations pled in Paragraph 1 of the Amended Complaint.

2.

The City shows that this paragraph contains a legal conclusion to which no response is required; however, to the extent a response is required, the City admits its principal address is located at 745 Forest Parkway, Forest Park, GA 30297.  The City denies the remaining allegations pled in Paragraph 2 of the Amended Complaint.

3.

The City admits the allegations pled in Paragraph 3 of the Amended Complaint.

## JURISDICTION AND VENUE

4.

The City admits the allegations pled in Paragraph 4 of the Amended Complaint.

5.

The City admits that Councilwoman Latresa Akins-Wells ("Defendant Wells") and the City reside in Clayton County.  The City denies the remaining allegations pled in Paragraph 5 of the Amended Complaint

- 5 -

6.

The City denies the allegations pled in Paragraph 6 of the Amended Complaint.

## WAIVER OF SOVEREIGN IMMUNITY

7.

The City shows that this paragraph contains a legal conclusion to which no response is required; however, to the extent a response is required, the City shows that the referenced code section and Georgia case law speak for themselves. The City denies the remaining allegations pled in Paragraph 7 of the Amended Complaint.

8.

The City shows that this paragraph contains a legal conclusion to which no response is required; however, to the extent a response is required, the City shows that the referenced Georgia case law regarding official immunity speaks for itself. The City denies the remaining allegations pled in Paragraph 8 of the Amended Complaint.

9.

The City shows that this paragraph contains a legal conclusion to which no response is required; however, to the extent a response is required, the City shows that the referenced law, O.C.G.A. § 36-33-4 and Ga. Const. Art. 1, § 2, ¶ IX(d), speak for themselves. The City denies the remaining allegations pled in Paragraph 9 of the Amended Complaint.

## FACTUAL ALLEGATIONS

10.

The City admits Plaintiff was hired as Police Chief on May 14, 2019.  The City is without knowledge or information sufficient to admit or deny the truth of the allegation that Plaintiff is a "permanent Black individual."  The City denies the remaining allegations pled in Paragraph 10 of

the Amended Complaint.

11.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 11 of the Amended Complaint.

12.

The City admits the allegations pled in Paragraph 12 of the Amended Complaint.

13.

The City admits the allegations pled in Paragraph 13 of the Amended Complaint.

14.

The City admits the allegations pled in Paragraph 14 of the Amended Complaint.

15.

The City admits that an audit was conducted on the Police Department after Plaintiff became Chief of Police.  The City is without knowledge or information sufficient to admit or deny the truth of the remaining allegations pled in Paragraph 15 of the Amended Complaint.

16.

The City denies the allegations pled in Paragraph 16 of the Amended Complaint.

17.

The City admits that some individuals in the Police Department were terminated after an audit of the Police Department was conducted.  The City is without knowledge or information sufficient to admit or deny the truth of the remaining allegations plead in Paragraph 17 of the Amended Complaint.

18.

The City is without knowledge or information sufficient to admit or deny the truth of the

allegations pled in Paragraph 18 of the Amended Complaint.

19.

The City shows that the allegations pled in Paragraph 19 of the Amended Complaint refer to an online document, the content of which speaks for itself.  The City is without knowledge or information sufficient to admit or deny the truth of the remaining allegations pled in Paragraph 19 of the Amended Complaint.

20.

The City denies the allegations pled in Paragraph 20 of the Amended Complaint.

21.

The City admits that City Manager Angela Redding left employment with the City in January 2020 and the City appointed Plaintiff as Interim City Manager/Police Chief.  The City denies the remaining allegations pled in Paragraph 21 of the Amended Complaint.

22.

The City admits the allegations pled in Paragraph 22 of the Amended Complaint.

23.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 23 of the Amended Complaint.

24.

The City admits Plaintiff recommended that a financial audit be conducted regarding SPLOST expenditures and that the City regularly conducts audits.  The City denies the remaining allegations pled in Paragraph 24 of the Amended Complaint.

25.

The City admits the allegations pled in Paragraph 25 of the Amended Complaint.

26.

The City shows that the allegations pled in Paragraph 26 of the Amended Complaint refer to an external document, the content of which speaks for itself.  The City admits Plaintiff received a performance review on June 30, 2020 from City Manager Barker.  The City denies the remaining allegations pled in Paragraph 26 of the Amended Complaint.

27.

The City shows that the allegations pled in Paragraph 27 of the Amended Complaint refer to a document attached to the Amended Complaint as Exhibit A, the content of which speaks for itself.  The City denies the remaining allegations pled in Paragraph 27 of the Amended Complaint.

28.

The City admits creating the position of Deputy City Manager/Public Safety Director.  The City denies the remaining allegations pled in Paragraph 28 of the Amended Complaint.

29.

The City shows that the allegations pled in Paragraph 29 of the Amended Complaint refer to a document attached to the Amended Complaint as Exhibit B, the content of which speaks for itself.  The City denies the remaining allegations pled in Paragraph 29 of the Amended Complaint.

30.

The City denies the allegations pled in Paragraph 30 of the Amended Complaint.

31.

The City is without knowledge or information sufficient to admit or deny the truth of whether City Manager Barker made the statements to Plaintiff alleged in Paragraph 31 of the Amended Complaint.  The City denies the remaining allegations pled in Paragraph 31 of the Amended Complaint.

32.

The City shows that the allegations pled in Paragraph 32 of the Amended Complaint refer to a document attached to the Amended Complaint as Exhibit C, the content of which speaks for itself.  The City is without knowledge or information sufficient to admit or deny the truth of the remaining allegations pled in Paragraph 32 of the Amended Complaint.

33.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 33 of the Amended Complaint.

34.

The City shows that the allegations pled in Paragraph 34 of the Amended Complaint refer to a document attached to the Amended Complaint as Exhibit D, the content of which speaks for itself.  The City admits it regularly conducts audits.  The City is without knowledge or information sufficient to admit or deny the truth of the remaining allegations pled in Paragraph 34 of the Amended Complaint.

35.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 35 of the Amended Complaint.

36.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 36 of the Amended Complaint.

37.

The City shows that the allegations pled in Paragraph 37 of the Amended Complaint refer to a document attached to the Amended Complaint as Exhibit E, the content of which speaks for

itself.  The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 37 of the Amended Complaint.

38.

The City is without knowledge or information sufficient to admit or deny the truth of whether City Manager Barker made the statements alleged in Paragraph 38 of the Amended Complaint to Plaintiff.  The City denies the remaining allegations pled in Paragraph 38 of the Amended Complaint.

39.

The City is without knowledge or information sufficient to admit or deny the truth of whether City Manager Barker made the statements alleged in Paragraph 39 of the Amended Complaint to Plaintiff and "others."  The City denies the remaining allegations pled in Paragraph 39 of the Amended Complaint.

40.

The City shows that the allegations pled in Paragraph 40 of the Amended Complaint refer to an external document, the content of which speaks for itself.  The City admits Plaintiff received a performance review from City Manager Barker on November 2, 2020.  The City denies the remaining allegations pled in Paragraph 40 of the Amended Complaint.

41.

The City shows that the allegations pled in Paragraph 41 of the Amended Complaint refer to an external document, the content of which speaks for itself.  The City denies the remaining allegations pled in Paragraph 41 of the Amended Complaint.

42.

The City is without knowledge or information sufficient to admit or deny the truth of the

allegations pled in Paragraph 42 of the Amended Complaint.

43.

The City admits Plaintiff entered into a new employment contract with the City on November 4, 2020 and shows that the content of this employment contract speaks for itself.  The City denies the remaining allegations pled in Paragraph 43 of the Amended Complaint.

44.

The City denies the allegations pled in Paragraph 44 of the Amended Complaint.

45.

The City denies the allegations pled in Paragraph 45 of the Amended Complaint.

46.

The City admits that Ken Thompson resigned from his position as Finance Director. The City is without knowledge or information sufficient to admit or deny the truth of the remaining allegations pled in Paragraph 46 of the Amended Complaint.

47.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 47 of the Amended Complaint.

48.

The City admits that Human Resources Director Shalonda Brown made a complaint of unprofessional sexual conduct against Fire Chief Don Horton while Plaintiff was Public Safety Director. The City denies the remaining allegations pled in Paragraph 48 of the Amended Complaint.

49.

The City admits Fire Chief Don Horton was put on administrative leave due to sexual

harassment allegations against him.  The City is without knowledge or information sufficient to admit or deny the truth of the remaining allegations pled in Paragraph 49 of the Amended Complaint.

50.

The City admits that an investigation was conducted into the sexual harassment allegations against Fire Chief Horton, that the investigation determined that Fire Chief Horton violated City policy, and that the Governing Body terminated Fire Chief Horton after receiving the findings of the investigation.  The City denies the remaining allegations pled in Paragraph 50 of the Amended Complaint.

51.

The City denies the allegations pled in Paragraph 51 of the Amended Complaint.

52.

The City admits that Plaintiff was present at Fire Chief Horton's appeal hearing.  The City denies the remaining allegations pled in Paragraph 52 of the Amended Complaint.

53.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 53 of the Amended Complaint.

54.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 54 of the Amended Complaint.

55.

The City denies the allegations pled in Paragraph 55 of the Amended Complaint.

56.

The City denies the allegations pled in Paragraph 56 of the Amended Complaint.

57.

The City admits Plaintiff had a meeting with City Manager Marc-Antonie Cooper on May 28, 2021.   The City denies the remaining allegations pled in Paragraph 57 of the Amended Complaint.

58.

The City admits that the City investigated an allegation of improper surveillance and determined the allegations to be unfounded.   The City denies the remaining allegations pled in Paragraph 58 of the Amended Complaint.

59.

The City denies the allegations pled in Paragraph 59 of the Amended Complaint.

60.

The City denies the allegations pled in Paragraph 60 of the Amended Complaint.

61.

The City denies the allegations pled in Paragraph 61 of the Amended Complaint.

62.

The City admits the City Manager hired the City's Fire Chief.   The City denies the remaining allegations pled in Paragraph 62 of the Amended Complaint.

63.

The City denies the allegations pled in Paragraph 63 of the Amended Complaint.

64.

The City is without knowledge or information sufficient to admit or deny the truth of the

allegations pled in Paragraph 64 of the Amended Complaint.

65.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 65 of the Amended Complaint.

66.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 66 of the Amended Complaint.

67.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 67 of the Amended Complaint.

68.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 68 of the Amended Complaint.

69.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 69 of the Amended Complaint.

70.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 70 of the Amended Complaint.

71.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 71 of the Amended Complaint.

72.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 72 of the Amended Complaint.

73.

The City shows that the allegations pled in Paragraph 73 of the Amended Complaint refer to an online video posting, the content of which speaks for itself.  The City denies the remaining allegations pled in Paragraph 73 of the Amended Complaint.

74.

The City shows that the allegations pled in Paragraph 74 of the Amended Complaint refer to an online video posting, the content of which speaks for itself.  The City denies the remaining allegations pled in Paragraph 74 of the Amended Complaint.

75.

The City shows that the allegations pled in Paragraph 75 of the Amended Complaint refer to an online video posting, the content of which speaks for itself.  The City denies the remaining allegations pled in Paragraph 75 of the Amended Complaint.

76.

The City shows that the allegations pled in Paragraph 76 of the Amended Complaint refer to an online video posting, the content of which speaks for itself.  The City denies the remaining allegations pled in Paragraph 76 of the Amended Complaint.

77.

The City denies the allegations pled in Paragraph 77 of the Amended Complaint.

78.

The City denies the allegations pled in Paragraph 78 of the Amended Complaint.

79.

The City denies the allegations pled in Paragraph 79 of the Amended Complaint.

80.

The City admits that Councilwoman Kimberly James filed an ethics complaint against Councilwoman Wells. The City further shows that the remaining allegations pled in Paragraph 80 of the Amended Complaint refer to an external document, the content of which speaks for itself. The City denies any remaining allegations pled in Paragraph 80 of the Amended Complaint.

81.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 81 of the Amended Complaint.

82.

The City shows that the allegations pled in Paragraph 82 of the Amended Complaint refer to an external document, the content of which speaks for itself. The City denies the remaining allegations pled in Paragraph 82 of the Amended Complaint.

83.

The City is without knowledge or information sufficient to admit or deny the truth of the allegations pled in Paragraph 83 of the Amended Complaint.

84.

The City denies the allegations pled in Paragraph 84 of the Amended Complaint.

85.

The City is denies the allegations pled in Paragraph 85 of the Amended Complaint.

86.

The City is without knowledge or information sufficient to admit or deny the truth of the

allegations pled in Paragraph 86 of the Amended Complaint.

## COUNT I:
## RETALIATION UNDER THE
## GEORGIA WHISTLEBLOWER ACT, O.C.G.A. § 45-1-4, *et seq.*
### (The City)

87.

The City incorporates by reference its responses to Paragraphs 1 through 86 of the Amended Complaint as though set forth specifically herein.

88.

The City shows that this paragraph contains a legal conclusion to which no response is required; however, to the extent a response is required, the City shows that the referenced code section, O.C.G.A. § 45-1-4, speaks for itself. The City denies the remaining allegations pled in Paragraph 88 of the Amended Complaint.

89.

The City admits Plaintiff entered into a new employment contract with the City on November 4, 2020 and shows that the content of this employment contract speaks for itself. The City denies the remaining allegations pled in Paragraph 89 of the Amended Complaint.

90.

The City denies the allegations pled in Paragraph 90 of the Amended Complaint.

91.

The City denies the allegations pled in Paragraph 91 of the Amended Complaint.

92.

The City denies the allegations pled in Paragraph 92 of the Amended Complaint.

93.

The City denies the allegations pled in Paragraph 93 of the Amended Complaint.

94.

The City denies the allegations pled in Paragraph 94 of the Amended Complaint.

95.

The City denies the allegations pled in Paragraph 95 of the Amended Complaint.

## COUNT II:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
## UNDER THE COMMON LAW OF GEORGIA
### (Defendant Wells)

96.

The City incorporates by reference its responses to Paragraphs 1 through 95 of the Amended Complaint as though set forth specifically herein.

97.

The City shows that the allegations pled in Paragraph 97 of the Amended Complaint are not directed to the City and need no answer, but to the extent they require an answer, the City denies the allegations pled in Paragraph 97 of the Amended Complaint.

98.

The City shows that the allegations pled in Paragraph 98 of the Amended Complaint are not directed to the City and need no answer, but to the extent they require an answer, the City denies the allegations pled in Paragraph 98 of the Amended Complaint.

99.

The City shows that the allegations pled in Paragraph 99 of the Amended Complaint are not directed to the City and need no answer, but to the extent they require an answer, the City denies the allegations pled in Paragraph 99 of the Amended Complaint.

**COUNT III:**
**SLANDER**
**(Defendant Wells)**

100.

The City incorporates by reference its responses to Paragraphs 1 through 99 of the Amended Complaint as though set forth specifically herein.

101.

The City shows that the allegations pled in Paragraph 101 of the Amended Complaint are not directed to the City and need no answer, but to the extent they require an answer, the City denies the allegations pled in Paragraph 101 of the Amended Complaint.

102.

The City shows that the allegations pled in Paragraph 102 of the Amended Complaint are not directed to the City and need no answer, but to the extent they require an answer, the City denies the allegations pled in Paragraph 102 of the Amended Complaint.

103.

The City shows that the allegations pled in Paragraph 103 of the Amended Complaint are not directed to the City and need no answer, but to the extent they require an answer, the City denies the allegations pled in Paragraph 103 of the Amended Complaint.

104.

The City shows that the allegations pled in Paragraph 104 of the Amended Complaint are not directed to the City and need no answer, but to the extent they require an answer, the City denies the allegations pled in Paragraph 104 of the Amended Complaint.

105.

The City shows that the allegations pled in Paragraph 105 of the Amended Complaint are

not directed to the City and need no answer, but to the extent they require an answer, the City denies the allegations pled in Paragraph 105 of the Amended Complaint.

106.

The City shows that the allegations pled in Paragraph 106 of the Amended Complaint are not directed to the City and need no answer, but to the extent they require an answer, the City denies the allegations pled in Paragraph 106 of the Amended Complaint.

107.

The City denies Plaintiff is entitled to any of the relief set forth in the requests in the unnumbered "WHEREFORE" paragraph immediately following Paragraph 106 of the Amended Complaint, including the relief sought in subsections (a) through (h), and denies that Plaintiff is entitled to any relief whatsoever under any theory at law or in equity. The City denies the remaining allegations pled in this unnumbered paragraph of the Amended Complaint.

108.

Any allegations in the Amended Complaint not heretofore answered, qualified, or denied are here and now denied as though set forth specifically and denied.

**WHEREFORE**, The City in the above-referenced civil action respectfully requests that this Court:

1.      Dismiss with prejudice Plaintiff's Amended Complaint;

2.      Enter judgment in favor of the City and against Plaintiff;

3.      Award the City its reasonable attorney's fees, costs, and expenses pursuant to applicable law; and

4.      Award any and all other relief to the City that this Court may deem necessary and proper.

- 21 -

This 9th day of March, 2022.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Michael M. Hill*
Michael M. Hill
Georgia Bar No. 770486
Shaheem M. Williams
Georgia Bar No. 666654
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339
T: (770) 818-0000
F: (770) 937-9960

*Counsel for City of Forest Park, GA*

**IN THE SUPERIOR COURT OF CLAYTON COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 2021CV03928-09 |
| v. | ) | |
| | ) | |
| CITY OF FOREST PARK, GA and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I certify that on this day I served the foregoing **CITY OF FOREST PARK, GEORGIA'S ANSWER AND DEFENSES TO PLAINTIFF'S FIRST AMENDED COMPLAINT** by electronically filing the same with the Clerk of Court using the Peach Court e-filing system, which will automatically send email notification of such filing to all counsel of record, and via email pursuant to agreement of the parties to all counsel of record as follows:

Jackie Lee
LEE LAW FIRM, LLC
1100 Peachtree Street NE, Suite 250
Atlanta, Georgia 30309
jackie@leelawga.com

Karen E. Woodward
Marisa M. Beller
Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP
275 Scientific Drive
Meridian II, Suite 2000
Peachtree Corners, Georgia 30092
kwoodward@cmlawfirm.com; mbeller@cmlawfirm.com

This 9th day of March, 2022.

*/s/ Michael M. Hill*
Michael M. Hill
Georgia Bar No. 770486

✦ EFILED IN OFFICE
CLERK OF SUPERIOR COURT
CLAYTON COUNTY, GEORGIA

**2021CV03928-14**
**Jewel Scott**
**MAR 09, 2022 02:35 PM**

Jacqueline D. Wills, Clerk
Clayton County, Georgia

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 2021CV03928-09 |
| v. | ) | |
| | ) | |
| CITY OF FOREST PARK, GA and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## CITY OF FOREST PARK, GEORGIA'S
## MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW the City of Forest Park, Georgia (the "City"), by and through the undersigned counsel of record, and, pursuant to O.C.G.A. § 9-11-12(b)(6), hereby moves this Honorable Court to dismiss Plaintiff Nathaniel Clark's First Amended Complaint ("Amended Complaint") for failure to state any claim for which relief may be granted against the City.[1]

## I.   STATEMENT OF THE CASE

This action asserts a claim against the City for alleged whistleblower retaliation pursuant to the Georgia Whistleblower Act ("GWA"), O.C.G.A. § 45-1-4 (Count I).[2] The Plaintiff, Nathaniel Clark, is the current Police Chief for the City. He also serves as Deputy City Manager/Public Safety Director in the event the City Manager is absent or incapacitated. (Am. Compl. ¶¶ 1, 27, 43.) Co-Defendant Latresa Akins-Wells ("Councilwoman Wells") is a sitting member of the City Council, which is composed of four other individuals. (*Id.* ¶¶ 3, 14.)

---

[1] The City's Motion to Dismiss Plaintiff's Initial Complaint remains pending, and the arguments asserted therein as to Plaintiff's whistleblower retaliation claim apply equally with respect to the same claim asserted in the Amended Complaint. In an abundance of caution, however, the City renews its Motion to Dismiss herein more specifically to assert it against Plaintiff's Amended Complaint.

[2] Counts II and III are asserted only against Co-Defendant Latresa Akins-Wells in her individual capacity.

Plaintiff has served as the City's Police Chief since May 2019. (*Id.* ¶¶ 1, 10.) He alleges he was the first and only "permanent Black individual" to serve as Police Chief, but he does not explain what he means by this phrase. (*Id.* ¶ 10.) As Plaintiff alleges, in the short span of just over two years since his hire, he has received numerous promotions, accolades, and pay raises; been entrusted with additional responsibilities; and received consistently positive performance reviews. (*Id.* ¶¶ 21, 26, 27, 40.)

Nevertheless, despite this series of positive outcomes, Plaintiff alleges the City has harassed and retaliated against him in a "conspiracy" to have him terminated (even though it has not actually terminated him or taken any steps to do so). (*Id.* ¶¶ 45, 55, 59.) Plaintiff alleges he uncovered several unlawful practices in the Police Department, including selling City ammunition to civilians; cashing checks made out to the City and not turning them over to the Finance Department; surveilling two City Council members; and targeting Black and Hispanic church-goers for traffic citations. (*Id.* ¶¶ 16, 18.) He also alleges that, during a period in which he served as Interim City Manager, he discovered several other unlawful activities, such as commingling E-911 funds; charging SPLOST expenditures to accounts that did not exist; "procedural concerns" with the City's asset forfeiture account; and "discrepancies" regarding bank reconciliations, FBI reimbursements, and a Georgia Emergency Management Fund grant. (*Id.* ¶¶ 23, 33, 36.)

While Plaintiff appears to allege the City was unhappy with his uncovering the above activities, the City nevertheless promoted him, including to a new position created just for Plaintiff, and gave him positive performance evaluations afterwards. (*Id.* ¶¶ 21, 26-28, 40.) Even so, Plaintiff alleges he requested multiple audits the City did not conduct. (*Id.* ¶¶ 24, 34.) He alleges former City Manager Alfred Barker told him unnamed "members of the Governing Body" wanted him to "stand down immediately on the financial audit"; that Mr. Barker claimed he had been

offered "a large sum of money to stop the financial audits"; that Mr. Barker warned him he would face "backlash" for his audit requests and "continual exposure of biased practices"; and that an unidentified "City Official" wanted to "stop him." (*Id.* ¶¶ 38-39, 41-42.)

The only person in City government whom Plaintiff specifically identifies as having any issue with his work performance is Councilwoman Wells. He alleges that she has made non-specific comments during public City Council meetings regarding his integrity; that she has "verbally attacked and harassed" him for his involvement in an investigation into another employee's sexual harassment allegations against the former Fire Chief; that she attacks his integrity and undermines and questions his actions; that she blames police officers' departures on Plaintiff; that she asks for "data" regarding the Police Department; that she sought to reopen an investigation into an unspecified claim a member of the Police Department had made against Plaintiff; that she asked to see exit interviews and grievances filed against Plaintiff; and that she posted a video on Facebook that allegedly contained "false statements" about Plaintiff. (*Id.* ¶¶ 51, 55-56, 66-70, 73-76.)

Although Plaintiff remains employed with the City, he filed the instant lawsuit on November 1, 2021 against the City and Councilwoman Wells in both her individual and official capacities, appearing to assert a GWA claim against the City and claims for intentional infliction of emotional distress ("IIED") and slander against Councilwoman Wells in her individual and official capacities. In response, the City answered the Complaint and moved for dismissal of all claims based on a lack of subject matter jurisdiction and/or failure to state any claim for which relief can be granted.[3]  On February 7, 2022, Plaintiff amended his Complaint to assert claims

---

[3] On January 6, 2022, Councilwoman Wells also moved for dismissal of all official-capacity claims against her, adopting and incorporating the City's arguments, and moved for a more definite statement with respect to Plaintiff's slander claim.

against the City and Councilwoman Wells in her individual capacity only. In Count I of the Amended Complaint, Plaintiff asserts a GWA claim for whistleblower retaliation against the City. Counts II and III assert claims for IIED and slander, respectively, against Councilwoman Wells solely in her individual capacity.

The City now moves to dismiss the GWA claim asserted against it for failure to state a claim upon which relief may be granted.  The vast majority of purportedly adverse actions and statements about which Plaintiff complains occurred before the applicable one-year statute of limitations, and the alleged incidents within the limitations period are not actionable "adverse employment actions" as contemplated by the GWA. Accordingly, the Court should dismiss with prejudice this sole claim asserted against the City.

## II.    ARGUMENT AND CITATION TO AUTHORITY

### A.    Legal Standard On A Motion To Dismiss

A complaint should be dismissed pursuant to Rule 12(b)(6) of the Civil Practice Act for failure to state a claim upon which relief should be granted "when it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his [or her] claim." *Lange v. Standard Telephone Co.*, 243 Ga. App. 301, 304 (2000); *see also Lord v. Lowe*, 318 Ga. App. 222, 222 (2012) (affirming grant of motion to dismiss for failure to state a claim, holding "[e]ven when a complaint is liberally construed, there still 'must be some legal basis for recovery.'").

A motion to dismiss for failure to state a claim is to be granted when (1) the allegations of the complaint disclose with certainty that the claimant would not be entitled to relief under any state of provable facts asserted in support thereof; and (2) the movant establishes that the claimant could not possibly introduce evidence within the framework of the complaint sufficient to warrant

a grant of relief sought. *Common Cause/Georgia v. City of Atlanta*, 279 Ga. 480, 481 (2005). "While a trial court is required to consider a non-moving party's factual allegations to be true, it is not required to accept the legal conclusions the non-[moving] party suggests that those facts dictate." *Trop, Inc. v. City of Brookhaven*, 296 Ga. 85, 87 (2014).

Here, Plaintiff has failed to allege sufficient facts to state any claim for relief against the City. The Amended Complaint contains no allegations that, if assumed to be true, would support a whistleblower retaliation claim.

**B.    Plaintiff's Whistleblower Retaliation Claim Fails As A Matter Of Law**

**1.    Any Whistleblower Retaliation Claim Based On Alleged Adverse Actions Occurring Before November 1, 2020 Is Time-Barred And Must Be Dismissed**

The GWA requires whistleblower retaliation claims to be asserted "within one year after discovering the retaliation or within three years after the retaliation, whichever is earlier." O.C.G.A. § 45-1-4(e)(1). "Retaliation" under the statute is limited to "adverse employment action[s]." § 45-1-4(a)(5).

Since Plaintiff originally filed this action on November 1, 2021, his whistleblower retaliation claim is limited to "adverse employment action[s]" occurring *after* November 1, 2020. According to the Amended Complaint, this timeframe limits his claim to the following alleged adverse actions: (1) his alleged November 2020 "demotion," (2) being allegedly "stripped" of his Public Safety Director duties in or around May 2021, (3) the alleged investigation into workplace surveillance, and (4) some of Councilwoman Wells's alleged comments. (*See* Am. Compl. ¶¶ 43, 51, 56-59, 60-64, 66-67, 74.) A GWA claim based on any other alleged adverse action is due to be dismissed as untimely.

## 2. Plaintiff Fails To Identify Any Actionable Adverse Employment Actions Occurring After November 1, 2020

None of the alleged events after November 1, 2020 is an adverse employment action for purposes of the GWA. Under the GWA, the phrase "adverse employment action" is interpreted to mean employment action analogous to or of a similar kind as a "discharge, suspension, or demotion." *Franklin v. Pitts*, 349 Ga. App. 544, 554 (2019).

Georgia courts construe "adverse employment action" under the GWA consistent with the interpretation that federal courts give to discrimination claims under Title VII of the Civil Rights Act. *See id.* at 552. Importantly, this does not mean that any employment action one disagrees with is automatically actionable; the law instead requires the challenged employment action to have a "threshold level of substantiality" to be actionable. *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238-39 (11th Cir. 2001). "[A]n employee must show a ***serious and material change*** in the terms, conditions or privileges of employment to prove an adverse employment action." *Id.* at 1239 (italics in original). "[T]he employee's ***subjective view*** of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a ***reasonable person*** in the circumstances." *Id.* (emphasis added).

Courts applying this analysis universally have held that allegations of supervisory nit-picking, changes in job duties or responsibilities, being investigated, or receiving increased scrutiny do not rise to the level of being actionable "adverse employment actions." *See, e.g.*, *id.* (loss of officer-in-charge designation, increased workload and assignments, and negative job criticisms did not constitute actionable adverse employment actions); *Henderson v. City of Birmingham*, 826 F. App'x 736, 740-41 (11th Cir. 2020) (investigating an employee is not an adverse employment action where it does not result in action that affects continued employment or pay); *Grimsley v. Marshalls of MA, Inc.*, 284 F. App'x 604, 609 (11th Cir. 2008) (increased

work load, denial of breaks, and being forced to perform manual-labor tasks outside of job description, even if based on race, are not actionable employment actions); *Barnett v. Athens Reg'l Med. Ctr. Inc.*, 550 F. App'x 711, 713 (11th Cir. 2013) (counseling and scolding are not actionable employment actions if they do not lead to a material change in the terms or conditions of employment, such as "an evaluation that directly disentitles an employee to a raise of any significance").

      a.        <u>**Plaintiff's Alleged "Demotion" Was Not An Adverse Employment Action**</u>

        i.        <u>**Plaintiff Voluntarily Agreed To The Change In Job Duties**</u>

While Plaintiff asserts in his Amended Complaint that he was "demoted" on November 4, 2020, his specific allegations show this not to be the case at all:

> [O]n November 4, 2020, Chief Clark was demoted from his position of Deputy City Manager. Specifically, Chief Clark's ***contract was amended*** so that he would only serve as Public Safety Director and Chief of Police. Chief Clark was only to serve as Deputy City Manager in the absence of a City Manager.

(Am. Compl. ¶ 43 (emphasis added).) Plaintiff thus did not receive an involuntary "demotion." Rather, he entered into a new employment contract with the City, the terms to which he indicated his agreement and assent by ***signing*** it. "One who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents ***and to assent to them***." *Tracy v. Fla. Atl. Univ. Bd. of Trs.*, 980 F.3d 799, 806 (11th Cir. 2020) (quoting 27 Williston on Contracts § 70:114 (4th ed.)) (emphasis added). Plaintiff alleges nothing to contradict this presumed assent. The fact that Plaintiff chooses to use the word "demotion" when discussing a contract into which he willingly entered is not controlling because, as discussed above, whether an employment action is adverse is subject to a reasonableness test

and not on how the Plaintiff subjectively views the employment action. *See Davis*, 245 F.3d at 1239-40.

Plaintiff's mischaracterization of his new employment contract as a "demotion" further is evidenced by his allegation that "Chief Clark was only to serve as Deputy City Manager in the absence of a City Manager." (Am. Compl. ¶ 43.) Thus, he admits he actually ***does*** still serve as Deputy City Manager. To the extent he takes issue with the fact that he serves in this position only in the City Manager's absence, this outcome actually is demanded by the City's Charter:

> Sec. 2.42. - Acting city manager.
>
> (a) By letter filed with the city clerk, the city manager may designate, subject to approval of the city council, a qualified city administrative officer to exercise the powers and perform the duties of city manager ***during his temporary absence or disability.*** During such absence or disability, the city council may revoke such designation at any time and appoint another qualified city administrative officer of the city to serve until the city manager shall return or his disability shall cease.
>
> (b) In the event of the city manager's permanent absence for any reason, or in the event a temporary absence or disability later becomes a permanent absence or disability, the city council shall have the authority to designate a city administrative officer to exercise the powers and perform the duties of city manager until such time as the permanent replacement for the city manager has been determined. Voting on the replacement city manager shall be conducted as for the adoption or ordinances as set out in section 2.23 of this charter. The person appointed pursuant to this provision shall be the acting city manager until such time as another qualified city administrative officer is so designated or a new city manager is appointed pursuant to section 2.40 of this charter.

Charter of City of Forest Park § 2.42 (emphasis added).[4] Plaintiff cannot seriously contend the City's following its Charter is unlawful retaliation or even an adverse employment action. Nor does he cite any authority for this proposition.

> **ii.** **The Change In Plaintiff's Job Duties Was Not "Serious And Material"**

Not only is Plaintiff's amended employment contract something to which he agreed, but the change in job duties he attempts to mischaracterize as a demotion was objectively not "serious and material" to constitute an adverse employment action. The Court in *Davis* stressed that a mere change in job duties, unaccompanied by any decrease in salary, work-hour changes, or other tangible harm, is outside the protection of the law. *Id.* at 1244-45 (citing *Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1557 (D.C. Cir. 1997) (agreeing with "other circuits which have held that changes in assignments or work-related duties do not ordinarily constitute adverse employment decisions if unaccompanied by a decrease in salary or work hour changes")); *see also id.* at 1236 ("[C]ourts have uniformly held that changes in assignments or work-related duties do not amount to actionable adverse employment action if unaccompanied by a decrease in salary."). It is only in "unusual instances" that changes in work duties could be sufficiently substantial and material to alter the "terms, conditions, or privileges" of one's employment. *Id.* at 1245. "In the vast majority of instances, . . . an employee alleging a loss of prestige on account of a change in work assignments, without any tangible harm [*e.g.*, decrease in salary], will be outside the protection afforded by [Title VII]," *id.*, and therefore outside the protection of the GWA.

Given the above guidance from *Davis*, it is clear that the alleged "demotion" here, when viewed objectively, is not one of the "unusual instances" that constitutes a serious and material

---

[4] The Court "may take judicial notice of city charter provisions." *City of Rincon v. Ernest Cmtys., LLC*, 356 Ga. App. 84, 88 n.3 (2020).

change in employment. *See id*.  Plaintiff does not and cannot allege any tangible economic loss, such as a reduction in pay or benefits. Nor does he allege any facts to indicate the change was involuntary or that otherwise would call into question the mutual assent of his entering into a new employment contract with the City.

Moreover, the alleged change in duties under the November 2020 contract is not even inconsistent with the job description of Deputy City Manager/Public Safety Director. The job description itself makes clear that his supervisory duties were subject to change, and that the Deputy City Manager duties are subordinate to his duties as Public Safety Director. The job description expressly provides that Plaintiff's supervisory responsibilities as Deputy City Manager are "***subject to*** the direction of the City Manager" and that Plaintiff's "primary role" is to "assist" the City Manager in the activities and operations of the Police Department, Fire Service, 911, Animal Control, and Public Information Officer. (Am. Compl., Ex. B (emphasis added)). Thus, regardless of the supervisory duties listed in the job description, the City Manager always retained discretion to determine which duties the Deputy City Manager could exercise and under what circumstances. There is no inconsistency between Plaintiff's November 2020 employment contract and the Deputy City Manager/Public Safety Director job description, much less one that could be considered a "serious and material" change to constitute an adverse employment action. *Cf. McNely v. Ocala Star -Banner Corp.*, 99 F.3d 1068, 1078 (11th Cir. 1996) (adverse action where supervisor at newspaper reassigned to janitor duties, including cleaning toilets in bathrooms and performing physically strenuous tasks in shipping department).

> **b.    The Alleged Changes To Plaintiff's Public Safety Director Duties Do Not Constitute Adverse Employment Actions**

Plaintiff also alleges that his duties as Public Safety Director to oversee the Fire Department were "stripped." (Am. Compl. ¶¶ 60-62.) Plaintiff specifically alleges that the Fire

Chief no longer was required to report to him and that he was excluded from the Fire Chief's hiring process. *Id.* For the same reasons identified in the preceding section, however, none of these allegations constitutes a "serious and material" change in the terms, conditions, or privileges of Plaintiff's employment. *See supra* part II.B.2.a.ii.

As with Plaintiff's Deputy City Manager position, the language in the job description gave Plaintiff express notice his duties as Public Safety Director were subject to change. The job description provides the listed duties "are not to be construed as exclusive or all inclusive" and that "[o]ther duties may be required and assigned." (Am. Compl., Ex. B.) This means any duty, even if listed in the job description, may or may not be required to be performed by Plaintiff and, if the City so decides, even *other* duties could be required or assigned at any time and perhaps take priority over others. Plaintiff cannot contend that he suffered a "serious and material" change in his work responsibilities when the job description itself is replete with language permitting his duties to be varied at the City Manager's discretion. Accordingly, Plaintiff does not and cannot allege an adverse employment action based on the purported "stripping" of his Public Safety Director duties.

### c. The Alleged Investigation Into Workplace Surveillance and Councilwoman Wells's Alleged Comments Are Also Not Actionable Adverse Actions

Plaintiff's alleged adverse actions regarding workplace surveillance and Councilwoman Wells's alleged comments are even further from the "threshold level of substantiality" than the mischaracterized "demotion." *See Davis*, 245 F.3d at 1238-39. Regarding the workplace surveillance allegation, the City obviously has a duty to investigate complaints of potential workplace rule violations. A sitting police chief cannot in good faith assert that a city should *ignore* allegations of impropriety made by a sitting councilmember and fail to look into them. In any

event, the investigation was not even adverse for Plaintiff because, as he readily admits, the City's investigation concluded that the allegations against him were unfounded. (Am. Compl. ¶ 58.)

As for Councilwoman Wells's alleged comments, it is well-established that her purported motives in making any such comments cannot be attributed to the City because Councilwoman Wells is just one member of a five-person City Council. *See Matthews v. Columbia Cnty.*, 294 F.3d 1294, 1297 (11th Cir. 2002) (holding that "[b]ecause policymaking authority rests with the [council] as an entity," liability may not attach unless the council "ratif[ies] not only the decision itself, but also the unconstitutional basis for it") (citation omitted); *Mason v. Village of El Portal*, 240 F.3d 1337, 1339 (11th Cir. 2001) ("[T]here can be no municipal liability unless all three members of the [five-person] council who voted against reappointing Plaintiff shared the illegal motive."); *Church v. City of Huntsville*, 30 F.3d 1332, 1343 (11th Cir. 1994) (comments of one city councilman suggesting an unconstitutional motive was insufficient to show that the city council had authorized an unconstitutional policy); *Jones v. City of Coll. Park*, No. 1:05-CV-1797-WBH, 2011 U.S. Dist. LEXIS 91500, at *8 (N.D. Ga. Mar. 3, 2011) (holding city had no liability for race discrimination claim when only two of four-person city council had discriminatory motive in voting to terminate plaintiff). Thus, regardless of what Councilwoman Wells did or did not say, her comments were not actions *by* the City and therefore wholly insufficient to support a whistleblower retaliation claim.

### 3. Plaintiff Fails To State A Claim For Retaliatory Hostile Work Environment

Although the phrase "hostile work environment" appears in many places in Plaintiff's Amended Complaint, and Plaintiff asserted in his earlier brief in response to the City's Motion to Dismiss Plaintiff's Initial Complaint that such a claim was actionable, he cannot cite any

controlling authority holding this to be so. To the contrary, Plaintiff cited only to *City of Pendergrass v. Rintoul*, 354 Ga. App. 618, 625 (2020), but he overstated the holding in that case.

The question of whether the GWA contemplates a claim for retaliatory hostile work environment was not presented to the Court in *Rintoul*. What *Rintoul* actually held was that, on a defendant's motion for directed verdict, the plaintiff was not collaterally estopped from asserting a retaliation claim merely because the trial court already had granted the employer's summary judgment motion on the plaintiff's constructive discharge claim. *Id.* at 624-26. The Court noted that, beyond the issue of constructive discharge, the plaintiff had introduced evidence of *other* adverse employment actions that fell squarely within the definition of actionable retaliation under the GWA, including a suspension, a demotion, and a loss of a $5,000 to $10,000 a year benefit to the plaintiff's employment. *Id.* at 625-26. Thus, the Court's references to hostile work environment in *Rintoul* are *dicta* at best.

Plaintiff also fails to state a claim for retaliatory hostile work environment. To prevail on such a claim, Plaintiff is required to show that "(1) []he engaged in a protected activity; (2) after doing so, []he faced unwelcome harassment; (3) the protected activity was a 'but for' cause of the harassment; (4) the harassment was sufficiently severe or pervasive to alter the terms of h[is] employment; and (5) h[is] employer is responsible for the environment under either vicarious or direct liability." *Joseph v. Board of Regents*, No. 1:20-cv-502-TCB, 2020 U.S. Dist. LEXIS 208570, at *18 (N.D. Ga. May 8, 2020) (assessing retaliatory hostile work environment claim under Title VII (citing *Adams v. Austal, U.S.A., LLC*, 754 F.3d 1240, 1248-49 (11th Cir. 2014))). In evaluating whether certain treatment is sufficiently "severe or pervasive," courts are required to consider "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct

unreasonably interferes with the employee's job performance." *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1276 (11th Cir. 2002) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Courts generally require the alleged harassment to be so frequent as to render the workplace "permeated with discriminatory intimidation, ridicule, and insult." *Barrow v. Georgia Pacific Corp.*, 144 F. App'x 54, 56 (11th Cir. 2005) (quoting *Harris*, 510 U.S. at 21).

Plaintiff fails to allege even in conclusory fashion that he experienced severe or pervasive harassment. He alleges he was asked to do "things other department heads were not required to do"; his work was "scrutinized" and "nitpicked" by unknown actors in nonspecific ways; he received vague "verbal attacks" from "the Governing Body" and Councilwoman Wells; his job duties changed over time (with no reduction in pay or benefits); and the City investigated him after receiving an employee complaint about him (which investigation ultimately found in Plaintiff's favor). (Am. Compl., ¶¶ 45, 55, 57-58, 69, 91-92). Importantly, he alleges nothing to show these actions were physically threatening or humiliating or that they unreasonably interfered with his job performance. *See, e.g.*, *Kelly v. Dun & Bradstreet, Inc.*, 2014 U.S. Dist. LEXIS 198480, at *15 (N.D. Ga. Sep. 12, 2014) (no retaliatory hostile work environment because plaintiff not abused, physically threatened, marginalized, or humiliated).

Even Plaintiff's vague allegations of being "verbally attacked" by the Governing Body and Councilwoman Wells with "comments" regarding his "integrity" are insufficient to meet the required level of severity or pervasiveness. Courts routinely reject claims of pervasive harassment if the remarks were not made on a daily or near-daily basis. "Courts have rejected claims of pervasiveness in hostile work environment claims, for example, where the alleged incidents numbered seven in six months; four in nine months; four in nine months [*sic*]; or seven in thirteen months." *Frizzell v. Delta Air Lines*, No. 1:19-CV-1573-TWT-JSA, 2019 U.S. Dist. LEXIS

186699, at \*32-33 (N.D. Ga. Aug. 29, 2019) (citing *Dawkins v. Fulton Cnty. Gov't*, No. 1:10-CV-1718-WCO-AJB, 2012 U.S. Dist. LEXIS 193726, 2012 WL 12891446, at \*17-18 (N.D. Ga. Jan. 31, 2012) (collecting cases)); *see also Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (emphasizing that "conduct must be extreme to amount to a change in the terms and conditions of employment," and that "occasional teasing," and "offhand comments" are not enough to support a hostile work environment claim); *Zarza v. Tallahassee Hous. Auth.*, 686 F. App'x 747, 752 (11th Cir. 2017) (no hostile work environment based on race where "Plaintiff was not subjected to racially pejorative remarks multiple times a day, every day"); *Aristyld v. City of Lauderhill*, 543 F. App'x 905, 909 (11th Cir. 2013) (isolated comments do not rise to level necessary to support retaliatory hostile work environment); *Garrett v. Tyco Fire Prods., LP*, 301 F. Supp. 3d 1099, 1119 (N.D. Ala. 2018) (four unwelcome comments and two instances of graffiti in three-month period not sufficiently pervasive to establish hostile work environment); *Fortson v. Columbia Farms Feed Mill*, 34 F. Supp. 3d 1302, 1305-08 (M.D. Ga. 2014) (twelve unwelcome comments in seven months insufficiently frequent to show hostile work environment claim); *Kelly*, 2014 U.S. Dist. LEXIS 198480, at \*15 (single embarrassing incident insufficient to show ongoing abusive environment); *Cushmeer-Muhammad v. Fulton Cnty.*, No. 1:08-CV-3256-GET-JFK, 2010 WL 11500831, 2010 U.S. Dist. LEXIS 158003, at \*19 (N.D. Ga. July 19, 2010) (one incident of supervisor's yelling not considered hostile work environment).

Accordingly, Plaintiff cannot maintain his claim for a retaliatory hostile work environment under the GWA.

### III.    <u>CONCLUSION</u>

For the reasons set forth above, the City respectfully requests that its Motion to Dismiss Plaintiff's First Amended Complaint be granted and that the Court dismiss with prejudice all claims asserted against the City in this action.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Michael M. Hill*
Michael M. Hill
Georgia Bar No. 770486
Shaheem M. Williams
Georgia Bar No. 666654
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339
T: (770) 818-0000
F: (770) 937-9960

*Counsel for City of Forest Park, GA*

**IN THE SUPERIOR COURT OF CLAYTON COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 2021CV03928-09 |
| v. | ) | |
| | ) | |
| CITY OF FOREST PARK, GA and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I certify that on this day I served the foregoing **CITY OF FOREST PARK, GEORGIA'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** by electronically filing the same with the Clerk of Court using the Peach Court e-filing system, which will automatically send email notification of such filing to all counsel of record, and via email pursuant to agreement of the parties to all counsel of record as follows:

Jackie Lee
LEE LAW FIRM, LLC
1100 Peachtree Street NE, Suite 250
Atlanta, Georgia 30309
jackie@leelawga.com

Karen E. Woodward
Marisa M. Beller
Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP
275 Scientific Drive
Meridian II, Suite 2000
Peachtree Corners, Georgia 30092
kwoodward@cmlawfirm.com; mbeller@cmlawfirm.com

This 9th day of March, 2022.

*/s/ Michael M. Hill*
Michael M. Hill
Georgia Bar No. 770486

- 17 -



*Jacquline D. Wills*
*Clerk Superior & Magistrate Courts*

CLAYTON COUNTY JUSTICE CENTER
*9151 Tara Boulevard*
*Jonesboro, Georgia 30236-4912*
*www.claytoncountyga.gov/courts*

March 15, 2022

| | |
|---|---|
| Office of the District Attorney<br>9151 Tara Blvd<br>Jonesboro, GA 30236 | Jackie Lee<br>Lee Law Firm, LLC<br>1100 Peachtree St NE<br>Ste. 250<br>Atlanta, GA 30309 |
| Michael M. Hill<br>Freeman Mathis & Gary LLP<br>100 Galleria Pkwy, Suite 1600<br>Atlanta, GA 30339 | |

RE: Nathaniel Clark vs. City of Forest Park GA & Latresa Akins-Wells in Official & individual Capacity; 2021CV03928

To whom it may concern:

Judge Geronda V. Carter has recused herself from the above referenced case. The new assignment is Judge Shana Rooks Malone which is determined by Georgia Uniform Superior Court Rules 25.7 and 25.4 (c). The new case number is 2021CV03928-10.

Sincerely
Office of Jacquline D. Wills
Clerk of Superior & Magistrate Court
Clayton County Georgia

SUPERIOR COURT
(770) 477-3405

REAL ESTATE RECORDS
(770) 477-3395

MAGISTRATE COURT
(770) 477-3443

2021CV03928-10
CLAYTON COUNTY, GA
4/4/2022 1:55 PM
Jacquline D. Wills
CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

NATHANIEL CLARK,          )
                                )

       PLAINTIFF,      )
                                )

V.                              )
                                )   Civil Action No.:

CITY OF FOREST PARK, GA;  )   2021CV03928-10
LATRESA AKINS-WELLS, in her  )
individual capacity           )
                                )

       DEFENDANTS.    )

## STIPULATION TO EXTEND TIME FOR PLAINTIFF TO RESPOND TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

COMES NOW Plaintiff Nathaniel Clark ("Plaintiff" or "Chief Clark") files this stipulation notifying the Court that undersigned counsel requested, and Defendants' counsel agreed to, extend the time for Plaintiff to respond to Defendants' Motions to Dismiss Plaintiff's First Amended Complaint. With that extension, Plaintiff's deadline to respond to Defendant Latresa Akins-Wells' Motion to Dismiss Plaintiff's First Amended Complaint is April 13, 2022 and Plaintiff's deadline to respond to Defendant City of Forest Park, Georgia's Motion to Dismiss Plaintiff's First Amended Complaint is April 15, 2022.

Respectfully submitted, this 4th day of April, 2022.

                            *s/ Jackie Lee*
                            Jackie Lee
                            Georgia Bar No. 419196
                            jackie@leelawga.com
                            LEE LAW FIRM, LLC
                            1100 Peachtree Street NE, Suite 250
                            Atlanta, Georgia 30309
                            Telephone: (404) 301-8973

1

JDW

**COUNSEL FOR PLAINTIFF**

**IN THE SUPERIOR COURT OF CLAYTON COUNTY**
**STATE OF GEORGIA**

NATHANIEL CLARK,                  )
                                  )
          PLAINTIFF,              )
                                  )
V.                                )
                                  )
                                  )        Civil Action No.: 2021CV03928-10
CITY OF FOREST PARK, GA;          )
LATRESA AKINS-WELLS, in her       )
individual capacity               )
                                  )
          DEFENDANTS.             )

## CERTIFICATE OF SERVICE

I certify that on April 4, 2022, I electronically filed the foregoing **Stipulation to Extend Time for Plaintiff to Respond to Defendants' Motions to Dismiss Plaintiff's First Amended Complaint** with the Clerk of Court which will automatically send notification of such filing to all counsel of record and by e-mail to the following counsel of record:

Michael M. Hill
Shaheem M. Williams
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
mhill@ fmglaw.com
shaheem.williams@fmglaw.com

Karen Woodward
Marisa M. Beller
Cruser, Mitchell, Novitz, Gaston & Zimet, LLP
Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092
kwoodward@cmlawfirm.com
mbellar@cmlawfirm.com

          *s/ Jackie Lee*
          Jackie Lee
          Georgia Bar No. 419196

3

CLAYTON COUNTY, GA
4/8/2022 9:17 AM
Jacquline D. Wills
CLERK SUPERIOR COURT

**IN THE SUPERIOR COURT OF CLAYTON COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | |
| | ) | Civil Action No.: |
| CITY OF FOREST PARK, GA; | ) | 2021CV03928-10 |
| LATRESA AKINS-WELLS, in her | ) | |
| individual capacity | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## JOINT MOTION TO STAY ALL DEADLINES FOR FORTY-FIVE (45) DAYS

COMES NOW Plaintiff Nathaniel Clark, Defendant City of Forest Park, Georgia and Defendant Latresa Akins-Wells, and jointly file this Motion to Stay All Deadlines for Forty-Five (45) Days.  In support of their motion the Parties state as follows:

1.      Plaintiff filed an Amended Complaint on February 7, 2022 alleging a retaliation claim under the Georgia Whistleblower Protection Act against Defendant City of Forest Park, an intentional infliction of emotional distress claim against Defendant Wells, and a slander claim against Defendant Wells.

2.      Defendant Wells filed an Answer and Motion to Dismiss Plaintiff's First Amended Complaint on March 7, 2022.

3.      Defendant City of Forest Park, Georgia filed an Answer and Motion to Dismiss Plaintiff's First Amended Complaint on March 9, 2022.

JDW

4.      Plaintiff filed a Charge of Discrimination with the EEOC on August 12, 2021 alleging violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") against the City of Forest Park, Georgia.

5.      On April 4, 2022, Plaintiff requested that the EEOC issue the Dismissal and Notice of Right to Sue.  Plaintiff anticipates that he will have a copy of the Dismissal and Notice of Right to Sue in the next thirty (30) days.

6.      Once Plaintiff receives the Dismissal and Notice of Right to Sue from the EEOC, Plaintiff plans to file a Second Amended Complaint adding the Title VII claim as well as other claims.

7.      Defendants anticipate removing the case to federal court once the federal claims are added to the Complaint.

8.      In order to avoid the futile cost and expense of briefing the Defendants' Motions to Dismiss Plaintiff's First Amended Complaint when Plaintiff anticipates filing a Second Amended Complaint which will render Defendants' Motions to Dismiss Plaintiff's First Amended Complaint moot, the Parties are jointly requesting a forty-five (45) day stay of all deadlines.

9.      Plaintiff anticipates that the forty-five (45) day extension will be a sufficient amount of time for the EEOC to issue the Dismissal and Notice of Right to Sue and for Plaintiff to file his Second Amended Complaint adding/amending claims, including the Title VII federal claims.

10.     A Proposed Order is attached to this Motion.

Respectfully submitted, this 8th day of April, 2022.

s/ Jackie Lee
Jackie Lee
Georgia Bar No. 419196
jackie@leelawga.com
LEE LAW FIRM, LLC
1100 Peachtree Street NE, Suite 250
Atlanta, Georgia 30309
Telephone: (404) 301-8973

**COUNSEL FOR PLAINTIFF**

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

NATHANIEL CLARK,                     )
                                     )
            PLAINTIFF,               )
                                     )
V.                                   )
                                     )
CITY OF FOREST PARK, GA;             )   Civil Action No.: 2021CV03928-10
LATRESA AKINS-WELLS, in her          )
individual capacity                  )
                                     )
            DEFENDANTS.              )

## CERTIFICATE OF SERVICE

I certify that on April 8, 2022, I electronically filed the foregoing **Joint Motion to Stay**

**All Deadlines for Forty-Five (45) Days** with the Clerk of Court which will automatically send

notification of such filing to all counsel of record and by e-mail to the following counsel of record:

Michael M. Hill
Shaheem M. Williams
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
mhill@ fmglaw.com
shaheem.williams@fmglaw.com

Karen Woodward
Marisa M. Beller
Cruser, Mitchell, Novitz, Gaston & Zimet, LLP
Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092
kwoodward@cmlawfirm.com
mbellar@cmlawfirm.com

*s/ Jackie Lee*
Jackie Lee
Georgia Bar No. 419196

4

**IN THE SUPERIOR COURT OF CLAYTON COUNTY**
**STATE OF GEORGIA**

NATHANIEL CLARK,       )
                               )
        PLAINTIFF,     )
                               )
V.                           )
                               )    Civil Action No.: 2021CV03928-10
CITY OF FOREST PARK, GA;   )
LATRESA AKINS-WELLS, in her  )
individual capacity         )
                               )
       DEFENDANTS.     )

## ORDER

This matter came before the Court on the Parties' Joint Motion to Stay All Deadlines for Forty-Five (45) Days.  After consideration of the Motion, it is GRANTED.  All deadlines are hereby stayed until May 23, 2022.

SO ORDERED this _____ day of April, 2022.

_____
Hon. Shana Rooks Malone
Superior Court Judge

5

✒ **EFILED IN OFFICE**
CLERK OF SUPERIOR COURT
CLAYTON COUNTY, GEORGIA

**2021CV03928-14**
**Jewel Scott**
**MAY 13, 2022 10:19 AM**

Jacquline D. Wills, Clerk
Clayton County, Georgia

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| vs. | ) | 2021-CV-03928-14 |
| | ) | |
| CITY OF FOREST PARK, GA, and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| Individual Capacity, | ) | **Jury Trial Demanded** |
| | ) | |
| Defendants. | ) | |

<u>**NOTICE OF WITHDRAWAL OF**</u>
<u>**MARISA BELLER**</u>

COMES NOW, MARISA BELLER, and hereby files this Notice of Withdrawal as co-counsel of record for Defendant Councilwoman Latresa Akins-Wells in her individual and official capacities.

Marisa Beller's last day with the law firm of Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP is May 13, 2022, and Ms. Beller requests that this Court and all counsel of record remove her name from these proceedings and discontinue sending any notices to her regarding this case. The above-named defendant will continue to be represented by Karen E. Woodward of the law firm of Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP.

Respectfully submitted this 13th day of May, 2022.

**CRUSER, MITCHELL, NOVITZ,**
**SANCHEZ, GASTON & ZIMET, LLP**

/s/ Marisa M. Beller
Marisa M. Beller
Georgia Bar No. 845893
Email: mbeller@cmlawfirm.com
Tel: 404-881-2622

Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that I have this day served the within and foregoing **NOTICE OF WITHDRAWAL OF MARISA BELLER**, using the PeachCourt system file and serve system which will serve an electronic copy of this certificate upon all counsel of record.

Jackie Lee
LEE LAW FIRM, LLC
1100 Peachtree St., NE, Ste. 250
Atlanta, GA 30309
jackie@leelawga.com
*(Attorney for Plaintiff)*

Michael M. Hill
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
mhill@fmglaw.com
*(Attorney for the City of Forest Park)*

Respectfully submitted this 13th day of May, 2022.

**Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP**

*/s/ Marisa M. Beller*
Marisa M. Beller
Georgia Bar No. 110609

CLAYTON COUNTY, GA
5/19/2022 4:12 PM
Jacquline D. Wills
CLERK SUPERIOR COURT

IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | |
| | ) | Civil Action No.: |
| CITY OF FOREST PARK, GA; | ) | 2021CV03928-10 |
| LATRESA AKINS-WELLS, in her | ) | |
| individual capacity | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## JOINT MOTION TO STAY ALL DEADLINES FOR THIRTY (30) DAYS

COMES NOW Plaintiff Nathaniel Clark, Defendant City of Forest Park, Georgia and Defendant Latresa Akins-Wells, and jointly file this Motion to Stay All Deadlines for Thirty (30) Days.  In support of their motion the Parties state as follows:

1.      Plaintiff filed an Amended Complaint on February 7, 2022 alleging a retaliation claim under the Georgia Whistleblower Protection Act against Defendant City of Forest Park, an intentional infliction of emotional distress claim against Defendant Wells, and a slander claim against Defendant Wells.

2.      Defendant Wells filed an Answer and Motion to Dismiss Plaintiff's First Amended Complaint on March 7, 2022.

3.      Defendant City of Forest Park, Georgia filed an Answer and Motion to Dismiss Plaintiff's First Amended Complaint on March 9, 2022.

1

4.      Plaintiff filed a Charge of Discrimination with the EEOC on August 12, 2021 alleging violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII") against the City of Forest Park, Georgia.

5.      On April 4, 2022, Plaintiff requested that the EEOC issue the Dismissal and Notice of Right to Sue.

6.      On April 8, 2022, the Parties filed a Joint Motion to Stay All Deadlines for forty-five (45) days until May 23, 2022.

7.      On April 20, 2022 the EEOC told counsel for Plaintiff that Plaintiff's request for the Dismissal and Notice of Right to Sue has been forwarded to the Department of Justice for action.  Plaintiff anticipates that he will receive his Dismissal and Notice of Right to Sue in the next thirty (30) days.

8.      Once Plaintiff receives the Dismissal and Notice of Right to Sue from the Department of Justice, Plaintiff plans to file a Second Amended Complaint adding the Title VII claim as well as other claims.

9.      Defendants anticipate removing the case to federal court once the federal claims are added to the Complaint.

10.      In order to avoid the futile cost and expense of briefing the Defendants' Motions to Dismiss Plaintiff's First Amended Complaint when Plaintiff anticipates filing a Second Amended Complaint which will render Defendants' Motions to Dismiss Plaintiff's First Amended Complaint moot, the Parties are jointly requesting a thirty (30) day stay of all deadlines.

11.      Plaintiff anticipates that the thirty (30) day extension will be a sufficient amount of time for the Department of Justice to issue the Dismissal and Notice of Right to Sue and for

Plaintiff to file his Second Amended Complaint adding/amending claims, including the Title VII

federal claims.

12.     A Proposed Order is attached to this Motion.

Respectfully submitted, this 19th day of May, 2022.

*s/ Jackie Lee*
Jackie Lee
Georgia Bar No. 419196
jackie@leelawga.com
LEE LAW FIRM, LLC
1100 Peachtree Street NE, Suite 250
Atlanta, Georgia 30309
Telephone: (404) 301-8973

**COUNSEL FOR PLAINTIFF**

3

**IN THE SUPERIOR COURT OF CLAYTON COUNTY**
**STATE OF GEORGIA**

| | |
|---|---|
| NATHANIEL CLARK, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| V. | ) |
| | ) |
| CITY OF FOREST PARK, GA; | )   Civil Action No.: 2021CV03928-10 |
| LATRESA AKINS-WELLS, in her | ) |
| individual capacity | ) |
| | ) |
| DEFENDANTS. | ) |

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on May 19, 2022, I electronically filed the foregoing **Joint Motion to Stay All Deadlines for Thirty (30) Days** with the Clerk of Court which will automatically send notification of such filing to all counsel of record and by e-mail to the following counsel of record:

Michael M. Hill
Shaheem M. Williams
FREEMAN MATHIS & GARY, LLP
100 Galleria Parkway, Suite 1600
Atlanta, GA 30339
mhill@ fmglaw.com
shaheem.williams@fmglaw.com

Karen Woodward
Marisa M. Beller
Cruser, Mitchell, Novitz, Gaston & Zimet, LLP
Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092
kwoodward@cmlawfirm.com
mbellar@cmlawfirm.com

*s/ Jackie Lee*
Jackie Lee
Georgia Bar No. 419196

4

**IN THE SUPERIOR COURT OF CLAYTON COUNTY
STATE OF GEORGIA**

NATHANIEL CLARK,                          )
                                          )
          PLAINTIFF,                  )
                                          )
V.                                        )
                                          )
CITY OF FOREST PARK, GA;                  )   Civil Action No.: 2021CV03928-10
LATRESA AKINS-WELLS, in her               )
individual capacity                       )
                                          )
          DEFENDANTS.                 )

## <u>ORDER</u>

      This matter came before the Court on the Parties' Joint Motion to Stay All Deadlines for

Thirty (30) Days.  After consideration of the Motion, it is GRANTED.  All deadlines are hereby

stayed until June 22, 2022.

      SO ORDERED this _____ day of May, 2022.


                                 _____
                                   Hon. Shana Rooks Malone
                                   Superior Court Judge

2021CV03928-14

Efiled  5/19/2022 4:12 PM

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

NATHANIEL CLARK,                                )
                                                )
       PLAINTIFF,                              )
                                                )
V.                                              )
                                                )
CITY OF FOREST PARK, GA;                        )       Civil Action No.: 2021CV03928-10
LATRESA AKINS-WELLS, in her                     )
individual capacity                             )
                                                )
       DEFENDANTS.                             )

### ORDER

    This matter came before the Court on the Parties' Joint Motion to Stay All Deadlines for

Thirty (30) Days.  After consideration of the Motion, it is GRANTED.  All deadlines are hereby

stayed until June 22, 2022.

    SO ORDERED this ___25th___ day of May, 2022.

                               Hon. Shana Rooks Malone
                               Superior Court Judge

## CERTIFICATE OF SERVICE

I hereby do certify that I have this date served a copy of the regarding case 2021-cv-03928  by depositing the same in the United States Mail in a properly addressed envelope with adequate postage affixed thereon to assure 1st class mail delivery unless otherwise noted as follows:

FREEMAN MATHIS & GARY LLP
MICHAEL HILL
100 GALLERIA PARKWAY, SUITE 1600
ATLANTA, GA 30339

CRUSER, MITCHELL, NOVITZ, GASTON & ZIMET , LLP
KAREN WOODWARD
MERIDAN II, SUITE 2000
275 SCIENTIFIC DRIVE
PEACHTREE CORNERS, GA 30092

This ___27___ day of May 2022.

Simone Lee, Judicial Assistant to
Judge Shana Rooks Malone
Clayton Judicial Circuit

EFILED IN OFFICE
CLERK OF SUPERIOR COURT
CLAYTON COUNTY, GEORGIA

**2021CV03928-14**

**Shana Rooks Malone**
**MAY 31, 2022 12:32 PM**

Jacqueline D. Wills, Clerk
Clayton County, Georgia

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 2021CV03928-09 |
| v. | ) | |
| | ) | |
| CITY OF FOREST PARK, GA and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## NOTICE OF ENTRY OF APPEARANCE OF MICHAEL M. HILL

COMES NOW, Michael M. Hill, of the law firm of Freeman Mathis & Gary, LLP, 100

Galleria Parkway, Suite 1600, Atlanta, Georgia 30339, and hereby enters his appearance as counsel

of record for the Defendant City of Forest Park, Georgia in the above-captioned civil action.

Respectfully submitted,

**FREEMAN MATHIS & GARY, LLP**

*/s/ Michael M. Hill*
Michael M. Hill
Georgia Bar No. 770486
100 Galleria Parkway
Suite 1600
Atlanta, Georgia 30339
T: (770) 818-0000
F: (770) 937-9960

*Counsel for City of Forest Park, GA*

- 1 -

**IN THE SUPERIOR COURT OF CLAYTON COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| NATHANIEL CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action |
| | ) | No. 2021CV03928-09 |
| v. | ) | |
| | ) | |
| CITY OF FOREST PARK, GA and | ) | |
| LATRESA AKINS-WELLS, in her | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

**CERTIFICATE OF SERVICE**

I certify that on this day I served the foregoing **NOTICE OF ENTRY OF APPEARANCE OF MICHAEL M. HILL** by electronically filing the same with the Clerk of Court using the Peach Court e-filing system, which will automatically send email notification of such filing to all counsel of record, and via email pursuant to agreement of the parties to all counsel of record as follows:

Jackie Lee
LEE LAW FIRM, LLC
1100 Peachtree Street NE, Suite 250
Atlanta, Georgia 30309
jackie@leelawga.com

Karen E. Woodward
Cruser, Mitchell, Novitz, Sanchez, Gaston & Zimet, LLP
275 Scientific Drive
Meridian II, Suite 2000
Peachtree Corners, Georgia 30092
kwoodward@cmlawfirm.com

This 31st day of May, 2022.

/s/ Michael M. Hill
Michael M. Hill
Georgia Bar No. 770486

- 2 -

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

NATHANIEL CLARK,                    )
                                   )
            PLAINTIFF,              )
                                   )
V.                                 )
                                   )        Civil Action No.:
CITY OF FOREST PARK, GA;           )        2021CV03928-14
LATRESA AKINS-WELLS, in her        )
Official and individual capacity   )
                                   )
            DEFENDANTS.             )

## **SUMMONS**

TO THE ABOVE NAMED DEFENDANT(S):

      You are hereby summoned and required to file with the Clerk of said Court and serve upon the Plaintiff's attorney, whose name and address is:

<div align="center">

Jackie R. Lee
1100 Peachtree Street N.E.
Suite 250
Atlanta, GA 30309

</div>

an answer to the complaint which is herewith served upon you, **within 30 days** after service of this summons, upon you, exclusive of the day of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

<div align="center">

/s/ Kameshia Jones

</div>

By_____
                           Deputy Clerk

2021CV03928-14
CLAYTON COUNTY, GA
11/7/2021 3:16 PM
Jacquline D. Wills
CLERK SUPERIOR COURT

**AFFIDAVIT OF SERVICE**

| Case: 2021CV03928-14 | Court: IN THE SUPERIOR COURT OF CLAYTON COUNTY | County: CLAYTON COUNTY | Job: 6313315 |
|---|---|---|---|
| Plaintiff / Petitioner: NATHANIEL CLARK | | Defendant / Respondent: CITY OF FOREST PARK GA; LATRESA AKINS-WELLS in her official and individual capacity | |
| Received by: Margaret Ruddock | | For: Lee Law Firm, LLC | |
| To be served upon: CITY OF FOREST PARK GA | | | |

I, Margaret Ruddock, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:**  CITY OF FOREST PARK GA, COMPANY: 745 Forest Parkway, Forest Park, GA 30297

**Manner of Service:**  Government Agency, Nov 4, 2021, 1:35 pm EDT

**Documents:**  SUMMONS, COMPLAINT, EXHIBIT A (Received Nov 3, 2021 at 12:00am EDT)

**Additional Comments:**
1) Successful Attempt: Nov 4, 2021, 1:35 pm EDT at COMPANY: 745 Forest Parkway, Forest Park, GA 30297 received by CITY OF FOREST PARK GA. Other: SERVED THE CITY OF FOREST PARK BY SERVING MAYOR ANGELYNE BUTLER. BLACK FEMALE, BLAKC HAIR, 5-9,50+, WW 150-170LBS;
Served

Margaret Ruddock  11/4/21
Margaret Ruddock          Date

Subscribed and sworn to before me by the affiant who is personally known to me.

Denine Jordan
Notary Public

11/4/21          Sept 1, 2023
Date          Commission Expires

Denine Jordan
NOTARY PUBLIC
DeKalb County, GEORGIA
My Commission Expires 09/01/2023

KT

CLAYTON COUNTY, GA
11/10/2021 8:21 AM
Jacquline D. Wills
CLERK SUPERIOR COURT

## IN THE SUPERIOR COURT OF CLAYTON COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| NATHANIEL CLARK, | ) |
| | ) |
| PLAINTIFF, | ) |
| | ) |
| V. | ) |
| | ) Civil Action No.: |
| CITY OF FOREST PARK, GA; | ) 2021CV03928-14 |
| LATRESA AKINS-WELLS, in her | ) |
| Official and individual capacity | ) |
| | ) |
| DEFENDANTS. | ) |

## <u>ACKNOWLEDGMENT OF SERVICE</u>

I, Marisa Beller, acknowledge receipt of Plaintiff's request that I waive service of summons

under O.C.G.A. § 9-11-4(d) in this action captioned above, which has been assigned the civil action

file number 2021CV03928-14, on behalf of Defendant Latresa Akins-Wells ("Defendant").

Defendant agrees to save the cost of service of a summons and an additional copy of the

complaint in this lawsuit on her by waiving the requirement that she be served with formal judicial

process in this manner, provided for by the Georgia Rules of Civil Procedure. Furthermore, I

acknowledge that I have received a copy of Plaintiff's Complaint for Damages and the Summons

to Defendant Latresa Akins-Wells.

Defendant understands that she will retain all defenses or objections to the lawsuit or the

jurisdiction or venue of Superior Court of Clayton County, except for objections based on a

defect in the summons or service of the summons. Defendant also understands that judgment

may be entered against her if an answer is not served upon Plaintiff's counsel within 60 days

from November 8, 2021, which is the date that this waiver was sent.

WT

This _9th_ day of _November_, 2021.

On behalf of Defendant Latresa Akins-Wells:

Marisa Beller
Georgia Bar. No. 845893
**Cruser, Mitchell, Novitz, Sanchez,**
**Gaston & Zimet, LLP**
Meridian II, Suite 2000
275 Scientific Drive
Peachtree Corners, GA 30092
Phone: (404) 881-2622
Email: mbeller@cmlawfirm.com

**General Civil and Domestic Relations Case Filing Information Form**

☑ Superior or ☐ State Court of ___Clayton___ County

| For Clerk Use Only | |
|---|---|
| Date Filed ___11/01/2021___ <br> **MM-DD-YYYY** | Case Number ___2021CV03928-14___ |

**Plaintiff(s)**

Clark   Nathaniel
Last      First         Middle I.    Suffix    Prefix

Last      First         Middle I.    Suffix    Prefix

Last      First         Middle I.    Suffix    Prefix

Last      First         Middle I.    Suffix    Prefix

**Defendant(s)**

City of Forest Park, GA
Last      First         Middle I.    Suffix    Prefix

Atkins-Wells, Latresa
Last      First         Middle I.    Suffix    Prefix

Last      First         Middle I.    Suffix    Prefix

Last      First         Middle I.    Suffix    Prefix

**Plaintiff's Attorney** __Jackie Lee__   **State Bar Number** __419196__   **Self-Represented** ☐

**Check one case type and one sub-type in the same box (if a sub-type applies):**

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☐ Contempt/Modification/Other Post-Judgment
- ☐ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☑ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Dissolution/Divorce/Separate Maintenance/Alimony
- ☐ Family Violence Petition
- ☐ Modification
  - ☐ Custody/Parenting Time/Visitation
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

☐ Check if the action is related to another action pending or previously pending in this court involving some or all of the same: parties, subject matter, or factual issues. If so, provide a case number for each.

_____   _____
Case Number              Case Number

☑ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in OCGA § 9-11-7.1.

☐ Is a foreign language or sign-language interpreter needed in this case? If so, provide the language(s) required.

_____   **Language(s) Required**

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.